**EXHIBIT A**   (2:22-cv-00867)

**Vitimin Energy, Inc. v. Bolton & Company, et al.**

**Complaint to Los Angeles Superior Court Action (Case No. 22STCV0036)**

Electronically FILED by Superior Court of California, County of Los Angeles on 01/03/2022 12:00 AM Sherri R. Carter, Executive Officer/Clerk of Court, by C. Monroe, Deputy Clerk
22STCV00036

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANTS:**
*(AVISO AL DEMANDADO):*
BOLTON & COMPANY, a California licensed insurance agency; GREGORY MATTHEW DOHERTY, a licensed insurance agent, CHRIS MOREY, a licensed insurance agent, and Does 1 through 25

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
VITAMIN ENERGY, INC., a Delaware corporation

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Los Angeles Superior Court<br>Stanley Mosk Courthouse<br>111 N. Hill St., Los Angeles, California 90012 | Served on 01/12/22<br>at 10:24 by KAC<br># 273 | CASE NUMBER:<br>*(Número del Caso):*<br>22STCV00036 |
|---|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Reid A. Winthrop SBN 223527
Winthrop Law Group, P.C.
120 Newport Center Dr., Newport Beach, CA 92660 Tel: 949-269-3256, Fax: 949-209-1919

| DATE:<br>*(Fecha)* 01/03/2022 | Clerk, by<br>*(Secretaria)* Sherri R. Carter Executive Officer / Clerk of Court<br>C. Monroe | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*



**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Bolton & Company, a California licensed insurance agency
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☒ other *(specify):* business entity form unknown
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | American LegalNet, Inc.<br>www.FormsWorkflow.com | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|---|

Electronically FILED by Superior Court of California, County of Los Angeles on 01/03/2022 12:00 AM Sherri R. Carter, Executive Officer/Clerk of Court, by C. Monrial, Deputy Clerk

Case 2:22-cv-00867-SVW-AGR Document 1-1 Filed 02/08/22 Page 3 of 179 Page ID #:7

22STCV00036

**CM-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State bar number, and address):*<br>Reid A. Winthrop (SBN 223527)<br>Winthrop Law Group, P.C.<br>120 Newport Center Dr.<br>Newport Beach, CA 92660<br>TELEPHONE NO.: 949-269-3256    FAX NO.: 949-209-1919<br>ATTORNEY FOR *(Name):* Plaintiff Vitamin Energy, Inc. | **FOR COURT USE ONLY** |

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles<br>STREET ADDRESS: 111 N. Hill St<br>MAILING ADDRESS: 111 N Hill St<br>CITY AND ZIP CODE: Los Angeles, 90071<br>BRANCH NAME: Stanley Mosk Courthouse | |

**CASE NAME:**
Vitamin Energy, Inc. v. Bolton & Company, et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | **CASE NUMBER:** 22STCV00036 |
|---|---|---|---|
| ☑ Unlimited<br>(Amount demanded exceeds $25,000) | ☐ Limited<br>(Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☑ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify):* 5: Prof. Neg/Breach Fid. Duties/Fraud/Neg. Misrep/Breach of Contract
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 12/31/2021

Reid A. Winthrop
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) (*if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto*)

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability (*not asbestos or
  toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) (*not civil
  harassment*) (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract (*not unlawful detainer
    or wrongful eviction*)
  Contract/Warranty Breach–Seller
    Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage (*not provisionally
  complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent
    domain, landlord/tenant, or
    foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  (*arising from provisionally complex
  case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment (*non-
    domestic relations*)
  Sister State Judgment
  Administrative Agency Award
    (*not unpaid taxes*)
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
  above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-
    harassment*)
  Mechanics Lien
  Other Commercial Complaint
    Case (*non-tort/non-complex*)
  Other Civil Complaint
    (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition (*not specified
  above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

| SHORT TITLE: Vitamin Energy, Inc. v. Bolton & Company et al. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | **A**<br>Civil Case Cover Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: Vitamin Energy, Inc. v. Bolton & Company et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☑ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

| SHORT TITLE: Vitamin Energy, Inc. v. Bolton & Company et al. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

| SHORT TITLE: Vitamin Energy, Inc. v. Bolton & Company et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected.  Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: ☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS: 3475 E FOOTHILL BLVD |
|---|---|

| CITY: Pasadena | STATE: CA | ZIP CODE: 91107 | |
|---|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _____Central_____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 12/31/2021 _____

*Reid (signature)*

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1.  Original Complaint or Petition.

2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.

3.  Civil Case Cover Sheet, Judicial Council form CM-010.

4.  Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5.  Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6.  A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp<br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br>01/03/2022<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ A. Alba _____ Deputy |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | |
| PLAINTIFF:<br>Vitamin Energy, Inc. | |
| DEFENDANT:<br>Bolton & Company et al | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>22STCV00036 |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date: 05/18/2022 | Time: 8:30 AM | Dept.: 51 |
|---|---|---|

NOTICE TO DEFENDANT:  THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: _01/03/2022_ _____          _____ Lawrence P. Riff / Judge _____
                                                              Judicial Officer

---

**CERTIFICATE OF SERVICE**

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in _Los Angeles_____, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Reid A. Winthrop
120 Newport Center Dr

Newport Beach, CA 92660                              Sherri R. Carter, Executive Officer / Clerk of Court

Dated: _01/03/2022_ _____          By _A. Alba_ _____
                                                              Deputy Clerk

**NOTICE OF**
**CASE MANAGEMENT CONFERENCE**

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter Three

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**01/03/2022**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ C. Monroe _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>22STCV00036 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Lawrence P. Riff | 51 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 01/03/2022
   (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By C. Monroe_____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

Reid A. Winthrop (SBN 223527)
**WINTHROP LAW GROUP, P.C.**
120 Newport Center Dr.
Newport Beach, California 92660
Phone:  949-269-3256  |  Fax:  949-209-1919
Email: *reid@winthroplawgroup.com*

Attorneys for Plaintiff VITAMIN ENERGY, INC.

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| VITAMIN ENERGY, INC., a Delaware corporation, | Case No.: 22STCV00036 |
| | ASSIGNED FOR ALL PURPOSES TO THE HONORABLE LAWRENCE P. RIFF, DEPT. 51 |
| Plaintiff, | **NOTICE OF ERRATA RE COMPLAINT FOR DAMAGES** |
| vs. | |
| BOLTON & COMPANY, a California licensed insurance agency; GREGORY MATTHEW DOHERTY, a licensed insurance agent, CHRIS MOREY, a licensed insurance agent, and Does 1 through 25, | |
| Defendants. | |

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that the Complaint filed on January 3, 2022, contained a few minor errors as to certain factual allegations that require correction. The address for the named plaintiff was alleged in error, and the correct address has now been inserted. In addition, the title of non-party Richard Gorman was corrected to be "manager" of Vitamin Energy LLC. The following errors are hereby corrected in the Complaint, which corrected version is attached hereto as Exhibit 1:

- On page 1, lines 4-5 in paragraph 1, "its principal place of business located at 391 Wilmington West Chester Pike, Unit 3, #403, Glen Mills, Pennsylvania" is replaced with "a registered office at 651 N Broad Street, Suite 206, Middleton, Delaware 19709".

- On page 1, line 9 in paragraph 1, "Pennsylvania" is replaced with "Delaware".

- On page 1, lines 13-14 in paragraph 2, "is the CEO of Vitamin Energy" is replaced with "was Vitamin Energy, LLC's manager".

- On page 3, line 20 in paragraph 14, "Vitamin Energy, through Gorman," is replaced with "Vitamin Energy LLC's manager Gorman".

Dated: January 7, 2022                    WINTHROP LAW GROUP, P.C.


                                          By: _____
                                              REID A. WINTHROP
                                              Attorneys for Plaintiff VITAMIN
                                              ENERGY, INC.

-1-

# Exhibit 1

Reid A. Winthrop (SBN 223527)
**WINTHROP LAW GROUP, P.C.**
120 Newport Center Dr.
Newport Beach, California 92660
Phone: 949-269-3256 | Fax: 949-209-1919
Email: *reid@winthroplawgroup.com*

Attorneys for Plaintiff VITAMIN ENERGY, INC.

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| VITAMIN ENERGY, INC., a Delaware corporation, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES:** |
| vs. | 1) **PROFESSIONAL NEGLIGENCE** |
| | 2) **BREACH OF FIDUCIARY DUTIES** |
| | 3) **FRAUD IN THE INDUCEMENT** |
| | 4) **NEGLIGENT MISREPRESENTATION** |
| BOLTON & COMPANY, a California licensed insurance agency; GREGORY MATTHEW DOHERTY, a licensed insurance agent, CHRIS MOREY, a licensed insurance agent, and Does 1 through 25, | 5) **BREACH OF CONTRACT** |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | [Filed Concurrently With: |
| | - Summons |
| | - Civil Case Cover Sheet] |

Case No.:

COMPLAINT

**THE PARTIES**

1.      Plaintiff Vitamin Energy, Inc. is, and at all times mentioned herein, was, a Delaware corporation organized and existing under and by virtue of the laws of the State of Delaware, with a registered office at 651 N Broad Street, Suite 206, Middleton, Delaware 19709, and doing business in Los Angeles, California. Plaintiff Vitamin Energy Inc. is the successor in interest by operation of law to Vitamin Energy, LLC, a limited liability company organized and existing under and by virtue of the laws of the State of Delaware, and the party who contracted with defendants as set forth herein this Complaint. Vitamin Energy, Inc. assumed all rights, obligations and liabilities of Vitamin Energy LLC, including all contractual rights and claims, and is therefore the party in interest in this lawsuit (hereafter referred to as "Plaintiff" or "Vitamin Energy").

2.      Non-party Richard Gorman (hereinafter, "Gorman") was the Vitamin Energy, LLC's manager.

3.      Defendant Bolton & Company ("Bolton") is and was at all relevant times a California licensed insurance brokerage, License #: 0008309, with a principal place of business in Pasadena, Los Angeles County, California.

4.      Defendant Greg M. Doherty ("Doherty") is a licensed insurance agent and/or broker, License #: 0508702, and, on information and belief, Plaintiff alleges a former Executive Vice President of Bolton, who at all relevant times lived and conducted business as an insurance agent and/or broker in Los Angeles, California.

5.      Defendant Chris Morey ("Morey") is a licensed insurance agent and/or broker, License #: 0K59414, and an employee of Bolton, who at all relevant times lived and conducted business as an insurance agent and/or broker in Los Angeles, California.

6.      Bolton, Doherty and Morey will sometimes be referred to herein as the "Defendants".

7.      Plaintiff does not know the true names or capacities, whether individual, corporate, associate, or otherwise, of Defendant Does 1 to 25 ("Doe Defendants"). Pursuant to CCP section 474, Plaintiff sues these defendants under the fictitious name "Doe." Each of the Doe defendants

-1-

COMPLAINT

1    is legally responsible in some manner for Plaintiff's damages.  If and when Plaintiff learns their

2    real names and identities, Plaintiff will ask the Court for permission to amend this complaint to

3    sue them under their real names.

4          8.      Plaintiff is informed and believes, and on that basis alleges, that each of the

5    fictitiously named Doe Defendants is responsible in some manner for the occurrences alleged, in

6    that Plaintiff's injuries, as alleged, were legally caused by these Doe Defendants' fraud, false

7    promises, negligence, actions, inactions, omissions, contributions, or otherwise, and the Doe

8    Defendants are thus liable in some manner to Plaintiff for the injuries claimed.

9          9.      Plaintiff is informed and believes, and on that basis alleges, that at all relevant

10   times, Defendants and Does 1 through 25, and each of them, was the principal, agent, servant,

11   employee, co-conspirator, alter ego, joint venturer, shareholder, investor, independent contractor,

12   and/or designated representative of the remaining defendants, including Defendants and Does 1

13   through 25, and each of them, and in doing the things alleged was acting within the course and

14   scope of their agency, agreement, employment, conspiracy, joint ventureship and/or alter ego

15   relationship, and in furtherance of this agency, agreement, employment, conspiracy, joint

16   ventureship and/or alter ego relationship, and with the full knowledge, approval, agreement,

17   permission, consent, ratification, either express or implied, of each of the remaining defendants,

18   including Defendants and Does 1 through 25, and each of them.

19         10.     Plaintiff is informed and believes, and on that basis alleges, that at all relevant

20   times, Defendants and Does 1 through 25, and each of them, knowingly conspired, joined, and

21   participated with each other in the conduct alleged, and that each defendant is therefore liable with

22   each other defendant for the conduct alleged and for the relief being sought.

## JURISDICTION AND VENUE

24         11.     Jurisdiction and venue in this Court are proper against all defendants because

25   defendant Bolton does business in Los Angeles, California, and in this judicial district, the

26   Standard Broker Fee Agreement at issue in this action was entered into in the County of Los

27   Angeles, California and has a choice of law provision electing California law, the producer who

28   issued the insurance policy at issue does business in Los Angeles, California, and in this judicial

1   district, defendants Doherty and Morey are licensed insurance agents and/or brokers doing

2   business in Los Angeles, California, in this judicial district, the Plaintiff is a national company

3   who does business in Los Angeles, California, and in this judicial district, and defendants' conduct

4   occurred in the County of Los Angeles, California.  Plaintiff is seeking damages in excess of the

5   minimum unlimited jurisdictional limits of this Court. Venue is proper in the County of Los

6   Angeles and in this judicial district because Plaintiff's tort causes of action arose in the County of

7   Los Angeles in this judicial district.

8   **NATURE OF ACTION**

9        12.    Vitamin Energy LLC was formed in or about late-2017.  Vitamin Energy makes

10   beverage products that provide consumers with increased energy and other health benefits.

11        13.    This case arises out of Defendants Bolton, Doherty, and Morey's

12   misrepresentations regarding their expertise and the insurance broker services that would be

13   provided, which induced Vitamin Energy to hire Bolton, and resulted in Defendants' failure to

14   procure requested and necessary insurance coverage for the newly formed Vitamin Energy

15   business, despite representations by Defendants that they were experts in the field, in risk

16   management, and that they were uniquely qualified to, and would in fact, procure all necessary

17   insurance coverage for Vitamin Energy.

18   **GENERAL ALLEGATIONS**

19        14.    In or about July 2018, Vitamin Energy LLC's manager,  Gorman, called defendant

20   Bolton to request a commercial insurance policy for Vitamin Energy.  Gorman was referred to

21   Bolton through its manufacturing partner in the industry, NVE.

22        15.    Gorman spoke with an agent and/or broker for Bolton, Chris Morey ("Morey") and

23   explained that Vitamin Energy was a new business, that neither Gorman nor Vitamin Energy had

24   any experience in the field of dietary supplements and energy shots, and needed business

25   insurance to cover all risks in entering the field.

26        16.    On or about July 17-23, 2018, Morey represented to Gorman that Bolton and its

27   agents are experts in the field of dietary supplements, and sent Gorman several blog articles

28   explaining and demonstrating Bolton's expertise in the field.  Morey also represented to Gorman

1    that Bolton could provide risk management services to Vitamin Energy. Morey further

2    represented that Bolton was uniquely qualified to provide insurance broker services to Vitamin

3    Energy, and to procure for Vitamin Energy all necessary coverage for the new business.

4         17.     On information and belief, Vitamin Energy alleges that Morey/Bolton made such

5    representations, and sent blog articles, to Gorman/Vitamin Energy with the intent to induce

6    Gorman/Vitamin Energy to hire Bolton/Morey as their insurance brokers, and Gorman/Vitamin

7    Energy relied on such representations.

8         18.     On or about July 20-23, 2018, Gorman spoke with Doherty who represented to him

9    that Morey was a highly experienced insurance broker and specializes in the field of dietary

10    supplements and energy shots. Doherty further represented to Gorman that Morey was an expert

11    broker who regularly placed insurance for companies similar to Vitamin Energy, and that Morey

12    would advise Gorman as to the insurance needed for Vitamin Energy.

13         19.     On information and belief, Vitamin Energy alleges that Doherty/Bolton made such

14    representations to Gorman/Vitamin Energy with the intent to induce Gorman/Vitamin Energy to

15    hire Bolton as their insurance brokers, and Gorman/Vitamin Energy relied on such representations.

16         20.     Gorman agreed to work with Morey/Bolton to obtain insurance for Vitamin

17    Energy. Morey represented to Gorman that he would procure the insurance necessary for Vitamin

18    Energy, and that he would advise Gorman and Vitamin Energy as to the particular coverages

19    needed to protect the business.

20         21.     In July 2018, Bolton provided Vitamin Energy with a "Standard Broker Fee

21    Agreement" (a true and correct copy of which is attached to this Complaint as Exhibit A), which

22    included the following provisions:

23

24            2. CUSTOMER appoints BOLTON as CUSTOMER'S insurance Broker of record.
            Bolton agrees to transact insurance on behalf of the CUSTOMER.

25            ***          ***          ***
            4. BOLTON agrees to provide the following services: Insurance placement, claims

26            support, and risk management support PROVIDED, HOWEVER, that BOLTON
            makes no representation or warranty regarding: (a) the financial solvency, or ability

27            to pay claims, of any insurer (or insurers) with whom CUSTOMER'S policies may
            be placed; or (b) the sufficiency of coverage or coverages in the policy or policies

28            obtained for CUSTOMER.

22. On information and belief, Morey, on behalf of Bolton, advised Gorman, on behalf of Vitamin Energy, as to the coverage he believed was sufficient to cover the business. Morey further represented to Gorman that Bolton would locate and procure for Vitamin Energy the type of insurance policy, with the requisite coverages, as an expert in the field of dietary supplement and energy shot insurance.

23. In discussions regarding the type of insurance needed for Vitamin Energy, Gorman informed Morey/Bolton that they were concerned that Vitamin Energy could be sued by "5-hour Energy" since they were notoriously litigious, and often used litigation to quell competition. Morey/Bolton confirmed that they were aware of the propensities of "5-Hour Energy" to file litigation, including for trademark infringement, and represented to Gorman/Vitamin Energy that Bolton would provide the right coverage to account for "5-Hour Energy" litigation propensities.

24. On or about July 19, 2018, Morey provided Gorman with a blank application for insurance titled "NutraPLUS Application" on a form for Markel. Morey also provided Gorman with a "Dietary Supplement Questionnaire" on Bolton stationary.

25. On July 19, 20218, Gorman, on behalf of Vitamin Energy, submitted the completed and signed application for insurance to Bolton, along with the completed "Dietary Supplement Questionnaire".

26. On or about July 20, 2018, Bolton received a Quotation from Worldwide Facilities, LLC, for a General Liability Insurance policy from Evanston Insurance Company. Bolton provided the Quotation to Vitamin Energy.

27. In a July 20, 2018 email to Gorman, Morey stated "We worked VERY fast to get you this quote as I understand you want to finalize this ASAP." However, at no time did Morey caution Gorman that the proposed Evanston policy did not contain necessary coverages for a new business in the industry.

28. The July 20, 2018 email from Morey to Gorman contained certain disclosures as to certain coverages not included in the proposed Evanston policy. Specifically, Morey disclosed that the proposed insurance policy did not contain Product Recall Coverage, Cyber Insurance, Auto Liability, or Employee Benefit Liability. Morey failed, however, to advise that the proposed

insurance policy did not provide coverage for false advertising, mislabeling, or trademark

infringement.  This disclosure was absent despite the fact that Bolton knew, or should have

known, that such coverage was crucial for any dietary supplement or energy shot business.

29.     In fact, on October 21, 2019, Morey posted a blog to Bolton's website stating:

When it comes to securing proper coverage, the topics of false advertising, mislabeling and trademark infringement are notoriously gray areas for dietary supplement and CBD business owners.

Unfortunately, insurance oversight with any of these risks can be incredibly costly, so it's important that you understand which policies can adequately protect your business—and to what extent.

**False Advertising, Mislabeling and How it Affects Your Business**

As a business owner, you might find yourself in a position where a customer finds a label discrepancy on one of your products.

For example, they purchase an item and submit it to a laboratory for testing to confirm accuracy. Even the most miniscule variation can result in legal action, claiming deceptive, unlawful behavior and false advertising.

Many are shocked to find out that neither their general liability policy nor personal and advertising liability coverage protect you from this type of claim.

30.     At the time Defendants were providing advice to Vitamin Energy regarding the

necessary coverages for Vitamin Energy, Defendants knew or should have known that Vitamin

Energy needed to obtain a policy with coverage for false advertising, mislabeling, or trademark

infringement.  On information and belief, Plaintiff alleges that Defendants failed to advise Vitamin

Energy of these necessary coverages since Defendants mistakenly believed that the proposed

Evanston policy would provide such coverages.  Defendants' failure to disclose to Plaintiff the

absence of such coverages fell below the standard of care in the industry, particularly for a broker

who held itself out as an expert in the field.

31.     On or about July 23, 2018, Bolton and Vitamin Energy entered into the "Standard

Broker Fee Agreement".

32.     On or about July 23, 2018, Morey spoke with Gorman and represented to him that the proposed Evanston Insurance Company policy would provide the coverage Gorman requested for Vitamin Energy, and Morey advised and recommended that Vitamin Energy purchase the proposed policy.  Morey represented to Gorman that the proposed Evanston policy provided the coverage that Vitamin Energy would need to protect all risk of a new business entering the field of dietary supplements and specifically energy shots.

33.     On or about July 23, 2018, in reliance on the advice, recommendation, and representations of the Defendants, Gorman agreed to purchase the Evanston Insurance Company Policy, and the policy was bound, policy number SP884506 ("Evanston Policy"), a true and correct copy of which is attached as Exhibit B to this Complaint.

34.     On June 10, 2019, Vitamin Energy was sued by the parent company of "5-Hour Energy" International IP Holdings, LLC and Innovation Ventures, LLC (together, the "Michigan Plaintiffs") in the United States District Court for the Eastern District of Michigan (the "Michigan Lawsuit"). A copy of the Complaint filed against Vitamin Energy in the Michigan Lawsuit (the "Michigan Complaint") is attached as Exhibit C.

35.     Among other claims, the Michigan Complaint alleges that Vitamin Energy engaged in false and misleading advertising that ultimately disparaged the Michigan Plaintiffs' products, commonly known as 5-Hour Energy "liquid energy shots."

36.     Specifically, the Michigan Complaint alleges that Vitamin Energy "advertises its product with a series of misleading and false statements, including false and misleading comparative advertising and claims that [Vitamin Energy's] products provide steroid-like athletic performance enhancement." See Michigan Complaint, ¶ 32 (emphasis added).

37.     The Michigan Plaintiffs further allege that Vitamin Energy's allegedly false, misleading, confusing, and deceptive advertising has caused them to suffer both economic and irreparable injury. See Michigan Complaint, ¶¶ 45, 52.

38.     The Michigan Plaintiffs further alleged claims for common law trademark infringement, indirect trademark infringement, and dilution under 15 U.S.C. § 1125(c), as well as unfair competition under Michigan law.

1       39.     On June 13, 2019, Gorman notified Bolton of the Michigan Lawsuit and requested

2   that Bolton tender the lawsuit to Evanston.

3       40.     On June 13, 2019, Morey responded to Gorman referring him to two blog posts

4   written by Doherty, and advising: "We can absolutely report this to the carrier (PLEASE

5   CONFIRM) but that may just delay what will most likely be a declination and we would let the

6   carrier be the one to determine that!"

7       41.     On information and belief, Plaintiff alleges that Bolton, Doherty, and Morey knew

8   that the Evanston Policy did not provide coverage for false advertising or trademark infringement

9   either: 1) prior to and/or at the time the Evanston Policy was procured, and failed to disclose the

10  lack of coverage to Vitamin Energy; 2) sometime between July 23, 2018 and June 13, 2019, and

11  failed to disclose the lack of coverage to Vitamin Energy in breach of Defendants' continuing

12  fiduciary duties and risk management obligations to Vitamin Energy; or 3) when Defendants

13  received the Michigan Lawsuit and reviewed the Evanston Policy for the first time, in breach of

14  the standard of care of an expert in the field, as well as Defendants' continuing fiduciary duties

15  and risk management obligations to Vitamin Energy.

16      42.     On information and belief, Plaintiff alleges that at the time Defendants procured the

17  Evanston Policy for Vitamin Energy, insurance coverage for Personal and Advertising Injury

18  (PAI) was available through other insurance carriers.  The standard PAI provision includes

19  coverage for personal and advertising injury resulting from the insured's "use of another's

20  advertising idea in your advertisement" or "Infringing upon another's copyright, trade dress or

21  slogan in your advertisement."  The Evanston Policy, however, did not contain such coverage, and

22  Defendants failed to disclose this fact to Vitamin Energy.

23      43.     On information and belief, Plaintiff alleges that at the time Defendants procured the

24  Evanston Policy for Vitamin Energy, insurance coverage for trademark infringement was available

25  through other insurance carriers, and could be purchased by rider or endorsement to most

26  commercial insurance policies.  The Evanston Policy, however, did not contain such coverage, and

27  Defendants failed to disclose this fact to Vitamin Energy, nor did Defendants offer to procure an

28  insurance policy with optional coverage for trademark infringement.

44.     Bolton tendered the Michigan Lawsuit to Evanston to provide a defense to Vitamin Energy (the "Claim").

45.     On July 10, 2019, Evanston denied the Claim.

46.     On July 15, 2019, Vitamin Energy disputed the adverse claim decision by Evanston.

47.     On July 19, 2019, Evanston reaffirmed the adverse claim decision.

48.     On information and belief, Plaintiff alleges that had the Evanston Policy contained a standard PAI coverage provision, or a rider or endorsement providing coverage for trademark infringement, Evanston would not have denied the Claim and would provide Vitamin Energy with a fully paid for defense of the Michigan Lawsuit.

49.     On information and belief, Plaintiff alleges that had Defendants not breached the standard of care, they would have offered and/or procured a different insurance policy for Vitamin Energy containing a standard PAI coverage provision, or a rider or endorsement providing coverage for trademark infringement, and Vitamin Energy would therefore have been provided a fully paid for defense of the Michigan Lawsuit.

50.     But for the negligence of, and breaches of fiduciary duty by Defendants in failing advise Plaintiff to purchase an insurance policy with a standard PAI provision, and a rider or endorsement for trademark infringement, Vitamin Energy would have had coverage for the Michigan Lawsuit.

51.     On July 22, 2019, Vitamin Energy filed suit against Evanston in District Court in Pennsylvania for breach of the Policy ("Pennsylvania Coverage Action").

52.     In or about March 2020, much of the United States of America, and the majority of its courts, including the Los Angeles Superior Court, closed due to the Covid-19 pandemic.  On March 27, 2020, the California Governor issued an order giving the Judicial Council of California authority to adopt emergency rules in response to the COVID-19 pandemic. Under that order, the Judicial Council adopted Emergency Rule 9. The initial version of Emergency Rule 9, issued April 6, 2020 tolled the statute of limitations for civil actions from April 6, 2020, until 90 days

1    after the Governor lifts the state of emergency. The rule was later amended on May 29, 2020, to

2    provide specific dates to end the tolling periods, thereby creating greater certainty for litigants.

3         53.   Amended Emergency Rule 9 creates two tolling periods which depends on the

4    length of the pertinent statute of limitation. Under Rule 9(a), statutes of limitations that exceed 180

5    days are tolled from April 6, 2020, until October 1, 2020.  The practical effect of the Amended

6    Rule 9(a) is that civil statutes of limitation have been extended by 178 days, i.e. the period

7    between April 6, 2020 and October 1, 2020.

8         54.   On April 17, 2020, the Michigan Plaintiffs filed an amended complaint (hereinafter

9    the "Underlying Complaint"). The Underlying Complaint alleges claims for: (1) Trademark

10   Infringement under 15 U.S.C. § 1114 (Lanham Act); (2) False and Misleading Descriptions and

11   Designations of Affiliation, Connection, Association, Source, Sponsorship, and Approval under 15

12   U.S.C. § 1125(a)(1)(A) (Lanham Act); (3) False Advertising under 15 U.S.C. § 1125(a)(1)(B)

13   (Lanham Act); (4) Common Law Trademark Infringement; (5) Indirect Trademark Infringement;

14   (6) Dilution under 15 U.S.C. § 1125(c) (Lanham Act); and (7) Unfair Competition under Michigan

15   Compiled Laws § 445.903.

16        55.   The Michigan Plaintiffs further allege that as a result of Plaintiff's "false,

17   misleading, confusing, and deceptive activities" and "false and misleading commercial

18   advertising," they have suffered "irreparable and economic injury ... including loss of good will,

19   reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits."

20   (Underlying Complaint, ¶¶ 65, 74.)

21        56.   The Michigan Plaintiffs seek as relief an award of damages, treble damages,

22   attorney fees and costs, and a preliminary and permanent injunction against Vitamin Energy.

23        57.   On information and belief, Plaintiff alleges that the Michigan Lawsuit was filed by

24   the Michigan Plaintiffs as a tactic to bankrupt Vitamin Energy and prevent the marketing and sale

25   of Vitamin Energy's competitive product by forcing Vitamin Energy to exhaust its resources in

26   defense of the Michigan Lawsuit.

27

28

58. Without the substantial backing of its insurance company Evanston, Vitamin Energy is facing extreme financial hardship caused by Evanston's failure and/or refusal to provide a paid for defense of the Michigan Lawsuit.

59. Evanston's adverse claim decision, and refusal to provide a fully paid for defense of the Michigan Lawsuit is a direct and proximate result of Bolton's failure to procure requested and necessary coverage for Vitamin Energy, and Defendants' breach of the standard of care and their fiduciary duties to Vitamin Energy.

60. The Parties to the Pennsylvania Coverage Action filed cross-motions for judgment on the pleadings, and a hearing was held on July 14, 2020.

61. On November 23, 2020, the Pennsylvania District Court granted Evanston's Motion for Judgment on the Pleadings, and denied Vitamin Energy's Motion for Partial Judgment on the Pleadings.

62. The Pennsylvania Coverage Action is currently on appeal pending a decision by the United States District Court for the Third Circuit. Vitamin Energy has spent hundreds of thousands of dollars litigating the Pennsylvania Coverage Action, which are recoverable as damages in this case. *See Third Eye Blind, Inc. v. Near North Entertainment Ins. Services, LLC* (2005) 127 Cal.App.4th 1311.

63. Vitamin Energy has been left without a paid for defense of the Underlying Complaint, and has incurred attorney fees and costs in the Michigan Lawsuit and Pennsylvania Coverage Action in an amount according to proof at trial, but in excess of the jurisdictional minimum of this Court.

64. Vitamin Energy has performed every obligation and satisfied every condition required under the agreements alleged herein not otherwise excused or waived.

## FIRST CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

(Plaintiff Against Defendants Bolton & Company, Gregory Matthew Doherty, and Chris Morey, including, Does 1 through 25)

65. Plaintiff incorporates by reference each of the foregoing paragraphs of this Complaint, as though fully set forth herein.

66.     The Defendants were hired by Plaintiff to provide advice, analysis, evaluation of risk and recommendations pertaining to their insurance needs and/or desires pursuant to their professional duties as licensed insurance brokers, as well as the Standard Broker Fee Agreement. Plaintiff hired the Defendants to prepare all appropriate documentation, to obtain the requested and necessary insurance, and to otherwise carry out all activities and obligations of trained and licensed insurance brokers.

67.     Defendants held themselves out as having special knowledge and expertise regarding the insurance sought by Plaintiff.  Specifically, Defendants held themselves out as experts in the field for which Vitamin Energy was entering, including for dietary supplement insurance, including for a company that manufactures and sells energy shots.  Defendants also offered their advice for the coverage sought by Plaintiff.

68.     The Defendants have acted negligently, carelessly, and below the standard of care for insurance agents and/or brokers with regard to the activities and work which they performed and which they failed to perform on behalf of Plaintiff in procuring the insurance requested as described in the preceding allegations.  The acts of carelessness and negligence include, but are not limited to: failing to properly advise Plaintiff on insurance issues; misrepresenting insurance coverage; failing to obtain promised insurance coverage; misrepresenting their expertise in the industry; failing to disclose that certain coverages were not included in the Evanston Policy; and otherwise failing to act in a professional and competent manner so that Plaintiff would be provided the insurance coverage they requested, expected, and/or needed.

69.     Plaintiff seeks recovery against the Defendants for the acts and omissions alleged above and negligent misrepresentations of coverage made by the Defendants in the scope and course of their employment as brokers of insurance.

70.     Plaintiff believed and reasonably relied on the Defendants' representations regarding the coverage procured by Defendants, and had no reason to believe that any of the Defendants' statements, conduct, or actions were incorrect, or constituted misrepresentations of any sort.  Plaintiff reasonably relied upon the Defendants' statements and representations regarding the nature and extent of coverage and on the conduct of these Defendants to their

1  detriment.  Plaintiff relied upon the Defendants to obtain the coverage that was promised and

2  requested by Plaintiff.  Defendants negligently failed to procure the coverage promised by

3  Defendants and requested by Plaintiff, leaving Plaintiff without insurance coverage for the

4  Michigan Lawsuit, and without the substantial backing of an insurance company in defense of the

5  suit.

6       71.     Defendants, and Does 1 through 25, assumed a duty to use the skill, prudence,

7  diligence, knowledge and care that a reasonably careful insurance broker would have used in

8  similar circumstances to review Plaintiff's business, and expressly advise, approve, or otherwise

9  warn Plaintiff that the coverage being procured was not sufficient.

10       72.     Defendants' advice to Plaintiff regarding coverage created a special duty of care,

11  which was breached as alleged above.

12       73.     These breaches are a substantial factor and direct and proximate cause of Plaintiff's

13  damages.

14       74.     As a direct and proximate result of the acts of the Defendants, Plaintiff has suffered

15  and will hereafter suffer damages as detailed throughout this Complaint, and other consequential

16  damages in a sum to be proven at the trial of this action, but in excess of the jurisdictional

17  minimum of this Court.

18       **SECOND CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTIES**

19  (Plaintiff Against Defendants Bolton & Company, Gregory Matthew Doherty, and Chris Morey,

20  including, Does 1 through 25)

21       75.     Plaintiff incorporates by reference each of the foregoing paragraphs of this

22  Complaint, as though fully set forth herein.

23       76.     The Defendants were contacted by Plaintiff initially for the sole purpose of

24  obtaining a new insurance policy for a new business formed for the sole purpose of manufacturing

25  and sales of energy shots.

26       77.     The Defendants agreed to procure for Plaintiff a new insurance policy for

27  Plaintiff's business.

28

78.     The Defendants were also hired to analyze Plaintiff's insurance needs and required coverages, to obtain/provide insurance policies to fulfill Plaintiff's insurance needs, and to provide risk management services.

79.     The Defendants acted on Plaintiffs' behalf in securing the aforementioned Evanston Policy.

80.     The Defendants and Plaintiff entered into a special relationship whereby Defendants became intimately involved with Plaintiff's business, to the point that Defendants represented to Plaintiff that they were the leading experts in the field of insurance for energy shots, and represented to Plaintiff that they would procure the exact policy that Plaintiff needed for its new energy shot business, and entered into an agreement to provide risk management services for the Plaintiff.

81.     Plaintiff relied upon Defendants' representations that Defendants were acting as experts on behalf of Plaintiffs, and that they were procuring a policy of insurance that would adequately meet the needs of Plaintiff.  Defendants, however, were looking out in their own best interests, rather than looking out for Plaintiff's needs as new business in the field.  In particular, Defendants were aware that the Michigan Plaintiffs had a propensity to file suit against all new businesses in the energy shot field, but failed to advise Plaintiff of this fact, and failed to advise Plaintiff to obtain broader coverage to protect against this risk, including failing to advise Plaintiff to obtain a policy of insurance with a standard PAI coverage provision, or coverage for trademark infringement.

82.     The Defendants breached their fiduciary duties owed to Plaintiffs by only securing the most basic business insurance coverage, to the detriment of Plaintiff. Defendants represented that they were securing coverage for Plaintiffs, but Defendants effectively only secured limited coverage for Plaintiff's business. Accordingly, Defendants failed to secure the coverage(s) requested, promised, intended, and expected to protect Plaintiff.

83.     Plaintiff alleges on information and belief that the Defendants put their own interests above those of Plaintiff for the purpose of enriching themselves in breach of their fiduciary duties to Plaintiff, to the detriment of Plaintiff.

1    84.    As a direct and proximate result of the Defendants' breach of their fiduciary duties

2    to Plaintiffs,  Plaintiffs have been damaged in the sums expended and hereafter to be expended for

3    attorney's fees and costs for their defense of the Michigan Lawsuit, and for that portion of any

4    judgment rendered against and paid for by Plaintiff in the Michigan Lawsuit for which Plaintiff

5    has or will not be indemnified by insurance coverage, and all other general and consequential

6    damages, according to proof at trial, but in excess of the jurisdictional minimum of this Court.

7    <u>**THIRD CAUSE OF ACTION FOR FRAUD IN THE INDUCEMENT**</u>

8    (Plaintiff Against Defendants Bolton & Company, Gregory Matthew Doherty, and Chris Morey,

9    including, Does 1 through 25)

10    85.    Plaintiff incorporates by reference each of the foregoing paragraphs of this

11    Complaint, as though fully set forth herein.

12    86.    The Defendants, and specifically Doherty and Morey, made and/or caused to be

13    made the following written promises and/or misrepresentations orally, in electronic mail, and on

14    Bolton's website, regarding the Bolton business to Plaintiff and its principal Gorman, in July 2018

15    prior to Plaintiff hiring the Defendants to be their insurance brokers:

16    • Bolton is an expert in the field of dietary supplements, including procuring

17    insurance for companies that manufacture and sell energy shots;

18    • Bolton's expertise would be provided to Vitamin Energy for continuing risk

19    management services;

20    • Bolton would evaluate the insurance needs of Vitamin Energy, and procure an

21    insurance policy to meet those needs;

22    • Bolton was uniquely qualified to provide insurance broker services to Vitamin

23    Energy, and to procure for Vitamin Energy all necessary coverage for the new

24    business;

25    • Morey was a highly experienced insurance broker and specializes in the field of

26    dietary supplements and energy shots.

27

28

- Morey was an expert broker who regularly placed insurance for companies similar to Vitamin Energy, and that Morey would advise Gorman as to the insurance needed for Vitamin Energy.

87.    These representations and promises were false.

88.    Defendants knew or should have known that these misrepresentations and promises were false when they made them.  Alternatively, they made these representations with a conscious disregard of the rights and interests of Plaintiff.

89.    Defendants acted with the intent to defraud Plaintiff.  At the time the misrepresentations and false promises were made, Defendants knew them to be false.

90.    Defendants never intended to perform many of the promises they made to Plaintiffs, as their insurance broker, regarding the procurement of insurance and the represented special relationship when they made them.

91.    Defendants intended Plaintiff to rely on the aforementioned misrepresentations promises.

92.    Plaintiff reasonably relied upon Defendants' promises and misrepresentations, and hired the Defendants as a result.

93.    As a proximate result of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer economic losses and other general and specific damages, all in an amount to be determined according to proof.

94.    Defendants' conduct was done with malice, oppression and/or fraud.  Defendants conduct was despicable conduct carried on with a willful and conscious disregard for the rights of others, especially Plaintiff, and otherwise was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of their rights entitling Plaintiff to recover punitive damages according to proof.

///

///

Case No.:

**FOURTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION**

(Plaintiff Against Defendants Bolton & Company, Gregory Matthew Doherty, and Chris Morey, including, Does 1 through 25)

95.     Plaintiff incorporates by reference each of the foregoing paragraphs of this Complaint, as though fully set forth herein.

96.     Defendants negligently misrepresented to Plaintiff the material facts hereinabove alleged.  Defendants owed Plaintiff a duty to disclose the true facts.

97.     Defendants' representations of existing material facts were false.  When Defendant made the misrepresentations, they knew them to be false, or had no reasonable basis to believe that they were true, and made the misrepresentations with the intent and purpose of inducing Plaintiff to rely on the misrepresentations.

98.     At all times material hereto, Plaintiff was unaware of the falsity of the misrepresentations made by Defendants.  Plaintiff justifiably relied on the misrepresentations of Defendants.  As a result of Defendants concealing the true facts from Plaintiff, Plaintiff reasonably relied upon the misrepresentations, because in the exercise of reasonable diligence, Plaintiff could not have discovered the true facts.

99.     Defendants did not exercise reasonable care or competence in obtaining or communicating the information contained in these false representations.

100.     Plaintiff justifiably relied on each of Defendants' representations.

101.     The negligent misrepresentations by Defendants proximately caused the damages suffered by Plaintiff.

102.     As a proximate result of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer economic losses and other general and specific damages, all in an amount to be determined according to proof.

**FIFTH CAUSE OF ACTION FOR BREACH OF CONTRACT**

(Plaintiff Against Defendants Bolton & Company, including, Does 1 through 25)

103.     Plaintiff incorporates by reference each of the foregoing paragraphs of this Complaint, as though fully set forth herein.

1       104.    Plaintiff performed each and every obligation and satisfied every condition required

2   under the Standard Broker Fee Agreement not otherwise excused or waived.

3       105.    Bolton has breached the Standard Broker Fee Agreement by failing to provide risk

4   management support, as discussed herein above.

5       106.    As a direct result of Bolton's breach, Plaintiff suffered and/or will suffer damages,

6   including but not limited to unreimbursed investigation and defense fees and costs; and other

7   economic and consequential damages in excess of this Court's unlimited diversity jurisdiction,

8   including prejudgment interest and costs of suit.

9   **PRAYER FOR RELIEF**

10       WHEREFORE, Plaintiff Vitamin Energy prays for judgment against Defendants Bolton &

11   Company, Gregory Matthew Doherty, and Chris Morey and Does 1 through 25, and each of them,

12   as follows:

13       On the First Count for Professional Negligence:

14       1.    For general, special and incidental damages;

15       2.    For pre-judgment interest;

16       3.    For costs, and other damages;

17       On the Second Count for Breach of Fiduciary Duties:

18       4.    For general, special and incidental damages;

19       5.    For pre-judgment interest;

20       6.    For costs, and other damages;

21       On the Third Cause of Action for Fraud in the Inducement:

22       7.    For general, special and incidental damages;

23       8.    For punitive damages;

24       9.    For pre-judgment interest;

25       10.    For costs, and other damages;

26       On the Fourth Cause of Action for Negligent Misrepresentation:

27       11.    For general, special and incidental damages;

28       12.    For pre-judgment interest;

-18-

Case No.:

13.    For costs, and other damages;

<u>On the Fifth Cause of Action for Breach of Contract against Bolton only</u>:

14.    For general, special and incidental damages;

15.    For pre-judgment interest;

16.    For costs, and other damages;

<u>On all Causes of Action</u>:

17.    For any additional relief the court deems appropriate.

Dated:  December 31, 2021                    WINTHROP LAW GROUP, P.C.


By:  _____

REID A. WINTHROP
Attorneys for Plaintiff VITAMIN
ENERGY, INC.

## DEMAND FOR JURY TRIAL

Plaintiff Vitamin Energy, Inc. hereby demands trial by jury.

Dated: December 31, 2021                    WINTHROP LAW GROUP, P.C.


                                      By:  _____
                                            REID A. WINTHROP
                                            Attorneys for Plaintiff VITAMIN
                                            ENERGY, INC.

Electronically FILED by Superior Court of California, County of Los Angeles on 01/03/2022 12:00 AM Sherri R. Carter, Executive Officer/Clerk of Court, by C. Monroe, Deputy Clerk
22STCV00036
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Lawrence Riff

1

Reid A. Winthrop (SBN 223527)
**WINTHROP LAW GROUP, P.C.**

2

120 Newport Center Dr.
Newport Beach, California 92660

3

Phone: 949-269-3256 | Fax: 949-209-1919
Email: *reid@winthroplawgroup.com*

4

Attorneys for Plaintiff VITAMIN ENERGY, INC.

5

6

7

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

8

**FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT**

9

10

| | |
|---|---|
| VITAMIN ENERGY, INC., a Delaware corporation, | Case No.: |
| | **22STCV00036** |
| Plaintiff, | **COMPLAINT FOR DAMAGES:** |
| vs. | 1) **PROFESSIONAL NEGLIGENCE** |
| | 2) **BREACH OF FIDUCIARY DUTIES** |
| | 3) **FRAUD IN THE INDUCEMENT** |
| BOLTON & COMPANY, a California licensed insurance agency; GREGORY MATTHEW DOHERTY, a licensed insurance agent, CHRIS MOREY, a licensed insurance agent, and Does 1 through 25, | 4) **NEGLIGENT MISREPRESENTATION** |
| | 5) **BREACH OF CONTRACT** |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | [Filed Concurrently With: |
| | -  Summons |
| | -  Civil Case Cover Sheet] |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.:

COMPLAINT

**THE PARTIES**

1.      Plaintiff Vitamin Energy, Inc. is, and at all times mentioned herein, was, a Delaware corporation organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business located at 391 Wilmington West Chester Pike, Unit 3, #403, Glen Mills, Pennsylvania, and doing business in Los Angeles, California. Plaintiff Vitamin Energy Inc. is the successor in interest by operation of law to Vitamin Energy, LLC, a limited liability company organized and existing under and by virtue of the laws of the State of Pennsylvania, and the party who contracted with defendants as set forth herein this Complaint. Vitamin Energy Inc. assumed all rights, obligations and liabilities of Vitamin Energy LLC, including all contractual rights and claims, and is therefore the party in interest in this lawsuit (hereafter referred to as "Plaintiff" or "Vitamin Energy").

2.      Non-party Richard Gorman (hereinafter, "Gorman") is the CEO of Vitamin Energy.

3.      Defendant Bolton & Company ("Bolton") is and was at all relevant times a California licensed insurance brokerage, License #: 0008309, with a principal place of business in Pasadena, Los Angeles County, California.

4.      Defendant Greg M. Doherty ("Doherty") is a licensed insurance agent and/or broker, License #: 0508702, and, on information and belief, Plaintiff alleges a former Executive Vice President of Bolton, who at all relevant times lived and conducted business as an insurance agent and/or broker in Los Angeles, California.

5.      Defendant Chris Morey ("Morey") is a licensed insurance agent and/or broker, License #: 0K59414, and an employee of Bolton, who at all relevant times lived and conducted business as an insurance agent and/or broker in Los Angeles, California.

6.      Bolton, Doherty and Morey will sometimes be referred to herein as the "Defendants".

7.      Plaintiff does not know the true names or capacities, whether individual, corporate, associate, or otherwise, of Defendant Does 1 to 25 ("Doe Defendants"). Pursuant to CCP section 474, Plaintiff sues these defendants under the fictitious name "Doe." Each of the Doe defendants is legally responsible in some manner for Plaintiff's damages. If and when Plaintiff learns their

1  real names and identities, Plaintiff will ask the Court for permission to amend this complaint to

2  sue them under their real names.

3      8.    Plaintiff is informed and believes, and on that basis alleges, that each of the

4  fictitiously named Doe Defendants is responsible in some manner for the occurrences alleged, in

5  that Plaintiff's injuries, as alleged, were legally caused by these Doe Defendants' fraud, false

6  promises, negligence, actions, inactions, omissions, contributions, or otherwise, and the Doe

7  Defendants are thus liable in some manner to Plaintiff for the injuries claimed.

8      9.    Plaintiff is informed and believes, and on that basis alleges, that at all relevant

9  times, Defendants and Does 1 through 25, and each of them, was the principal, agent, servant,

10  employee, co-conspirator, alter ego, joint venturer, shareholder, investor, independent contractor,

11  and/or designated representative of the remaining defendants, including Defendants and Does 1

12  through 25, and each of them, and in doing the things alleged was acting within the course and

13  scope of their agency, agreement, employment, conspiracy, joint ventureship and/or alter ego

14  relationship, and in furtherance of this agency, agreement, employment, conspiracy, joint

15  ventureship and/or alter ego relationship, and with the full knowledge, approval, agreement,

16  permission, consent, ratification, either express or implied, of each of the remaining defendants,

17  including Defendants and Does 1 through 25, and each of them.

18      10.    Plaintiff is informed and believes, and on that basis alleges, that at all relevant

19  times, Defendants and Does 1 through 25, and each of them, knowingly conspired, joined, and

20  participated with each other in the conduct alleged, and that each defendant is therefore liable with

21  each other defendant for the conduct alleged and for the relief being sought.

22      **JURISDICTION AND VENUE**

23      11.    Jurisdiction and venue in this Court are proper against all defendants because

24  defendant Bolton does business in Los Angeles, California, and in this judicial district, the

25  Standard Broker Fee Agreement at issue in this action was entered into in the County of Los

26  Angeles, California and has a choice of law provision electing California law, the producer who

27  issued the insurance policy at issue does business in Los Angeles, California, and in this judicial

28  district, defendants Doherty and Morey are licensed insurance agents and/or brokers doing

business in Los Angeles, California, in this judicial district, the Plaintiff is a national company who does business in Los Angeles, California, and in this judicial district, and defendants' conduct occurred in the County of Los Angeles, California. Plaintiff is seeking damages in excess of the minimum unlimited jurisdictional limits of this Court. Venue is proper in the County of Los Angeles and in this judicial district because Plaintiff's tort causes of action arose in the County of Los Angeles in this judicial district.

## NATURE OF ACTION

12.    Vitamin Energy LLC was formed in or about late-2017. Vitamin Energy makes beverage products that provide consumers with increased energy and other health benefits.

13.    This case arises out of Defendants Bolton, Doherty, and Morey's misrepresentations regarding their expertise and the insurance broker services that would be provided, which induced Vitamin Energy to hire Bolton, and resulted in Defendants' failure to procure requested and necessary insurance coverage for the newly formed Vitamin Energy business, despite representations by Defendants that they were experts in the field, in risk management, and that they were uniquely qualified to, and would in fact, procure all necessary insurance coverage for Vitamin Energy.

## GENERAL ALLEGATIONS

14.    In or about July 2018, Vitamin Energy through Gorman called defendant Bolton to request a commercial insurance policy for Vitamin Energy. Gorman was referred to Bolton through its manufacturing partner in the industry, NVE.

15.    Gorman spoke with an agent and/or broker for Bolton, Chris Morey ("Morey") and explained that Vitamin Energy was a new business, that neither Gorman nor Vitamin Energy had any experience in the field of dietary supplements and energy shots, and needed business insurance to cover all risks in entering the field.

16.    On or about July 17-23, 2018, Morey represented to Gorman that Bolton and its agents are experts in the field of dietary supplements, and sent Gorman several blog articles explaining and demonstrating Bolton's expertise in the field. Morey also represented to Gorman that Bolton could provide risk management services to Vitamin Energy. Morey further

represented that Bolton was uniquely qualified to provide insurance broker services to Vitamin

Energy, and to procure for Vitamin Energy all necessary coverage for the new business.

17.     On information and belief, Vitamin Energy alleges that Morey/Bolton made such

representations, and sent blog articles, to Gorman/Vitamin Energy with the intent to induce

Gorman/Vitamin Energy to hire Bolton/Morey as their insurance brokers, and Gorman/Vitamin

Energy relied on such representations.

18.     On or about July 20-23, 2018, Gorman spoke with Doherty who represented to him

that Morey was a highly experienced insurance broker and specializes in the field of dietary

supplements and energy shots.  Doherty further represented to Gorman that Morey was an expert

broker who regularly placed insurance for companies similar to Vitamin Energy, and that Morey

would advise Gorman as to the insurance needed for Vitamin Energy.

19.     On information and belief, Vitamin Energy alleges that Doherty/Bolton made such

representations to Gorman/Vitamin Energy with the intent to induce Gorman/Vitamin Energy to

hire Bolton as their insurance brokers, and Gorman/Vitamin Energy relied on such representations.

20.     Gorman agreed to work with Morey/Bolton to obtain insurance for Vitamin

Energy.  Morey represented to Gorman that he would procure the insurance necessary for Vitamin

Energy, and that he would advise Gorman and Vitamin Energy as to the particular coverages

needed to protect the business.

21.     In July 2018, Bolton provided Vitamin Energy with a "Standard Broker Fee

Agreement" (a true and correct copy of which is attached to this Complaint as Exhibit A, which

included the following provisions:

> 2. CUSTOMER appoints BOLTON as CUSTOMER'S insurance Broker of record.
> Bolton agrees to transact insurance on behalf of the CUSTOMER.
> ***          ***          ***.
> 4. BOLTON agrees to provide the following services: Insurance placement, claims
> support, and risk management support PROVIDED, HOWEVER, that BOLTON
> makes no representation or warranty regarding: (a) the financial solvency, or ability
> to pay claims, of any insurer (or insurers) with whom CUSTOMER'S policies may
> be placed; or (b) the sufficiency of coverage or coverages in the policy or policies
> obtained for CUSTOMER.

22.     On information and belief, Morey, on behalf of Bolton, advised Gorman, on behalf of Vitamin Energy, as to the coverage he believed was sufficient to cover the business.  Morey further represented to Gorman that Bolton would locate and procure for Vitamin Energy the type of insurance policy, with the requisite coverages, as an expert in the field of dietary supplement and energy shot insurance.

23.     In discussions regarding the type of insurance needed for Vitamin Energy, Gorman informed Morey/Bolton that they were concerned that Vitamin Energy could be sued by "5-hour Energy" since they were notoriously litigious, and often used litigation to quell competition.  Morey/Bolton confirmed that they were aware of the propensities of "5-Hour Energy" to file litigation, including for trademark infringement, and represented to Gorman/Vitamin Energy that Bolton would provide the right coverage to account for "5-Hour Energy" litigation propensities.

24.     On or about July 19, 2018, Morey provided Gorman with a blank application for insurance titled "NutraPLUS Application" on a form for Markel.  Morey also provided Gorman with a "Dietary Supplement Questionnaire" on Bolton stationary.

25.     On July 19, 20218, Gorman, on behalf of Vitamin Energy, submitted the completed and signed application for insurance to Bolton, along with the completed "Dietary Supplement Questionnaire".

26.     On or about July 20, 2018, Bolton received a Quotation from Worldwide Facilities, LLC, for a General Liability Insurance policy from Evanston Insurance Company.  Bolton provided the Quotation to Vitamin Energy.

27.     In a July 20, 2018 email to Gorman, Morey stated "We worked VERY fast to get you this quote as I understand you want to finalize this ASAP."  However, at no time did Morey caution Gorman that the proposed Evanston policy did not contain necessary coverages for a new business in the industry.

28.     The July 20, 2018 email from Morey to Gorman contained certain disclosures as to certain coverages not included in the proposed Evanston policy.  Specifically, Morey disclosed that the proposed insurance policy did not contain Product Recall Coverage, Cyber Insurance, Auto Liability, or Employee Benefit Liability.  Morey failed, however, to advise that the proposed

insurance policy did not provide coverage for false advertising, mislabeling, or trademark infringement.  This disclosure was absent despite the fact that Bolton knew, or should have known, that such coverage was crucial for any dietary supplement or energy shot business.

29.     In fact, on October 21, 2019, Morey posted a blog to Bolton's website stating:

When it comes to securing proper coverage, the topics of false advertising, mislabeling and trademark infringement are notoriously gray areas for dietary supplement and CBD business owners.

Unfortunately, insurance oversight with any of these risks can be incredibly costly, so it's important that you understand which policies can adequately protect your business—and to what extent.

**False Advertising, Mislabeling and How it Affects Your Business**

As a business owner, you might find yourself in a position where a customer finds a label discrepancy on one of your products.

For example, they purchase an item and submit it to a laboratory for testing to confirm accuracy. Even the most miniscule variation can result in legal action, claiming deceptive, unlawful behavior and false advertising.

Many are shocked to find out that neither their general liability policy nor personal and advertising liability coverage protect you from this type of claim.

30.     At the time Defendants were providing advice to Vitamin Energy regarding the necessary coverages for Vitamin Energy, Defendants knew or should have known that Vitamin Energy needed to obtain a policy with coverage for false advertising, mislabeling, or trademark infringement.  On information and belief, Plaintiff alleges that Defendants failed to advise Vitamin Energy of these necessary coverages since Defendants mistakenly believed that the proposed Evanston policy would provide such coverages.  Defendants' failure to disclose to Plaintiff the absence of such coverages fell below the standard of care in the industry, particularly for a broker who held itself out as an expert in the field.

31.     On or about July 23, 2018, Bolton and Vitamin Energy entered into the "Standard Broker Fee Agreement".

32. On or about July 23, 2018, Morey spoke with Gorman and represented to him that the proposed Evanston Insurance Company policy would provide the coverage Gorman requested for Vitamin Energy, and Morey advised and recommended that Vitamin Energy purchase the proposed policy. Morey represented to Gorman that the proposed Evanston policy provided the coverage that Vitamin Energy would need to protect all risk of a new business entering the field of dietary supplements and specifically energy shots.

33. On or about July 23, 2018, in reliance on the advice, recommendation, and representations of the Defendants, Gorman agreed to purchase the Evanston Insurance Company Policy, and the policy was bound, policy number SP884506 ("Evanston Policy"), a true and correct copy of which is attached as Exhibit B to this Complaint.

34. On June 10, 2019, Vitamin Energy was sued by the parent company of "5-Hour Energy" International IP Holdings, LLC and Innovation Ventures, LLC (together, the "Michigan Plaintiffs") in the United States District Court for the Eastern District of Michigan (the "Michigan Lawsuit"). A copy of the Complaint filed against Vitamin Energy in the Michigan Lawsuit (the "Michigan Complaint") is attached as Exhibit C.

35. Among other claims, the Michigan Complaint alleges that Vitamin Energy engaged in false and misleading advertising that ultimately disparaged the Michigan Plaintiffs' products, commonly known as 5-Hour Energy "liquid energy shots."

36. Specifically, the Michigan Complaint alleges that Vitamin Energy "advertises its product with a series of misleading and false statements, including false and misleading comparative advertising and claims that [Vitamin Energy's] products provide steroid-like athletic performance enhancement." See Michigan Complaint, ¶ 32 (emphasis added).

37. The Michigan Plaintiffs further allege that Vitamin Energy's allegedly false, misleading, confusing, and deceptive advertising has caused them to suffer both economic and irreparable injury. See Michigan Complaint, ¶¶ 45, 52.

38. The Michigan Plaintiffs further alleged claims for common law trademark infringement, indirect trademark infringement, and dilution under 15 U.S.C. § 1125(c), as well as unfair competition under Michigan law.

39.     On June 13, 2019, Gorman notified Bolton of the Michigan Lawsuit and requested that Bolton tender the lawsuit to Evanston.

40.     On June 13, 2019, Morey responded to Gorman referring him to two blog posts written by Doherty, and advising: "We can absolutely report this to the carrier (PLEASE CONFIRM) but that may just delay what will most likely be a declination and we would let the carrier be the one to determine that!"

41.     On information and belief, Plaintiff alleges that Bolton, Doherty, and Morey knew that the Evanston Policy did not provide coverage for false advertising or trademark infringement either: 1) prior to and/or at the time the Evanston Policy was procured, and failed to disclose the lack of coverage to Vitamin Energy; 2) sometime between July 23, 2018 and June 13, 2019, and failed to disclose the lack of coverage to Vitamin Energy in breach of Defendants' continuing fiduciary duties and risk management obligations to Vitamin Energy; or 3) when Defendants received the Michigan Lawsuit and reviewed the Evanston Policy for the first time, in breach of the standard of care of an expert in the field, as well as Defendants' continuing fiduciary duties and risk management obligations to Vitamin Energy.

42.     On information and belief, Plaintiff alleges that at the time Defendants procured the Evanston Policy for Vitamin Energy, insurance coverage for Personal and Advertising Injury (PAI) was available through other insurance carriers. The standard PAI provision includes coverage for personal and advertising injury resulting from the insured's "use of another's advertising idea in your advertisement" or "Infringing upon another's copyright, trade dress or slogan in your advertisement." The Evanston Policy, however, did not contain such coverage, and Defendants failed to disclose this fact to Vitamin Energy.

43.     On information and belief, Plaintiff alleges that at the time Defendants procured the Evanston Policy for Vitamin Energy, insurance coverage for trademark infringement was available through other insurance carriers, and could be purchased by rider or endorsement to most commercial insurance policies. The Evanston Policy, however, did not contain such coverage, and Defendants failed to disclose this fact to Vitamin Energy, nor did Defendants offer to procure an insurance policy with optional coverage for trademark infringement.

44.     Bolton tendered the Michigan Lawsuit to Evanston to provide a defense to Vitamin Energy (the "Claim").

45.     On July 10, 2019, Evanston denied the Claim.

46.     On July 15, 2019, Vitamin Energy disputed the adverse claim decision by Evanston.

47.     On July 19, 2019, Evanston reaffirmed the adverse claim decision.

48.     On information and belief, Plaintiff alleges that had the Evanston Policy contained a standard PAI coverage provision, or a rider or endorsement providing coverage for trademark infringement, Evanston would not have denied the Claim and would provide Vitamin Energy with a fully paid for defense of the Michigan Lawsuit.

49.     On information and belief, Plaintiff alleges that had Defendants not breached the standard of care, they would have offered and/or procured a different insurance policy for Vitamin Energy containing a standard PAI coverage provision, or a rider or endorsement providing coverage for trademark infringement, and Vitamin Energy would therefore have been provided a fully paid for defense of the Michigan Lawsuit.

50.     But for the negligence of, and breaches of fiduciary duty by Defendants in failing advise Plaintiff to purchase an insurance policy with a standard PAI provision, and a rider or endorsement for trademark infringement, Vitamin Energy would have had coverage for the Michigan Lawsuit.

51.     On July 22, 2019, Vitamin Energy filed suit against Evanston in District Court in Pennsylvania for breach of the Policy ("Pennsylvania Coverage Action").

52.     In or about March 2020, much of the United States of America, and the majority of its courts, including the Los Angeles Superior Court, closed due to the Covid-19 pandemic.  On March 27, 2020, the California Governor issued an order giving the Judicial Council of California authority to adopt emergency rules in response to the COVID-19 pandemic. Under that order, the Judicial Council adopted Emergency Rule 9. The initial version of Emergency Rule 9, issued April 6, 2020 tolled the statute of limitations for civil actions from April 6, 2020, until 90 days

1    after the Governor lifts the state of emergency. The rule was later amended on May 29, 2020, to

2    provide specific dates to end the tolling periods, thereby creating greater certainty for litigants.

3         53.    Amended Emergency Rule 9 creates two tolling periods which depends on the

4    length of the pertinent statute of limitation. Under Rule 9(a), statutes of limitations that exceed 180

5    days are tolled from April 6, 2020, until October 1, 2020.  The practical effect of the Amended

6    Rule 9(a) is that civil statutes of limitation have been extended by 178 days, i.e. the period

7    between April 6, 2020 and October 1, 2020.

8         54.    On April 17, 2020, the Michigan Plaintiffs filed an amended complaint (hereinafter

9    the "Underlying Complaint"). The Underlying Complaint alleges claims for: (1) Trademark

10   Infringement under 15 U.S.C. § 1114 (Lanham Act); (2) False and Misleading Descriptions and

11   Designations of Affiliation, Connection, Association, Source, Sponsorship, and Approval under 15

12   U.S.C. § 1125(a)(1)(A) (Lanham Act); (3) False Advertising under 15 U.S.C. § 1125(a)(1)(B)

13   (Lanham Act); (4) Common Law Trademark Infringement; (5) Indirect Trademark Infringement;

14   (6) Dilution under 15 U.S.C. § 1125(c) (Lanham Act); and (7) Unfair Competition under Michigan

15   Compiled Laws § 445.903.

16        55.    The Michigan Plaintiffs further allege that as a result of Plaintiff's "false,

17   misleading, confusing, and deceptive activities" and "false and misleading commercial

18   advertising," they have suffered "irreparable and economic injury ... including loss of good will,

19   reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits."

20   (Underlying Complaint, ¶¶ 65, 74.)

21        56.    The Michigan Plaintiffs seek as relief an award of damages, treble damages,

22   attorney fees and costs, and a preliminary and permanent injunction against Vitamin Energy.

23        57.    On information and belief, Plaintiff alleges that the Michigan Lawsuit was filed by

24   the Michigan Plaintiffs as a tactic to bankrupt Vitamin Energy and prevent the marketing and sale

25   of Vitamin Energy's competitive product by forcing Vitamin Energy to exhaust its resources in

26   defense of the Michigan Lawsuit.

27

28

58.     Without the substantial backing of its insurance company Evanston, Vitamin Energy is facing extreme financial hardship caused by Evanston's failure and/or refusal to provide a paid for defense of the Michigan Lawsuit.

59.     Evanston's adverse claim decision, and refusal to provide a fully paid for defense of the Michigan Lawsuit is a direct and proximate result of Bolton's failure to procure requested and necessary coverage for Vitamin Energy, and Defendants' breach of the standard of care and their fiduciary duties to Vitamin Energy.

60.     The Parties to the Pennsylvania Coverage Action filed cross-motions for judgment on the pleadings, and a hearing was held on July 14, 2020.

61.     On November 23, 2020, the Pennsylvania District Court granted Evanston's Motion for Judgment on the Pleadings, and denied Vitamin Energy's Motion for Partial Judgment on the Pleadings.

62.     The Pennsylvania Coverage Action is currently on appeal pending a decision by the United States District Court for the Third Circuit.  Vitamin Energy has spent hundreds of thousands of dollars litigating the Pennsylvania Coverage Action, which are recoverable as damages in this case. *See Third Eye Blind, Inc. v. Near North Entertainment Ins. Services, LLC* (2005) 127 Cal.App.4th 1311.

63.     Vitamin Energy has been left without a paid for defense of the Underlying Complaint, and has incurred attorney fees and costs in the Michigan Lawsuit and Pennsylvania Coverage Action in an amount according to proof at trial, but in excess of the jurisdictional minimum of this Court.

64.     Vitamin Energy has performed every obligation and satisfied every condition required under the agreements alleged herein not otherwise excused or waived.

### FIRST CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

(Plaintiff Against Defendants Bolton & Company, Gregory Matthew Doherty, and Chris Morey, including, Does 1 through 25)

65.     Plaintiff incorporates by reference each of the foregoing paragraphs of this Complaint, as though fully set forth herein.

-11-

Case No.:

COMPLAINT

66.     The Defendants were hired by Plaintiff to provide advice, analysis, evaluation of risk and recommendations pertaining to their insurance needs and/or desires pursuant to their professional duties as licensed insurance brokers, as well as the Standard Broker Fee Agreement. Plaintiff hired the Defendants to prepare all appropriate documentation, to obtain the requested and necessary insurance, and to otherwise carry out all activities and obligations of trained and licensed insurance brokers.

67.     Defendants held themselves out as having special knowledge and expertise regarding the insurance sought by Plaintiff.  Specifically, Defendants held themselves out as experts in the field for which Vitamin Energy was entering, including for dietary supplement insurance, including for a company that manufactures and sells energy shots.  Defendants also offered their advice for the coverage sought by Plaintiff.

68.     The Defendants have acted negligently, carelessly, and below the standard of care for insurance agents and/or brokers with regard to the activities and work which they performed and which they failed to perform on behalf of Plaintiff in procuring the insurance requested as described in the preceding allegations.  The acts of carelessness and negligence include, but are not limited to: failing to properly advise Plaintiff on insurance issues; misrepresenting insurance coverage; failing to obtain promised insurance coverage; misrepresenting their expertise in the industry; failing to disclose that certain coverages were not included in the Evanston Policy; and otherwise failing to act in a professional and competent manner so that Plaintiff would be provided the insurance coverage they requested, expected, and/or needed.

69.     Plaintiff seeks recovery against the Defendants for the acts and omissions alleged above and negligent misrepresentations of coverage made by the Defendants in the scope and course of their employment as brokers of insurance.

70.     Plaintiff believed and reasonably relied on the Defendants' representations regarding the coverage procured by Defendants, and had no reason to believe that any of the Defendants' statements, conduct, or actions were incorrect, or constituted misrepresentations of any sort.  Plaintiff reasonably relied upon the Defendants' statements and representations regarding the nature and extent of coverage and on the conduct of these Defendants to their

1  detriment.  Plaintiff relied upon the Defendants to obtain the coverage that was promised and

2  requested by Plaintiff.  Defendants negligently failed to procure the coverage promised by

3  Defendants and requested by Plaintiff, leaving Plaintiff without insurance coverage for the

4  Michigan Lawsuit, and without the substantial backing of an insurance company in defense of the

5  suit.

6       71.    Defendants, and Does 1 through 25, assumed a duty to use the skill, prudence,

7  diligence, knowledge and care that a reasonably careful insurance broker would have used in

8  similar circumstances to review Plaintiff's business, and expressly advise, approve, or otherwise

9  warn Plaintiff that the coverage being procured was not sufficient.

10       72.    Defendants' advice to Plaintiff regarding coverage created a special duty of care,

11  which was breached as alleged above.

12       73.    These breaches are a substantial factor and direct and proximate cause of Plaintiff's

13  damages.

14       74.    As a direct and proximate result of the acts of the Defendants, Plaintiff has suffered

15  and will hereafter suffer damages as detailed throughout this Complaint, and other consequential

16  damages in a sum to be proven at the trial of this action, but in excess of the jurisdictional

17  minimum of this Court.

18        **SECOND CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTIES**

19  (Plaintiff Against Defendants Bolton & Company, Gregory Matthew Doherty, and Chris Morey,

20               including, Does 1 through 25)

21       75.    Plaintiff incorporates by reference each of the foregoing paragraphs of this

22  Complaint, as though fully set forth herein.

23       76.    The Defendants were contacted by Plaintiff initially for the sole purpose of

24  obtaining a new insurance policy for a new business formed for the sole purpose of manufacturing

25  and sales of energy shots.

26       77.    The Defendants agreed to procure for Plaintiff a new insurance policy for

27  Plaintiff's business.

28

78.     The Defendants were also hired to analyze Plaintiff's insurance needs and required coverages, to obtain/provide insurance policies to fulfill Plaintiff's insurance needs, and to provide risk management services.

79.     The Defendants acted on Plaintiffs' behalf in securing the aforementioned Evanston Policy.

80.     The Defendants and Plaintiff entered into a special relationship whereby Defendants became intimately involved with Plaintiff's business, to the point that Defendants represented to Plaintiff that they were the leading experts in the field of insurance for energy shots, and represented to Plaintiff that they would procure the exact policy that Plaintiff needed for its new energy shot business, and entered into an agreement to provide risk management services for the Plaintiff.

81.     Plaintiff relied upon Defendants' representations that Defendants were acting as experts on behalf of Plaintiffs, and that they were procuring a policy of insurance that would adequately meet the needs of Plaintiff. Defendants, however, were looking out in their own best interests, rather than looking out for Plaintiff's needs as new business in the field.  In particular, Defendants were aware that the Michigan Plaintiffs had a propensity to file suit against all new businesses in the energy shot field, but failed to advise Plaintiff of this fact, and failed to advise Plaintiff to obtain broader coverage to protect against this risk, including failing to advise Plaintiff to obtain a policy of insurance with a standard PAI coverage provision, or coverage for trademark infringement.

82.     The Defendants breached their fiduciary duties owed to Plaintiffs by only securing the most basic business insurance coverage, to the detriment of Plaintiff. Defendants represented that they were securing coverage for Plaintiffs, but Defendants effectively only secured limited coverage for Plaintiff's business. Accordingly, Defendants failed to secure the coverage(s) requested, promised, intended, and expected to protect Plaintiff.

83.     Plaintiff alleges on information and belief that the Defendants put their own interests above those of Plaintiff for the purpose of enriching themselves in breach of their fiduciary duties to Plaintiff, to the detriment of Plaintiff.

84.     As a direct and proximate result of the Defendants' breach of their fiduciary duties to Plaintiffs,  Plaintiffs have been damaged in the sums expended and hereafter to be expended for attorney's fees and costs for their defense of the Michigan Lawsuit, and for that portion of any judgment rendered against and paid for by Plaintiff in the Michigan Lawsuit for which Plaintiff has or will not be indemnified by insurance coverage, and all other general and consequential damages, according to proof at trial, but in excess of the jurisdictional minimum of this Court.

## THIRD CAUSE OF ACTION FOR FRAUD IN THE INDUCEMENT

(Plaintiff Against Defendants Bolton & Company, Gregory Matthew Doherty, and Chris Morey, including, Does 1 through 25)

85.     Plaintiff incorporates by reference each of the foregoing paragraphs of this Complaint, as though fully set forth herein.

86.     The Defendants, and specifically Doherty and Morey, made and/or caused to be made the following written promises and/or misrepresentations orally, in electronic mail, and on Bolton's website, regarding the Bolton business to Plaintiff and its principal Gorman, in July 2018 prior to Plaintiff hiring the Defendants to be their insurance brokers:

- Bolton is an expert in the field of dietary supplements, including procuring insurance for companies that manufacture and sell energy shots;
- Bolton's expertise would be provided to Vitamin Energy for continuing risk management services;
- Bolton would evaluate the insurance needs of Vitamin Energy, and procure an insurance policy to meet those needs;
- Bolton was uniquely qualified to provide insurance broker services to Vitamin Energy, and to procure for Vitamin Energy all necessary coverage for the new business;
- Morey was a highly experienced insurance broker and specializes in the field of dietary supplements and energy shots.

Case No.:
COMPLAINT

- Morey was an expert broker who regularly placed insurance for companies similar to Vitamin Energy, and that Morey would advise Gorman as to the insurance needed for Vitamin Energy.

87.     These representations and promises were false.

88.     Defendants knew or should have known that these misrepresentations and promises were false when they made them.  Alternatively, they made these representations with a conscious disregard of the rights and interests of Plaintiff.

89.     Defendants acted with the intent to defraud Plaintiff.  At the time the misrepresentations and false promises were made, Defendants knew them to be false.

90.     Defendants never intended to perform many of the promises they made to Plaintiffs, as their insurance broker, regarding the procurement of insurance and the represented special relationship when they made them.

91.     Defendants intended Plaintiff to rely on the aforementioned misrepresentations promises.

92.     Plaintiff reasonably relied upon Defendants' promises and misrepresentations, and hired the Defendants as a result.

93.     As a proximate result of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer economic losses and other general and specific damages, all in an amount to be determined according to proof.

94.     Defendants' conduct was done with malice, oppression and/or fraud.  Defendants conduct was despicable conduct carried on with a willful and conscious disregard for the rights of others, especially Plaintiff, and otherwise was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of their rights entitling Plaintiff to recover punitive damages according to proof.

///

///

**FOURTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION**

(Plaintiff Against Defendants Bolton & Company, Gregory Matthew Doherty, and Chris Morey, including, Does 1 through 25)

95.     Plaintiff incorporates by reference each of the foregoing paragraphs of this Complaint, as though fully set forth herein.

96.     Defendants negligently misrepresented to Plaintiff the material facts hereinabove alleged.  Defendants owed Plaintiff a duty to disclose the true facts.

97.     Defendants' representations of existing material facts were false.  When Defendant made the misrepresentations, they knew them to be false, or had no reasonable basis to believe that they were true, and made the misrepresentations with the intent and purpose of inducing Plaintiff to rely on the misrepresentations.

98.     At all times material hereto, Plaintiff was unaware of the falsity of the misrepresentations made by Defendants.  Plaintiff justifiably relied on the misrepresentations of Defendants.  As a result of Defendants concealing the true facts from Plaintiff, Plaintiff reasonably relied upon the misrepresentations, because in the exercise of reasonable diligence, Plaintiff could not have discovered the true facts.

99.     Defendants did not exercise reasonable care or competence in obtaining or communicating the information contained in these false representations.

100.    Plaintiff justifiably relied on each of Defendants' representations.

101.    The negligent misrepresentations by Defendants proximately caused the damages suffered by Plaintiff.

102.    As a proximate result of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer economic losses and other general and specific damages, all in an amount to be determined according to proof.

**FIFTH CAUSE OF ACTION FOR BREACH OF CONTRACT**

(Plaintiff Against Defendants Bolton & Company, including, Does 1 through 25)

103.    Plaintiff incorporates by reference each of the foregoing paragraphs of this Complaint, as though fully set forth herein.

1    104.    Plaintiff performed each and every obligation and satisfied every condition required

2    under the Standard Broker Fee Agreement not otherwise excused or waived.

3    105.    Bolton has breached the Standard Broker Fee Agreement by failing to provide risk

4    management support, as discussed herein above.

5    106.    As a direct result of Bolton's breach, Plaintiff suffered and/or will suffer damages,

6    including but not limited to unreimbursed investigation and defense fees and costs; and other

7    economic and consequential damages in excess of this Court's unlimited diversity jurisdiction,

8    including prejudgment interest and costs of suit.

9    **PRAYER FOR RELIEF**

10    WHEREFORE, Plaintiff Vitamin Energy prays for judgment against Defendants Bolton &

11    Company, Gregory Matthew Doherty, and Chris Morey and Does 1 through 25, and each of them,

12    as follows:

13    On the First Count for Professional Negligence:

14    1.    For general, special and incidental damages;

15    2.    For pre-judgment interest;

16    3.    For costs, and other damages;

17    On the Second Count for Breach of Fiduciary Duties:

18    4.    For general, special and incidental damages;

19    5.    For pre-judgment interest;

20    6.    For costs, and other damages;

21    On the Third Cause of Action for Fraud in the Inducement:

22    7.    For general, special and incidental damages;

23    8.    For punitive damages;

24    9.    For pre-judgment interest;

25    10.    For costs, and other damages;

26    On the Fourth Cause of Action for Negligent Misrepresentation:

27    11.    For general, special and incidental damages;

28    12.    For pre-judgment interest;

-18-

Case No.:

COMPLAINT

1    13.   For costs, and other damages;

2    <u>On the Fifth Cause of Action for Breach of Contract against Bolton only</u>:

3    14.   For general, special and incidental damages;

4    15.   For pre-judgment interest;

5    16.   For costs, and other damages;

6    <u>On all Causes of Action</u>:

7    17.   For any additional relief the court deems appropriate.

8    Dated: December 31, 2021                    WINTHROP LAW GROUP, P.C.

9

10                                          By:  _Reid Winthrop_____

11                                               REID A. WINTHROP
                                                 Attorneys for Plaintiff VITAMIN
12                                               ENERGY, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiff Vitamin Energy, Inc. hereby demands trial by jury.

Dated:  December 31, 2021                    WINTHROP LAW GROUP, P.C.


By:    _____
       REID A. WINTHROP
       Attorneys for Plaintiff VITAMIN
       ENERGY, INC.

# EXHIBIT A

# STANDARD BROKER FEE AGREEMENT

1.  The parties to this agreement are Vitamin Energy, llc ("CUSTOMER") AND Bolton & Company, California Department of Insurance License Number 0008309 ("BOLTON").

2.  CUSTOMER appoints BOLTON as CUSTOMER'S insurance Broker of record.  Bolton agrees to transact insurance on behalf of the CUSTOMER.

3.  This agreement shall become operative on Inception, and shall continue in full force until terminated by either party.

4.  BOLTON agrees to provide the following services:   Insurance placement, claims support, and risk management support PROVIDED, HOWEVER, that BOLTON makes no representation or warranty regarding:  (a) the financial solvency, or ability to pay claims, of any insurer (or insurers) with whom CUSTOMER'S policies may be placed; or (b) the sufficiency of coverage or coverages in the policy or policies obtained for CUSTOMER.

5.  CUSTOMER agrees to pay BOLTON a Broker fee for BOLTON'S services. The full amount of the broker fee being charged by BOLTON is **$1,000** and is NOT refundable.  BOLTON also may be entitled to receive compensation from the insurer, directly or indirectly, for the CUSTOMER'S purchase of any insurance as a part of this agreement.

6. General terms and conditions:

     A) Assignment.  No party may assign its rights or delegate its duties under this Agreement without the prior written consent of the other party.

     B) Captions.  The subject headings of the sections and paragraphs of this Agreement are included for purposes of convenience only, and shall not affect the construction or interpretation of any of its provisions.

     C) Consent.  The signatories to this Agreement represent and warrant that they have the right, power, legal capacity and authority to enter into this Agreement on behalf of the respective parties.



D) Dates. All deadlines or other time periods referenced in this Agreement that require or permit performance of any obligation within a specified number of days shall be calculated on a calendar-day basis. If the day for performance thereunder falls on a weekend or holiday, the deadline for performance shall be extended to the next business day.

E) Entire agreement, amendment, waiver. This Agreement constitutes the entire agreement between the parties and supersedes all prior agreements, representations and understandings of the parties. No amendment or other alteration of this Agreement shall be binding unless executed in writing by the signatories to this Agreement. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

F) Fair meaning. The language in all parts of this Agreement shall be in all cases construed simply according to its fair meaning.

G) Governing law. This agreement shall be construed in accordance with, and governed by, the laws of the State of California.

H) Indemnification. Each party to this Agreement represents, covenants and warrants that it will defend, save, protect, indemnify, and hold harmless the other party, and its respective officers, directors, and employees from any and all claims, demands, suits, or other process to the extent such claims, demands, suits, or other process arises out of their respective negligence or willful misconduct.

I) No agency created. Nothing in this Agreement is intended to create any agency relationship between BOLTON and CUSTOMER. No authority is granted to either party to obligate or bind the other party to any contract, agreement, or obligation of any kind, or to make any representations or warranties, or to act on behalf of in any manner, without the express written authorization of the party to be bound.

J) No drafter. Neither party shall be deemed drafter of this Agreement, and each party hereto has reviewed, or had the opportunity to review, this Agreement with their own legal counsel.



K) **Notices.** All notices and other communications under this Agreement shall be in writing and shall be deemed to have been given on the date of service if served personally on the party to whom the notice is to be given, or on the third day after mailing if sent by facsimile and confirmed by U.S. Mail, mailed to the party to whom notice is to be given, by first class mail registered or certified, postage prepaid, and addressed as follows to the individuals listed below (or their successors):

Greg M. Doherty
Executive Vice President

Bolton & Company
PO Box 6030
Pasadena, CA. 91102

Richard Gorman
Title _Manager_

Vitamin Energy, Llc
391 Wilmington West Chester Pike Suite 3
Glen Mills, PA, 19342

L) **Savings clause.** If any term or provision of this Agreement is held or construed to be invalid or unenforceable to any extent or application, then the remainder of this Agreement shall be valid and enforceable to the fullest extent and the broadest application permitted by law.

IN WITNESS WHEREOF, the parties to this Agreement have duly executed it as of the _23_ day of **July, 2018**.

BOLTON
Bolton & Company

CUSTOMER
Vitamin Energy, Llc

By _____
Greg M. Doherty
Executive Vice President

_____
Richard Gorman
Title _Manager_



# EXHIBIT B

**A STOCK COMPANY**



# EVANSTON INSURANCE COMPANY

Ten Parkway North
Deerfield, IL 60015

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

In **Witness Whereof**, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

**Secretary**

**President**

IL 09 10 07 02

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

---

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

---

© ISO Properties, Inc., 2001





# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TRADE OR ECONOMIC SANCTIONS

The following is added to this policy:

**Trade Or Economic Sanctions**

This insurance does not provide any coverage, and we (the Company) shall not make payment of any claim or provide any benefit hereunder, to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose us (the Company) to a violation of any applicable trade or economic sanctions, laws or regulations, including but not limited to, those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms and conditions remain unchanged.

INTERLINE



# PRIVACY NOTICE

We are committed to safeguarding your privacy. We understand your concerns regarding the privacy of your nonpublic personal information. No nonpublic personal information is required to be collected when you visit our websites; however, this information may be requested in order to provide the products and services described. We do not sell nonpublic personal information to non-affiliated third parties for marketing or other purposes. We only use and share this type of information with non-affiliated third parties for the purposes of underwriting insurance, administering your policy or claim and other purposes as permitted by law, such as disclosures to insurance regulatory authorities or in response to legal process. Notwithstanding the foregoing, we may use this information for the purpose of marketing our own products and services to you.

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms;
- Information about your transactions with us, our affiliates, or others; and/or
- Information we receive from consumer reporting agencies and inspection reports.

We do not disclose any nonpublic personal information about our customers/claimants or former customers/claimants to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Service providers, such as insurance agents and/ or brokers and claims adjusters; and/or
- Other non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about our customers/claimants to those individuals who need to know that information to provide products and services to our customers/claimants or as permitted by law.  We maintain physical, electronic, and procedural safeguards to guard your nonpublic personal information.

*Residents of California:*

You may request to review and make corrections to recorded non-public personal information contained in our files.  A more detailed description of your rights and practices regarding such information is available upon request.  Please contact your agent/broker for instructions on how to submit a request to us.

**INTERLINE**



**MARKEL®**

# EVANSTON INSURANCE COMPANY

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
## ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

Case ID: 190702037



**MARKEL**®

## POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

RE:   Policy Number: SP884506
      Insured:  VITAMIN ENERGY, LLC
      Insurer:  Evanston Insurance Company

You are hereby notified that under the Terrorism Risk Insurance Act as amended in 2015 the definition of terrorism has changed. As *defined in Section 102(1) of the Act*: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Under the Act, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. The Act requires Evanston Insurance Company to also notify you that Terrorism Coverage required to be offered by the Act for losses caused by certified acts of terrorism is partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

Nothing in this notice affects or modifies your coverage except and only to the extent specifically required by the Act.

When the above captioned policy was quoted, you were offered this Terrorism Coverage for a premium equal to a 3% surcharge of the total policy premium. If you elected to purchase this insurance coverage your policy premium includes a 3% surcharge, and does not include any charge for the portion of losses covered by the United States government under the Act.



# EVANSTON INSURANCE COMPANY

## DECLARATIONS
## GENERAL LIABILITY (INCLUDING PRODUCTS/COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY

**Claims Made Coverage:** The coverage afforded by this policy is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported in writing to the Company pursuant to the terms herein.

**Notice:** This is a duty to defend policy. Additionally, this policy contains provisions that reduce the limits of liability stated in the policy by the costs of legal defense and permit legal defense costs to be applied against the deductible, unless the policy is amended by endorsement. Please read the policy carefully.

POLICY NUMBER: SP884506                       RENEWAL OF POLICY: NEW

1.   **NAMED INSURED:**   VITAMIN ENERGY, LLC

2.   **BUSINESS ADDRESS:**
        391 WILMINGTON WEST CHESTER PIKE SUITE 3
        GLEN MILLS, PA  19342

3.   **POLICY PERIOD:**   From 07/23/2018 to 07/23/2019
        12:01 A.M. Standard Time at address of Insured stated above.

## IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE NAMED INSURED TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

4.   **LIMITS OF LIABILITY:**

   A.   For Coverage A (Bodily Injury and Property Damage Liability):

    (i)   Each Occurrence:                                                $  1,000,000

    (ii)   Damage to Premises – Any One Premises:              $     100,000

   B.   For Coverage B (Personal Injury and Advertising Injury Liability):

    Each Person or Organization:                                    $  1,000,000

   C.   Policy Aggregate:                                                      $  2,000,000

5.   **DEDUCTIBLES:**

   A.   For Coverage A (Bodily Injury and Property Damage Liability):

    Each Occurrence:                                                    $          0

   B.   For Coverage B (Personal Injury and Advertising Injury Liability):

    Each Person or Organization:                                    $          0

| Producer Number, Name and Address |
| --- |
| 03250 |
| Worldwide Facilities, LLC - L.A. |
| 725 S. Figueroa St., 19th floor |
| Los Angeles, CA  90017 |

6.    **SPECIFIED PRODUCTS, GOODS, OPERATIONS AND PREMISES COVERED:**

Supplements; all related premises and operations of the Insured

7.    **RETROACTIVE DATE:** 07/23/2018

8.    **RATE:** Flat

9.    **PREMIUM FOR POLICY PERIOD:**

| | | |
|---|---|---|
| Minimum | $ | 1,995.00 |
| Deposit | $ | 1,995.00 |

10.   **PREMIUM FOR EXTENDED REPORTING PERIOD:**  100% for 12 months; 150% for 24 months; or 200% for 36 months

11.   **ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**

See MDIL 1001 08 10 attached

12.   **NOTICES:**

**CLAIM NOTICES:**

Claims Service Center
MARKEL SERVICE, INCORPORATED
Ten Parkway North
Deerfield, Illinois 60015

Fax: (855) 662-7535
E-mail: newclaims@markelcorp.com

**ALL OTHER NOTICES:**

Markel West Insurance Services,
a division of Markel Service, Incorporated
(#0D95581)
21600 Oxnard Street, Suite 900
Woodland Hills, CA  91367-4800
Telephone: (818) 595-0600
Fax: (866) 730-2529

**These declarations, together with the Policy, any Endorsement(s) and any application(s) complete the above numbered policy.**

| | |
|---|---|
| Countersigned: 7/24/2018 | *[signature]* |
| (Date) | By:   DIRECTOR, UNDERWRITING & PRODUCTION<br>MARKEL WEST INSURANCE SERVICES<br>COUNTERSIGNATURE |

PA Surplus Lines Taxes & Fees

| | | |
|---|---|---|
| Premium: | $ | 1,995.00 |
| 3% State Tax: | $ | 59.85 |
| FLAT Stamp Fee: | $ | 20.00 |
| Broker Fee: | $ | 250.00 |

**The Insurer with which the Licensee places the insurance is not licensed by the Pennsylvania Insurance Department, and is subject to its limited regulation; and in the event of insolvency of an eligible surplus lines insurer, losses will not be paid by the Pennsylvania Property and Casualty Insurance Guaranty Association."**
Worldwide Facilities, LLC - License #483776

## Markel's Designed Protection®
## Risk Management Resources Specified Products Liability

Welcome to Markel's Designed Protection® leading edge Risk Management Resources.

The following risk management resources are available exclusively to our policyholders at our website www.markelcorp.com/riskmanagement at *no additional cost.*

**HOW TO QUICKLY ACCESS RISK MANAGEMENT RESOURCES:**

Step 1.   Go onto our website, www.markelcorp.com/riskmanagement.

Step 2.   Select the Designed Protection services that apply to your policy, to get to the Login screen.

Step 3.   Review the disclaimer, enter your current policy number and click on the button below to access. Your policy number is SP884506.

If you need technical assistance during the log in process, call (866) 932-2433, x113719.

**Available Risk Management Resources include:**

**Designed Protection® Risk Management Telephone Hotline for Specified Products Liability**
This confidential telephone hotline is staffed by a nationally respected panel of experienced Products Liability defense lawyers that are available to answer general risk management questions.

- **Top 10 Tips for Reducing Risk of Product Liability**

Please check our website regularly as additional resources are added throughout the year.



**INTERLINE**
**POLICY NUMBER:** SP884506

# EVANSTON INSURANCE COMPANY

## FORMS SCHEDULE

| FORM NUMBER | FORM NAME |
|---|---|
| MJIL 1000 06 10 | Policy Jacket |
| IL 09 10 07 02 | Pennsylvania Notice |
| MIL 1214 09 17 | Trade Or Economic Sanctions |
| MPIL 1007 03 14 | Privacy Notice |
| MPIL 1083 04 15 | US Treasury Dept's Office Of Foreign Assets Control ("OFAC") Policyholder Notice |
| ZZ-50000-03 01 15 | Policyholder Disclosure Notice Of Terrorism Insurance Coverage |
| PD-12000-01 03 04 | Declarations General Liability (Including Products/Completed Operations Liability) Insurance Policy |
| MDIL 1001 08 10 | Forms Schedule |
| PD-22000-02 06 04 | General Liability (Including Products And Completed Operations Liability) Insurance Policy |
| EIC 3022-01 3 04 | Amendment of Territory - Worldwide Coverage |
| EIC 4115-01 2 03 | 25% Minimum Earned Premium Endorsement |
| EIC 4568 01 06 | Exclusion of Known Claims/Incidents |
| EIC 832-01 10 02 | Asbestos Exclusion |
| MEGL 1662 05 15 | Exclusion - Unmanned Aircraft |
| MEGL 2204 10 17 | Elite Nutra Enhancement |
| MEIL 1313 02 12 | Amendment Of Definition & Excl-Electronic Data & Distribution Of Materials In Violation Of Statutes |
| MEIL 1317 01 16 | Exclusion – Designated Ingredients |
| MEIL 1321 02 13 | Banned Substances Exclusion |
| ZZ-44002-01 | Mold Exclusion |
| ZZ-44003-03 01 15 | Certified Acts Of Terrorism Exclusion |



# EVANSTON INSURANCE COMPANY

## GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY

THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY.

In consideration of the premium paid, and in reliance upon the underwriting information submitted on behalf of the Insured, the Company and the Insured agree as follows:

Throughout this policy, the term Company refers to the insurance company providing this insurance.

## THE INSURED

The unqualified word "Insured", either in the singular or plural, means:

A.   the Named Insured named in Item 1. of the Declarations;

B.   if the Named Insured named in the Declarations is an individual, the person so named and his/her lawful spouse, but only with respect to his/her conduct of business as a sole proprietor;

C.   if the Named Insured named in the Declarations is a partnership or joint venture, the partnership or joint venture so named and any partner or member thereof or his/her lawful spouse, but only with respect to the conduct of the partnership or joint venture business;

D.   if the Named Insured named in the Declarations is a limited liability company, the limited liability company so named, any manager thereof, but only with respect to their duties as manager of the limited liability company and any member thereof, but only with respect to the conduct of the business of the limited liability company;

E.   if the Named Insured named in the Declarations is other than an individual, partnership, joint venture or limited liability company, the organization so designated and any executive officer or director thereof, but only with respect to his/her duties as an executive officer or director of such organization;

F.   any person (other than an employee of the Named Insured) or organization while acting as real estate manager for the Named Insured;

G.   any employee of the Named Insured, other than the executive officers of the Named Insured if the Named Insured is an organization other than a partnership, joint venture or limited liability company or managers of the Named Insured if the Named Insured is a limited liability company, solely while acting within the scope of his/her duties as such;

provided, however, that coverage afforded to such employee does not apply to:

1.   Bodily Injury, Personal Injury or Advertising Injury:

   (i)   to the Named Insured, the Named Insured's partners, the Named Insured's members or to a co-employee while in the course of his/her employment or performing duties related to the conduct of the Named Insured's business;

   (ii)   to the spouse, child, parent, brother or sister of that co-employee as a consequence of subparagraph 1.(i) hereinabove;

   (iii)   for which there is any obligation to share Damages with or repay someone else who must pay Damages because of the injury described in subparagraphs 1.(i) and (ii) hereinabove; or

   (iv)   arising out of his/her providing or failure to provide professional health care services, if the Named Insured is engaged in the business or occupation of providing professional health care services;

2.   Property Damage to property:

   (i)   owned, occupied or used by; or

    (ii)  rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

    the Named Insured, any employee of the Named Insured or any partner or member;

H.    with respect to the operation, for the purpose of locomotion upon a public highway, of Mobile Equipment registered in the name of the Named Insured under any motor vehicle registration law:

    1.    an employee of the Named Insured while operating any such equipment in the course of his/her employment by the Named Insured; or

    2.    any other person while operating with the permission of the Named Insured any such equipment and any person or organization legally responsible for such person but only with respect to liability arising out of such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

    provided, however, that no person or organization shall be an Insured under this paragraph H. with respect to:

    (i)  Bodily Injury to any co-employee of such person operating any such equipment; or

    (ii)  Property Damage to property owned by, rented to, in the charge of or occupied by the Named Insured or the employer of any person described in subparagraph 2. hereinabove;

I.    any organization which is acquired or formed by the Named Insured, other than a partnership, joint venture or limited liability company, and over which the Named Insured maintains majority ownership, will qualify as a Named Insured if there is no other similar insurance available to that organization;

    provided, however that:

    1.    coverage under this provision is afforded only for ninety (90) days from the date the Named Insured acquires or forms such organization, or the end of the Policy Period, whichever is earlier;

    2.    Coverage A. does not apply to Bodily Injury or Property Damage that occurred before the Named Insured acquired or formed the organization; and

    3.    Coverage B. does not apply to Personal Injury or Advertising Injury arising out of an offense committed before the Named Insured acquired or formed the organization;

J.    the heirs, executors, administrators, assigns and legal representatives of each Insured in the event of death, incapacity or bankruptcy of such Insured, but only while acting within the scope of their duties as such on behalf of the Named Insured or of the Insured's estate.

This policy does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of the conduct of any partnership, joint venture or limited liability company which is not named in the Declarations as a Named Insured.

## INSURING AGREEMENTS

A.    **Coverage A. - Bodily Injury and Property Damage Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Bodily Injury or Property Damage to which this insurance applies caused by an Occurrence, provided:

    1.    the entirety of such Bodily Injury or Property Damage and Occurrence happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and

    2.    such Bodily Injury or Property Damage arises out of only those products, goods, operations or premises specified in Item 6. of the Declarations.

B.    **Coverage B. - Personal Injury and Advertising Injury Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Personal Injury or Advertising Injury to which this insurance applies caused by an offense, provided:

    1.    the entirety of such Personal Injury or Advertising Injury and offense happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and

2. such Personal Injury or Adverting Injury arises out of only those products, goods, operations or premises specified in Item 6. of the Declarations.

## DEFINITIONS

A. **Advertisement** means a commercial communication, including communications that are published material placed on the Internet or on similar electronic means of communication, that is broadcast or published about the products, goods or operations of the Named Insured for the purpose of promoting the sale or use of such products, goods or operations; provided, however, only that part of a website that is about the products, goods or operations of the Named Insured for the purposes of promoting such products, goods or operations is considered an Advertisement.

B. **Advertising Injury** means injury, including consequential Bodily Injury, arising out of oral or written publication of material that libels or slanders a person or organization or a person's or organization's products, goods or operations or other defamatory or disparaging material, occurring in the course of the Named Insured's Advertisement.

C. **Aircraft Products** means any aircraft whether or not heavier than air (including spacecraft and missiles) and any ground support, guidance, control or communications equipment used in connection therewith, and also includes parts, supplies, or equipment installed in or on or used in connection with aircraft, including tools, training aids, instructions, manuals, blueprints and other data, engineering and other advice, services and labor used in the operation, maintenance or manufacture of aircraft products.

D. **Automobile** means a land motor vehicle, trailer or semitrailer designed for travel on public roads (including any attached machinery or equipment); provided, however, it does not include Mobile Equipment.

E. **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

Bodily Injury shall also mean Incidental Medical Malpractice Injury, provided that the Named Insured is not engaged in the business or occupation of providing professional health care services.

F. **Claim** means a notice received by the Insured of an intention to hold the Insured responsible for: (1) a Bodily Injury; (2) a Property Damage; (3) an Advertising Injury; or (4) a Personal Injury; involving this policy and shall include the service of suit or institution of arbitration proceedings against the Insured.

G. **Claim Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any Claim for which coverage is afforded under this policy, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, that Claim Expenses shall not include: (1) salary, wages, overhead, or benefit expenses of or associated with employees or officials of the Named Insured or employees or officials of the Company; or (2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

Solely for the purposes of liability assumed in an Insured Contract, Claim Expenses incurred by or for a party other than an Insured are deemed to be Damages because of Bodily Injury or Property Damage; provided, however, that:

1. liability to such party for, or the cost of, that party's defense has also been assumed in the same Insured Contract; and

2. such Claim Expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which Damages to which this insurance applies are alleged.

H. **Completed Operations Hazard** means Bodily Injury and Property Damage arising out of only those operations specified in Item 6. of the Declarations, after such operations have been completed or abandoned by the Insured and occurs away from premises owned by or rented to the Named Insured. Operations includes materials, parts or equipment furnished in connection therewith, warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of those products, goods and operations specified in Item 6. of the Declarations and the providing or failure to provide instructions related thereto. Operations shall be deemed completed at the earliest of the following times:

1. when all operations to be performed by or on behalf of the Insured under a contract with the Insured have been completed;

2. when all operations to be performed by or on behalf of the Insured at the site of the operations have been completed; or

3.   when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or sub-contractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement, but which are otherwise complete, shall be deemed complete.

The Completed Operations Hazard does not include Bodily Injury or Property Damage arising out of:

1.   operations in connection with the transportation of property, unless the Bodily Injury or Property Damage arises out of a condition in or on a vehicle not owned or operated by the Named Insured created by the loading or unloading thereof; or

2.   the existence of tools, uninstalled equipment or abandoned or unused materials.

I.   **Damages** means the monetary portion of any judgment, award or settlement; provided, however, that Damages shall not include: (1) multiplied portions of damages in excess of actual damages, including trebling of damages; (2) taxes, criminal or civil fines, or penalties imposed by law; (3) sanctions; (4) matters which are uninsurable under the law pursuant to which this policy shall be construed; or (5) the return of or restitution of fees, profits or charges for services rendered.

J.   **Gross Receipts** means Sales and other income, exclusive of deductions, from any other source, insofar as the Sales or other income relate to or emanate from sale of products or goods or operations specified in Item 6. of the Declarations performed during the Policy Period by or on behalf of the Insured.

K.   **Grounding** means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft because of the existence of or alleged existence of a defect, fault or condition in any Aircraft Products.

L.   **Incidental Medical Malpractice Injury** means Bodily Injury arising out of the rendering of or failure to render, during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations, the following services:

1.   medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

2.   the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

M.   **Insured Contract** means:

1.   a contract for lease of premises; provided, however, that the portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to the Insured or temporarily occupied by the Insured with the permission of the owner shall not be an Insured Contract;

2.   any easement or license, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

3.   an obligation, as required by municipal ordinance, to indemnify a municipality, except in connection with work for the municipality;

4.   a sidetrack agreement;

5.   an elevator maintenance agreement; or

6.   that part of any other contract or agreement pertaining to the Named Insured's business under which the Named Insured assumes the tort liability of another party to pay for Bodily Injury or Property Damage to a third party; provided, however, Insured Contact shall not include that part of any contract or agreement:

   (i)   that indemnifies a railroad for Bodily Injury or Property Damage arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   (ii)   that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a)   preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or designs or specifications; or

      (b)   supervision, inspection, failure to supervise or inspect or architectural, engineering or surveying services; or

   (iii)   under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising

out of the Insured's rendering or failure to render professional services, including those listed in subparagraph (ii) hereinabove or any supervision, inspection, failure to supervise or inspect or architectural, engineering or survey services.

N. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises the Named Insured owns or rents;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, on which are permanently mounted:

    (i) power cranes, shovels, loaders, diggers, or drills; or

    (ii) road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    (i) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    (ii) cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo; provided, however, that self-propelled vehicles with the following types of permanently attached equipment are not Mobile Equipment but will be considered Automobiles:

    (i) equipment designed primarily for:

        (a) snow removal;

        (b) road maintenance, but not construction or resurfacing; or

        (c) street cleaning;

    (ii) cherry pickers and similar devices mounted on Automobile or truck chassis and used to raise or lower workers; and

    (iii) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

O. **Named Insured's Products** means goods or products, other than real property, manufactured, sold, handled or distributed by the Named Insured or by others trading under the Named Insured's name, including any container thereof (other than a vehicle); provided, however, that Named Insured's Products shall not include a vending machine or any other property rented to or located for use of others but not sold.

P. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Q. **Personal Injury** means injury, including consequential Bodily Injury, arising out of one or more of the following offenses:

1. false arrest, detention or imprisonment or malicious prosecution;

2. wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor; or

3. oral or written publication of material that violates a person's right of privacy.

R. **Policy Period** means the period from the inception date of this policy to the policy expiration date as stated in Item 3. of the Declarations, or its earlier cancellation or termination date.

S. **Products Hazard** means Bodily Injury or Property Damage arising out of only those products or goods specified in Item 6. of the Declarations which are the Named Insured's Products, including warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of those products or goods specified in Item 6. of the Declarations and the providing or failure to provide instructions related thereto, occurring away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others.

T. **Property Damage** means:

    1.   physical injury to or destruction of tangible property, including consequential loss of use thereof; or

    2.   loss of use of tangible property which has not been physically injured or destroyed; provided, however, such loss of use is caused by an Occurrence.

U. **Sales** means the gross amount of money charged by the Named Insured or by others trading under such Named Insured's name for all goods and products sold or distributed during the Policy Period and charged during the Policy Period for installation, servicing or repair, and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division.

## THE EXCLUSIONS

A. With respect to all Coverages, this policy does not apply to:

    1.   any Claim based upon or arising out of:

        (i)  the actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants; provided, however, this subparagraph shall not apply with respect to:

            (a)  the Products Hazard or Completed Operations Hazard;

            (b)  damage, arising out of heat, smoke or fumes from hostile fire at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any Insured.

        (ii)  Bodily Injury or Property Damage arising out the actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants:

            (a)  at or from any premises, site or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste;

            (b)  which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any Insured or any person or organization for whom the Insured may be legally responsible; or

        (iii)  any demand, request, direction, order or statutory or regulatory requirement to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or in any way respond to or assess the effects of Pollutants or to pay for or contribute to the costs of undertaking such actions; provided, however, this subparagraph shall not apply to liability for Damages because of Property Damage that the Insured would have in the absence of such demand, request, direction, order or statutory or regulatory requirement.

        Pollutants means any solid, liquid, gaseous or thermal irritants or contaminants including, smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

    2.   any Claim based upon or arising out of the rendering of or failure to render professional services by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible; provided, however, this exclusion shall not apply to Incidental Medical Malpractice Injury;

    3.   any Claim based upon or arising out of the Insured's activities as a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto; or

    4.   any Claim based upon or arising out of any unlawful discrimination by any Insured.

B. With respect to Coverage A., this policy does not apply to:

    1.   any Claim based upon or arising out of Bodily Injury or Property Damage expected or intended from the standpoint of the Insured; provided, however, this exclusion does not apply to Bodily Injury resulting from the use of reasonable force to protect persons or property;

    2.   any Claim based upon or arising out of Bodily Injury or Property Damage for which the Insured is obligated to pay Damages because of the assumption of liability in any contract or agreement; provided, however, this exclusion shall not apply to liability for damages:

        (i)  that the Insured would have in the absence of the contract or agreement; or

        (ii)  assumed in a contract or agreement that is an Insured Contract, provided, the Bodily Injury and Property Damage occurs subsequent to the execution of the Insured Contract;

3. any Claim based upon or arising out of loss of use of tangible property which has not been physically injured or destroyed resulting from:

(i) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement; or

(ii) a defect, deficiency, inadequacy or dangerous condition in the products, goods or operations of the Named Insured;

provided, however, this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's Products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

4. any Claim based upon or arising out of Property Damage to the Named Insured's Products arising out of it or any part of it, or for the cost of inspecting, repairing or replacing any defective or allegedly defective product or part thereof or for loss of use of any defective or allegedly defective product;

5. any Claim for Damages for any loss, cost or expense incurred by the Named Insured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the Named Insured's Products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect, deficiency, inadequacy or dangerous condition therein;

6. any Claim based upon or arising out of Bodily Injury or Property Damage arising out of ownership, maintenance, operation, use or entrustment to others or loading or unloading of:

(i) any Automobile, aircraft or watercraft owned or operated by or rented or loaned to any Insured; or

(ii) any other Automobile, aircraft or watercraft operated by any person in the course of his/her employment by the Named Insured;

provided, however, this exclusion shall not apply to:

(a) the parking of an Automobile on premises owned by, rented to or controlled by the Named Insured or on ways next to such premises, if such Automobile is not owned by or rented or loaned to any Insured;

(b) a watercraft while ashore on premises owned by, rented to or controlled by the Named Insured; or

(c) a watercraft that is less than twenty-six (26) feet in length, that is not owned by the Named Insured and that is not being used to carry persons or property for a charge;

7. any Claim based upon or arising out of Bodily Injury or Property Damage arising out of:

(i) the ownership, maintenance, operation, use, loading or unloading of any Mobile Equipment while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for such contest or activity; or

(ii) the operation or use of any snowmobile, moped or motorized bicycle, or trailer designed for use therewith;

8. any Claim based upon or arising out of Bodily Injury or Property Damage arising out of the transportation of Mobile Equipment by an Automobile owned or operated by or rented or loaned to any Insured;

9. any Claim based upon or arising out of Property Damage to:

(i) property owned, occupied or rented to the Insured;

(ii) property loaned to the Insured;

(iii) personal property in the care, custody or control of the Insured;

(iv) that particular part of any property,

(a) upon which operations are being performed by or on behalf of the Insured if the Property Damage arises out of those operations; or

(b) the restoration, repair or replacement of which has been made or is necessary because of faulty workmanship thereon by or on behalf of the Insured; provided, however, this subparagraph shall not apply with respect to Property Damage included in the Completed Operations Hazard or the Products Hazard;

**PRODUCTS INTERLINE**

(v) premises that the Named Insured sells, gives away or abandons, if the Property Damage arises out of any part of those premises; provided, however, this subparagraph shall not apply if the premises are included in the Completed Operations Hazard and were never occupied, rented or held for rental by the Named Insured; or

(vi) to work performed by the Insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith with respect to the Completed Operations Hazard;

provided, however, Items (ii), (iii), and (iv) of this exclusion shall not apply with respect to liability under a written sidetrack agreement;

10. any Claim based upon or arising out of any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law;

11. any Claim based upon or arising out of Bodily Injury to any employee of the Insured arising out of and in the course of employment by the Insured or performing duties related to conduct of the Insured's business or any such Claim brought by or on behalf of the spouse, child, parent, brother, sister or partner of the employee;

this exclusion shall apply:

(i) whether the Insured may be liable as an employer or in any other capacity; and

(ii) to any obligation to share damages with or repay someone else who must pay damages because of injury;

provided, however, that this exclusion shall not apply with respect to liability assumed by the Insured under an Insured Contract;

12. any Claim based upon or arising out of Bodily Injury or Property Damage for which the Insured may be held liable because of:

(i) causing or contributing to the intoxication of any person;

(ii) the furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or

(iii) any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

provided, however, this exclusion shall apply only if the Named Insured:

(a) manufactures or distributes alcoholic beverages;

(b) serves or furnishes alcoholic beverages for a charge whether or not such activity requires a license, is for financial gain or livelihood; or

(c) serves or furnishes alcoholic beverages without a charge if a license is required for such activity;

13. any Claim based upon or arising out of Bodily Injury or Property Damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing with respect to liability assumed by the Insured under an Insured Contract;

14. any Claim based upon or arising out of Aircraft Products including consequential loss of use thereof resulting from Grounding;

15. any Claim based upon or arising out of any products or goods manufactured, sold, handled, or distributed or work completed by the Insured or by others operating under the direction or control of the Insured in violation of any law, statute, ordinance, or regulation, Federal, State or Municipal government, or agencies thereof;

16. any Claim for Bodily Injury arising out of Personal Injury or Advertising Injury;

17. any Claim for Incidental Medical Malpractice Injury for any expenses incurred by the Insured for first aid to others at the time of an accident; or

18. any Claim for Incidental Medical Malpractice Injury caused by an indemnitee if such indemnitee is engaged in the business or occupation of providing any of the following services:

(a) medical, surgical, dental x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

(b) the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

Exclusions 3. through 16. shall not apply to damage by fire to premises while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises. A Limit of Liability applies to this coverage as described in Section Limits of Liability, Coverage A. – Limit of Liability - Damage to Premises.

C.  With respect to Coverage B., this policy does not apply to:

1.  any Claim based upon or arising out of Personal Injury or Advertising Injury caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict Personal Injury or Advertising Injury;

2.  any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of the oral or written publication of material, if done by or at the direction of the Insured with the knowledge of its falsity;

3.  any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of oral or written publication of material whose first publication took place before the Retroactive Date stated in Item 7. of the Declarations;

4.  any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of any criminal act committed by or at the direction of the Insured;

5.  any Claim based upon or arising out of Advertising Injury arising out of a mistake in advertised price or incorrect description of any product, good or operation;

6.  any Claim based upon or arising out of any liability assumed by the Insured in a contract or agreement; provided, however, this exclusion shall not apply to liability an Insured would have in the absence of the contract or agreement;

7.  any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of piracy, unfair competition, the infringement of copyright, title, trade dress, slogan, service mark, service name or trademark, trade name, patent, trade secret or other intellectual property right;

8.  any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of an electronic chatroom or bulletin board the Insured hosts, owns, or over which the Insured exercises control;

9.  any Advertising Injury committed by any Insured whose business is:

    (i)   advertising, broadcasting, publishing, or telecasting;

    (ii)  designing or determining content for websites for others; or

    (iii) an Internet access, content search or service provider;

10. any Claim based upon or arising out of a breach of contract; provided, however, this exclusion shall not apply to an implied contract to use another's advertising idea in the Named Insured's Advertisement; or

11. any Claim based upon or arising out of the failure of products, goods or services to conform with any statement of quality or performance made in the Named Insured's Advertisement.

## TERRITORY

The insurance afforded by this policy applies worldwide, provided the Claim is made in the United States of America, its territories or possessions, Puerto Rico or Canada.

## LIMITS OF LIABILITY

A.  **Coverage A. - Limit of Liability-Each Occurrence:**  The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims insured herein because of all Bodily Injury or Property Damage sustained by one or more persons or entities as the result of any one Occurrence shall not exceed the Limit of Liability stated in Item 4.A.(i) of the Declarations as applicable to Each Occurrence.

B.  **Coverage A. - Limit of Liability-Damage to Premises:**  The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims, including those subject to the above provision regarding the Coverage A - Limit of Liability – Each Occurrence, insured herein because of Property Damage to any one premises while rented by the Named Insured or in the case of damage by fire, while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises, shall not exceed the Limit of Liability stated in Item 4.A.(ii) of the Declarations as applicable to Damage to Premises – Any One Premises.

C.  **Coverage B. - Limit of Liability-Each Person or Organization:** The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims insured herein because of all Personal Injury and all Advertising Injury sustained by any one person or organization shall not exceed the Limit of Liability stated in Item 4.B. of the Declarations as applicable to Each Person or Organization.

D.  **Limit of Liability - Policy Aggregate:** Subject to the above Limits of Liability A, B and C, the total liability of the Company shall not exceed the Aggregate Limit of Liability as stated in Item 4.C. of the Declarations for all Damages and Claim Expenses arising out of all Claims first made during the Policy Period and the Extended Reporting Period, if exercised.

E.  **Deductible:** The applicable Deductible amount stated in Item 5. of the Declarations shall be paid by the Named Insured and shall be applicable to each Occurrence and to each person or organization and shall include Damages and Claim Expenses, whether or not Damages payments are made.

   Such amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Occurrence or each person or organization shall not exceed the applicable Deductible amount stated in Item 5. of the Declarations. Solely for the purpose of determining the Company's limit of liability, the applicable Deductible amount shall be deemed to be applied first to the Damages.

   The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

F.  **Multiple Insureds, Claims and Claimants:** The inclusion herein of more than one Insured in any Claim or suit or the making of Claims or the bringing of suits by more than one person or organization shall not operate to increase the Limits of Liability stated in Item 4. of the Declarations. More than one Claim arising out of a single Occurrence or offense shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Occurrence or offense is made or with regard to notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

## DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

The Company shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies. The Company may make such investigation and settlement of any Claim as it deems expedient. Claim Expenses incurred in defending and investigating a Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 4. of the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the applicable Deductible. The Company shall have no obligation to pay any Damages or to defend or to continue to defend any Claim or to pay Claim Expenses for Claims after the applicable Limit or Limits of Liability stated in Item 4. of the Declarations have been exhausted.

## CLAIMS

A.  **Claim Reporting Provision:** The Insured shall give to the Company written notice as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

   In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

B.  **Discovery Clause:** If during the Policy Period, the Insured first becomes aware of a specific Occurrence or offense which is reasonably expected to result in a Claim within the scope of coverage of this policy, then the Insured may provide written notice to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Occurrence or offense shall be deemed for the purpose of this insurance to have been made on the date on which such written notice is received by the Company.

   It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

   1.   the description of the specific Occurrence or offense;

   2.   the date on which such Occurrence or offense took place;

   3.   the injury or damage which has or may result from such Occurrence or offense;

   4.   the identity of any injured persons; and

5.   the circumstances by which the Insured first became aware of such Occurrence or offense.

C.   **Assistance and Cooperation of the Insured:**  The Insured shall cooperate with the Company and upon the Company's request, the Insured shall: (1) submit to examination and interview by a representative of the Company, under oath if required; (2) attend hearings, depositions and trials; (3) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (4) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim, all without cost to the Company. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the Insured may have. The Insured shall not, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation or incur any expense without the written consent of the Company.

D.   **False or Fraudulent Claims:**  If any Insured shall commit fraud in proffering any Claim, this insurance shall become void as to such Insured from the date such fraudulent Claim is proffered.

## EXTENDED REPORTING PERIOD

A.   If the Named Insured nonrenews this policy or cancels this policy pursuant to Section Other Conditions A., or if the Company nonrenews this policy or cancels this policy pursuant to Section Other Conditions A., for reasons other than nonpayment of premium or Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right upon payment of an additional premium calculated at that percentage stated in Item 10. of the Declarations of the adjusted annual premium for the Policy Period, but in no event less than the percentage set forth in Item 10. of the Declarations of the minimum and deposit premium stated in the Declarations, to extend the coverage granted under this policy, to Claims first made against the Insureds during: (1) twelve (12) months; (2) twenty-four (24) months; or (3) thirty-six (36) months; as elected by the Named Insured, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, for:

1.   Bodily Injury or Property Damage which happened on or after the Retroactive Date and prior to the effective date of such cancellation or nonrenewal, caused by an Occurrence which happened on or after the Retroactive Date and prior to the effective date of such cancellation or nonrenewal and arising from those products, goods, operations or premises specified in Item 6. of the Declarations and which is otherwise covered by this policy; or

2.   Personal Injury or Advertising Injury which happened on or after the Retroactive Date and prior to the effective date of such cancellation or nonrenewal, caused by an offense which happened on or after the Retroactive Date and prior to the effective date of such cancellation or nonrenewal and arising from those products, goods, operations or premises specified in Item 6. of the Declarations and which is otherwise covered by this policy.

This period of months as elected by the Named Insured and described in this paragraph shall be referred to in this policy as the Extended Reporting Period.

If, however, this policy is immediately succeeded by similar claims made insurance coverage on which the Retroactive Date is the same as or earlier than that stated in the Item 7. of the Declarations, the succeeding insurance shall be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period.

The quotation of a different premium and/or Deductible and/or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

B.   As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid: 1) all Deductibles when due; (2) all premiums due for the Policy Period in accordance with Section Other Conditions I., Premium and Audit; and (3) all premium due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement must have been paid. The right to purchase the Extended Reporting Period shall terminate unless a written request for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with full payment for the Extended Reporting Period. If such written request and premium payment are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

C.   In the event of the purchase of the Extended Reporting Period the entire premium therefor shall be fully earned at its commencement.

D.   The Extended Reporting Period shall not in any way increase the Limits of Liability stated in Item 4. of the Declarations.

## OTHER CONDITIONS

A.  **Cancellation:**  This policy may be cancelled by the Named Insured on behalf of all Insureds by mailing to the Company written notice stating when thereafter such cancellation shall be effective. If cancelled by the Named Insured, the earned premium shall be computed at the customary short rate. Payment or tender of unearned premium shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

This policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing to the Named Insured, at the address stated in Item 2. of the Declarations, written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the Company cancels the policy because the Named Insured has failed to pay a premium or Deductible when due, including premium due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement, this policy may be cancelled by the Company by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Such notice shall be conclusive on all Insureds. Delivery of such written notice by the Named Insured, the Company or its underwriting manager shall be equivalent to mailing. If cancelled by the Company or its underwriting manager, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

B.  **Representations:**  By acceptance of this policy, the Insureds agree as follows:

   1.  that the information and statements contained in the application(s) are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and

   2.  that the information and statements contained in the application(s) are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth of such representations.

C.  **Entire Agreement:**  This policy, the Declarations, the application(s) and any written endorsements attached hereto shall be deemed to be a single unitary contract.

D.  **Prevention of Loss:**  In the event of an Occurrence or an offense involving the products, goods, operations or premises covered by this policy, the Insured shall promptly, at his/her expense, take all reasonable steps to prevent other Bodily Injury, Property Damage, Personal Injury or Advertising Injury from arising out of the same or similar conditions.

E.  **Other Insurance:**  This insurance shall be in excess of the applicable Deductible stated in Item 5. of the Declarations and any other valid and collectible insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.

F.  **Changes:**  Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy and shall not estop the Company from asserting any right under the terms of the policy. The terms of this policy shall not be waived or changed, except by written endorsement issued to form a part of this policy, and this policy embodies all agreements existing between the Insureds and the Company or any of its agents relating to this insurance.

G.  **Assignment of Interest:**  Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon.

H.  **Subrogation:**  In the event of any payment under this policy, the Company shall be subrogated to the right of recovery of all Insureds to the extent of such payment. The Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the Claim to prejudice such rights.

The Company shall not exercise any such rights against any person, firms or corporations included in the definition of Insured. Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an Insured in respect of any Claim brought about or contributed to by the intentional, dishonest, fraudulent, criminal or malicious act or omission of such Insured.

Any amount so recovered shall be apportioned as follows:

Any recovery shall first be used for the repayment of expenses incurred toward subrogation; second, to any loss and expense payment by the Insured in excess of any Deductible(s); third, to any loss and expense payments by any excess

carrier on behalf of the Insured; fourth, to any loss and expense payments by any primary carrier on behalf of the Insured; and, last, to repayment of the Insured's Deductible.

I.   **Premium and Audit:** Upon expiration of this policy, the Named Insured shall furnish to, the Company or its underwriting manager, on behalf of the Company, a statement of the Named Insured's actual Gross Receipts or other premium base as stated in Item 8. of the Declarations for the Policy Period. The actual earned premium shall be computed thereon at the premium rate stated in Item 8. of the Declarations. If the actual earned premium is more than the deposit premium stated in Item 9. of the Declarations, the Named Insured shall pay the difference to the Company; if less, the Company shall refund the difference to the Named Insured except that the Company shall be entitled to the minimum premium as stated in Item 9. of the Declarations. The Company or its underwriting manager, on behalf of the Company shall have the right to require of the Named Insured, at any time within the said Policy Period or one year thereafter, a sworn statement of the entire amount (or number) of such Gross Receipts or other premium base during the whole or any specified part of the said period, and the Named Insured shall furnish said statement within ten (10) days after request. The statement referred to shall be subject to verification and audit by a duly authorized representative of the Company, who shall have the right and opportunity to examine the books and records of the Named Insured as respects such Gross Receipts or other premium base, and such examination may be made at any time during the said period and within three (3) years thereafter. The rendering of any estimate or statement or the making of any previous settlement shall not bar the examination herein provided for, nor the Company's right to additional premium.

J.   **Inspection:**  Any of the Company's authorized representatives shall have the right and opportunity, whenever the Company so desires, to inspect at any reasonable time the Insured's products, goods, operations and premises, but the Company assumes no responsibility or duty by reason of such inspection or the omission thereof. The Insured agrees to provide appropriate personnel to assist the Company's representatives during such inspection without cost to the Company.

K.   **Action Against the Company:** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been fully and finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

L.   **Authorization:**  By acceptance of this policy, the first person or organization named in Item 1. of the Declarations shall act on behalf of all Insureds with respect to the giving and receiving of all notices to and from the Company as provided herein: the exercising of the Extended Reporting Period; the cancellation of this policy in whole or part; the payment of premiums and Deductibles when due; the receiving of any return premiums that may become due under this policy; and the Insureds agree that such person or organization shall act on their behalf.

M.   **Reporting of Changes in Products, Goods, Operations and Premises:**  The premium charged for this policy is based on those products, goods, operations and premises identified in the underwriting information submitted to the Company on behalf of the Insured at the time of policy inception. The Insured shall report promptly to the Company any changes in those products, goods, operations or premises as described below, and the Company shall have the right to adjust the premium and/or Deductible(s) for such changes, based on its sole assessment of the additional exposure(s) presented.

Changes to report:

1.   any changes to manufacturing or servicing premises requiring structural alterations, or acquisition of additional manufacturing or servicing premises;

2.   any changes in manufacturing or servicing operations which is likely to result in an annual increase in payrolls of twenty-five percent (25%) or more;

3.   any change in operations which are not accurately described by the description as specified in Item 6. of the Declarations.

This policy shall apply to only those products, goods, operations and premises specified in Item 6. of the Declarations, irrespective of any changes reported.

N.   **Service of Suit:** Except with respect to any policy issued in any state in which the Company is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent

jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois 60015 and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this policy, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

# NUCLEAR ENERGY LIABILITY
## EXCLUSION (BROAD FORM)

This exclusion modifies the provisions of this policy.

It is agreed that:

1.  **This policy does not apply:**

    A.  Under any Liability Coverage, to bodily injury or property damage

        (1)  with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2)  resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    C.  Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

        (1)  the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

        (2)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

        (3)  the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

2.  **As used in this exclusion:**

    "hazardous properties" include radioactive, toxic or explosive properties;

    "nuclear material" means source material, special nuclear material or by-product material;

    "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

    "nuclear facility" means

        (a)  any nuclear reactor,

        (b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

        (c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

        (d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF TERRITORY – WORLDWIDE COVERAGE

This endorsement modifies insurance provided under the following:

GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY
SPECIFIED PRODUCTS AND COMPLETED OPERATIONS INSURANCE POLICY
MANUFACTURER'S PRODUCT ENGINEERING OR DESIGN ERRORS & OMISSIONS INSURANCE POLICY

In consideration of the premium paid, it is hereby understood and agreed that Section TERRITORY is deleted and replaced with the following:

**TERRITORY**

The insurance afforded by this policy applies worldwide other than any nation without diplomatic relation with the United States of America, provided the Claim is made in the United States of America, its territories or possessions, Puerto Rico or Canada.

With respect to any Claim made outside the United States of America, its territories or possessions, Puerto Rico or Canada:

1.    The Insured shall have the duty to defend, investigate and settle such Claim. The Company will indemnify the Insured for: (1) Claim Expenses incurred by the Insured in the defense of that portion of any Claim for which coverage is afforded under this policy; and (2) Damages for which coverage is afforded under this policy. The Insured shall keep the Company advised of all claimed Damages, potential liability, proceedings and actions, including progress of any litigation, any settlement demands, and any investigation developments that materially affect the Claim.

      The Company shall have the right, but not the duty, to associate in the investigation, defense or settlement of any Claim that appears reasonably likely to involve the Company. The Company shall have the right, but not the obligation, to make any investigation it deems appropriate with respect to a Claim.

2.    All payments or reimbursements the Company makes for Claim Expenses and Damages will be made in U.S. currency at the prevailing exchange rate at the time the Insured became legally obligated to pay such sums.

3.    Any action against the Company must be filed in the courts of the United States of America, its territories or possessions, Puerto Rico or Canada.

All other terms and conditions remain unchanged.

**INTERLINE**



**MARKEL**®

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## 25% MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that in the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of twenty-five percent (25%) of the total premium.

All other terms and conditions remain unchanged.

**EIC 4115-01 2 03**

**Page 1 of 1**
Case ID: 190702037

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION OF KNOWN CLAIMS /INCIDENTS

In consideration of the premium paid, it is hereby understood and agreed that this policy shall not apply to any Claim made against any Insured based upon, arising out of, or in any way involving any fact, circumstance, situation, incident, loss, claim or suit referred to in answer to any question of the application attached to this policy, or if this policy is a renewal or replacement of any policy issued by the Company or any of its affiliated companies, the application attached to the initial policy.

All other terms and conditions remain unchanged.

**EIC 4568 01 06**

INTERLINE



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ASBESTOS EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that the insurance provided by this policy shall not apply to any Claim, loss or expense caused by, resulting from or arising out of asbestos, asbestos fibers or any product or material containing asbestos in any form, under any theory of liability whatsoever.

It is further agreed that the Company shall have no duty to defend or to pay or reimburse for any fees, costs or expenses in the investigation or defense of any Claim excluded herein.

All other terms and conditions remain unchanged.

**EIC 832-01 10 02**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY

In consideration of the premium paid, it is understood and agreed that the policy is amended as follows:

1.  Section Definitions C., Aircraft Products, is deleted and replaced as follows:

    C.  **Aircraft Products** means any aircraft whether or not heavier than air, including manned and Unmanned Aircraft, spacecraft and missiles, and any ground support, guidance, control or communications equipment used in connection therewith, and also includes parts, supplies, or equipment installed in or on or used in connection with aircraft, including tools, training aids, instructions, manuals, blueprints and other data, engineering and other advice, services and labor used in the operation, maintenance or manufacture of aircraft products.

2.  Section Definitions is amended by the addition of the following:

    **Unmanned Aircraft** means an aircraft that is not designed, manufactured, or modified after manufacture, to be controlled directly by a person from within or on the aircraft.

3.  Section The Exclusions A. is amended by the addition of the following:

    With respect to all Coverages, this policy does not apply to:

    any Claim based upon or arising out of Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an Unmanned Aircraft. Solely for purposes of this exclusion, "use" includes operation of or exercise of any control over an Unmanned Aircraft; and the Insured's authorization, direction or acquiescence in the operation or control of Unmanned Aircraft by any person or entity; and loading or unloading of any such Unmanned Aircraft. This exclusion applies even if any such Claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by the Insured, if the Occurrence which caused the Bodily Injury or Property Damage or the offense which caused the Personal Injury or Advertising Injury involved the ownership, maintenance, use or entrustment to others of any aircraft that is an Unmanned Aircraft.

4.  Section The Exclusions B.6. is deleted and replaced as follows:

    6.  any Claim based upon or arising out of Bodily Injury or Property Damage arising out of ownership, maintenance, operation, use or entrustment to others or loading or unloading of:

        (i)  any Automobile, aircraft other than an Unmanned Aircraft or watercraft owned or operated by or rented or loaned to any Insured; or

        (ii) any other Automobile, aircraft other than an Unmanned Aircraft or watercraft operated by any person in the course of his/her employment by the Named Insured;

        This exclusion applies even if any such Claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by the Insured, if the Occurrence which caused the Bodily Injury or Property Damage involved the ownership, maintenance, use or entrustment to others of any aircraft other than Unmanned Aircraft, Automobile or watercraft that is owned or operated by or rented or loaned to any Insured;

however, this exclusion shall not apply to:

(a) the parking of an Automobile on premises owned by, rented to or controlled by the Named Insured or on ways next to such premises, if such Automobile is not owned by or rented or loaned to any Insured;

(b) a watercraft while ashore on premises owned by, rented to or controlled by the Named Insured; or

(c) a watercraft that is less than twenty-six (26) feet in length, that is not owned by the Named Insured and that is not being used to carry persons or property for a charge;

All other terms and conditions remain unchanged.

**MEGL 1662 05 15**           Includes copyrighted material of Insurance Services Office, Inc. with its permission.



**COMMERCIAL GENERAL LIABILITY**

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ELITE NUTRA ENHANCEMENT

This endorsement modifies insurance provided under the following:

GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY

The following coverages and extensions are added to this policy as detailed below. As respects any coverage provided by this endorsement, if higher limits are provided on any other schedule, declarations or endorsement attached to this policy, then the limits and coverage provided by this endorsement would not apply for that coverage.

### SCHEDULE

| | |
|---|---|
| Incidental Human Clinical Trial, Medical Monitoring Expenses and Incidental Errors or Omissions Coverages | Included |
| Additional Insured – Vendors Broad Form | Included |
| Additional Insured as Required by Written Contract | Included |
| Additional Insured – Trade Show Sponsor as Required by Written Contract | Included |
| Limited Civil Penalty Reimbursement Coverage (California Proposition 65) | $25,000 Each Violation/$25,000 Aggregate |
| Medical Payments Coverage | $5,000 Each Person/$250,000 Aggregate |
| Batch Clause | Included |
| Worldwide Coverage | Included |
| Aggregate Deductible | Included |
| Amended Extended Reporting Period | Included |
| Primary and Non-Contributory | Included |
| Waiver of Subrogation | Included |
| Premium and Audit Waiver | Included |

**A. Incidental Human Clinical Trial, Medical Monitoring Expenses and Incidental Errors or Omissions Coverages**

    **1.** Section THE INSURED is amended by the addition of the following:

        Solely with respect to Bodily Injury or Property Damage as covered hereunder, any Clinical Trial Contractor, Medical Sales Consultant and Product Service Contractor of the Named Insured which the Named Insured has agreed by written contract, agreement or permit to add as an additional Insured pursuant to a written contract, agreement or permit which the Named Insured entered into prior to the Bodily Injury, Property Damage or Occurrence; provided, however, that coverage afforded to such Insureds does not apply to:

        1. any express warranty unauthorized by the Named Insured;

2.  any physical or chemical change in a product or good specified in Item 6. of the Declarations which is manufactured, sold, handled or distributed by the Named Insured, which change was made intentionally by such person or organization without the Named Insured's consent; or

3.  such person's or organization's rendering of or failure to render advice unless the Bodily Injury or Property Damage arises directly out of the use of a product or good specified in Item 6. of the Declarations which is manufactured, sold, handled or distributed by the Named Insured.

**2.**  Section INSURING AGREEMENTS, Paragraph A. Coverage A. – Bodily Injury and Property Damage Liability, is amended by the addition of the following Coverages:

**Incidental Human Clinical Trial Coverage:** The coverage afforded under Coverage A. of this policy is amended to include coverage for Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section CLAIMS, Paragraph A. Claim Reporting Provision, based upon or arising out of the vicarious liability of the Named Insured by reason of the Named Insured's sponsorship of an Approved Human Clinical Trial, provided:

1.  the product being tested is a product or good specified in Item 6. of the Declarations which is manufactured, sold, handled or distributed by the Named Insured;

2.  exposure to such product, upon or within human beings during such trial, happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations and prior to the expiration of the Policy Period; and

3.  with respect to such Approved Human Clinical Trial, this insurance applies only if the Insured has not recklessly or willfully violated or consented to any violation of any agreement, contract, law, procedure, protocol or regulation with regard to the conduct of such Approved Human Clinical Trial.

**Medical Monitoring Expenses Coverage:** The coverage afforded under Coverage A. of this policy is amended to include coverage for Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section CLAIMS, Paragraph A. Claim Reporting Provision for Medical Monitoring Expenses caused by or directly resulting from participation in an Approved Human Clinical Trial which has been suspended, provided:

1.  the product being tested is a product or good specified in Item 6. of the Declarations which is manufactured, sold, handled or distributed by the Named Insured;

2.  the product being tested is the subject of a Product Recall;

3.  the claimant's first exposure to such recalled product happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations and prior to the expiration of the Policy Period; and

4.  prior to the effective date of this policy, the Insured had no knowledge of such Product Recall or any fact, circumstance, situation or incident which may have led a reasonable person in the Insured's position to conclude that a Claim for Medical Monitoring Expenses or a Product Recall was likely.

**Incidental Errors or Omissions Coverage:** The coverage afforded under Coverage A. of this policy is amended to include coverage for Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section CLAIMS, Paragraph A. Claim Reporting Provision by reason of an act, error or omission in the performance of Professional Services rendered or that should have been rendered by the Insured or by any person or organization for whose act, error or omission the Insured is legally responsible, provided:

1.  the entirety of such act, error or omission happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations and prior to the expiration of the Policy Period; and

2.  prior to the effective date of this policy, no Insured had any knowledge of such act, error or omission or any fact, circumstance, situation or incident which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.

**3.**  With respect to Incidental Human Clinical Trial, Medical Monitoring Expenses and Incidental Errors or Omissions Coverages, Section DEFINITIONS is amended by the addition of the following:

**Approved Human Clinical Trial** means a clinical trial performed upon or within human beings, provided that the sponsor of the clinical trial makes all filings that are required to be made under all applicable laws and regulations and has received all necessary authorization in connection herewith, including approval of the applicable institutional review board, ethics committee and/or similar body.

**Clinical Trial Contractor** means (1) an individual other than a principal, officer or employee of the Named Insured; or (2) an organization other than a subsidiary of the Named Insured; engaged to provide service, advice or instruction in connection with: (a) clinical, laboratory or research testing activities within the scope of and in accordance with the applicable written protocol; or (b) the planning, monitoring or review; of an Approved Human Clinical Trial.

**Medical Monitoring Expenses** means those expenses incurred to conduct medical testing on or medical monitoring of a claimant in the absence of physical injury, illness or disease: (1) necessitated by a substantially increased risk that the claimant will sustain Bodily Injury in the future; and (2) ongoing medical testing or monitoring are medically warranted because the prospect of early diagnosis of such Bodily Injury will improve the chance of beneficial medical intervention; and (3) the expenses provide no other material benefit to the claimant.

**Medical Sales Consultant** means (1) an individual other than a principal, officer or employee of the Named Insured; or (2) an organization other than a subsidiary of the Named Insured; providing advice or demonstrating procedures in connection with the manufacture, sale, loan, lease or delivery of a product or good specified in Item 6. of the Declarations which is manufactured, sold, handled or distributed by the Named Insured, provided such consultant does not provide any direct patient care.

**Product Recall** means the recall of a product or good of the Named Insured specified in Item 6. of the Declarations taken voluntary by or on behalf of the Insured or required by a government entity acting in accordance with applicable federal, state, regional or local law or the U.S. Food and Drug Administration when the sole reason, expressed in writing is that human subjects are or would be exposed to an unreasonable and significant risk of illness or injury if the Approved Human Clinical Trial were continued.

**Product Service Contractor** means (1) an individual other than a principal, officer or employee of the Named Insured; or (2) an organization other than a subsidiary of the Named Insured such as a scientific advisory board; to whom or to which the Named Insured is obligated by virtue of a written contract, agreement or permit to provide such insurance as afforded by this policy.

**Professional Services** means any act, error or omission by the Insured or by any agent or representative of the Insured in connection with the manufacture, sale, loan, lease or delivery of a product or good specified in Item 6. of the Declarations which is manufactured, sold, handled or distributed by the Named Insured, including but not limited to rendering or failing to render advice or instructions to physicians on the proper selection, sizing and application of any such product or good so long as such advice or instruction is not knowingly contrary to any written advice or instructions given by the manufacturer to the Insured.

4. With respect to Incidental Human Clinical Trial, Medical Monitoring Expenses and Incidental Errors or Omissions Coverages, Section THE EXCLUSIONS, Paragraph A.2. is replaced by the following:

   2. any Claim based upon or arising out of the rendering of or failure to render Professional Services by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible; provided, however, this exclusion shall not apply to Incidental Medical Malpractice Injury or to Incidental Errors or Omissions Coverage;

5. With respect to Incidental Human Clinical Trial, Medical Monitoring Expenses and Incidental Errors or Omissions Coverages, Section THE EXCLUSIONS, Paragraph A. is amended by the addition of the following:

   With respect to coverage afforded by this endorsement, this policy does not apply to any Claim based upon or arising out of:

   (i) or in any way involving medical malpractice including patient treatment, consultation with patients and rendering medical opinions in specific treatment of any patient as the consulting medical care provider for a second opinion or primary care; or

   (ii) any dishonest, fraudulent, criminal, malicious or knowingly wrongful acts, errors or omissions intentionally committed by or at the direction of the Insured.

**B. Additional Insured – Vendors Broad Form**

Section THE INSURED is amended to include as an Insured the following:

Any person or organization that is a vendor of the Named Insured (hereinafter referred to as Vendor), but only with respect to the sale of the products or goods specified in Item 6. of the Declarations; provided, however, that coverage afforded to the Vendor shall not apply to any:

1. express warranty, unauthorized by the Named Insured;

2. act of the Vendor which changes the condition of such product or good or causes or contributes to the alleged Bodily Injury or Property Damage;

3. failure to maintain such product or good in merchantable condition;

4. failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of such product or good ; or

5. such products or goods which, after distribution or sale by the Named Insured, have been labeled or relabeled or used as a container, part or ingredient of any other product or good , thing or substance by or for the Vendor.

The coverage afforded by this provision does not apply to any person or organization, as insured, from whom the Named Insured has acquired such products or goods or any ingredient, part or container, entering into, accompanying or containing such products or goods.

**C.  Additional Insured as Required by Written Contract**

Section THE INSURED is amended to include as an Insured the following:

Any person or organization the Named Insured is required to include as an additional insured on this policy by a written contract or written agreement in effect during this Policy Period and executed prior to the Bodily Injury or Property Damage and Occurrence, hereinafter referred to as Additional Insured.

Notwithstanding the foregoing, no contract manufacturer of the Named Insured and no ingredient or part supplier of the Named Insured shall be included as an Insured or Additional Insured pursuant to this endorsement.

The insurance provided to the Additional Insured is limited as follows:

1. the person or organization is only an Additional Insured with respect to liability arising solely out of the Products Hazard or Completed Operations Hazard.

2. in the event that the Limits of Liability under this policy exceed the limits of insurance required by the written contract or written agreement, the insurance provided by this endorsement shall be limited to the limits of insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Liability stated in Item 4. of the Declarations.

3. this insurance does not apply to Bodily Injury or Property Damage arising out of the Products Hazard or Completed Operations Hazard unless the Named Insured is required to provide such coverage by the written contract or written agreement but only for the period of time required by the written contract or written agreement and only for Bodily Injury or Property Damage, the entirety of which happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations, caused by an Occurrence, the entirety of which happens during the Policy Period or on or after the Retroactive Date stated in the Item 7. of the Declarations, and any of which arises out of the Products Hazard or Completed Operations Hazard.

4. any coverage provided by this endorsement to an Additional Insured shall be excess over any other valid and collectible insurance available to the Additional Insured whether primary, excess, contingent or on any other basis.

5. where no coverage is afforded under this policy for the Named Insured, no coverage or defense shall be afforded to the Additional Insured.

6. this insurance does not apply to Bodily Injury or Property Damage arising out of the sole negligence of the Additional Insured.

**D.  Additional Insured – Trade Show Sponsor as Required by Written Contract**

Section THE INSURED is amended to include as an Insured the following:

Any sponsor or operator of a trade show or convention at which the Named Insured operates a booth for the purpose of marketing or selling or displaying those products or goods specified in Item 6. of the Declarations provided such sponsor or operator is required to be included as an additional insured on this policy by a written contract or written agreement in effect during this Policy Period and executed prior to the Bodily Injury or Property Damage and Occurrence, hereinafter referred to as Additional Insured.

Notwithstanding the foregoing, no contract manufacturer of the Named Insured and no ingredient or part supplier of the Named Insured shall be included as an Insured or Additional Insured pursuant to this endorsement.

The insurance provided to the Additional Insured is limited as follows:

1. such sponsor or operator is an Additional Insured solely with respect to liability for Occurrences at, on or upon that portion of the premises of the trade show or convention while occupied by the Named Insured.

2. in the event that the Limits of Liability under this policy exceed the limits of insurance required by the written contract or written agreement, the insurance provided by this endorsement shall be limited to the limits of insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Liability stated in Item 4. of the Declarations.

3. this insurance does not apply to Bodily Injury or Property Damage arising out of the Products Hazard or Completed Operations Hazard unless the Named Insured is required to provide such coverage by the written contract or written agreement but only for the period of time required by the written contract or written agreement and only for Bodily Injury or Property Damage, the entirety of which happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations, caused by an Occurrence, the entirety of which happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations, and any of which arises out of the Products Hazard or Completed Operations Hazard.

4. any coverage provided by this endorsement to an Additional Insured shall be excess over any other valid and collectible insurance available to the Additional Insured whether primary, excess, contingent or on any other basis.

5. where no coverage is afforded under this policy for the Named Insured, no coverage or defense shall be afforded to the Additional Insured.

6. this insurance does not apply to Bodily Injury or Property Damage arising out of the sole negligence of the Additional Insured.

E. **Limited Civil Penalty Reimbursement Coverage (California Proposition 65)**

1. Section INSURING AGREEMENTS is amended by the addition of the following:

   **Limited Civil Penalty Reimbursement Coverage:** The Company shall reimburse the Named Insured for that portion of a judgment that orders the Named Insured to pay a civil penalty pursuant to California Safe Drinking Water and Toxic Enforcement Act of 1986 Section 25249.6 and any amendments thereto, in excess of the Deductible amount and subject to the applicable Limits of Liability stated below, provided that:

   1. the Claim giving rise to such penalty is first made against the Named Insured during the Policy Period;

   2. the entirety of the event(s) giving rise to such penalty happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations and before the expiration of the Policy Period;

   3. the event(s) giving rise to such penalty happens within the Territory;

   4. the Claim giving rise to such penalty arises out of only those products and goods specified in Item 6. of the Declarations; and

   5. the Claim giving rise to such penalty is brought by an Attorney General, District Attorney, city attorney, city prosecutor or other authorized government entity.

2. With respect to Limited Civil Penalty Reimbursement Coverage, Section DEFINITIONS, Paragraph F. Claim is replaced by the following:

   **Claim** means a notice received by the Named Insured of an intention to hold the Named Insured responsible for a Violation.

3. With respect to Limited Civil Penalty Reimbursement Coverage, Section DEFINITIONS is amended by the addition of the following:

   **Limited Civil Penalty Reimbursement** means the amount the Company will reimburse hereunder after the Named Insured has paid that portion of a judgment in connection with a covered Claim awarding civil penalties under California Safe Drinking Water and Toxic Enforcement Act of 1986 Section 25249.7(b)(1).

   **Violation** means, for purposes of Limited Civil Penalty Reimbursement Coverage only, the failure to comply with California Safe Drinking Water and Toxic Enforcement Act of 1986 Section 25249.6 and any amendments thereto, for failure to warn of the presence of chemicals known to cause cancer or reproductive toxicity in connection with your products or goods specified in Item 6. of the Declarations.

4. With respect to Limited Civil Penalty Reimbursement Coverage, Section THE EXCLUSIONS is amended by the addition of the following:

With respect to Limited Civil Penalty Reimbursement Coverage only, this policy does not apply to:

1.  any Claim brought under any section or provision of the California Safe Drinking Water and Toxic Enforcement Act of 1986 other than Section 25249.6, or for any award(s) under any sections or provisions other than Section 25249.7(b)(1), and any amendments thereto;

2.  any cost, expense, fees, attorney's fees or law costs in connection with any Claim;

3.  any award of attorney's fees under California law;

4.  any Bodily Injury, Property Damage, Advertising Injury or Personal Injury;

5.  any Claim brought by a person in the public interest pursuant to California Safe Drinking Water and Toxic Enforcement Act of 1986 Section 25249.7(d); or

6.  any Claim based upon, arising out of, resulting from, caused by, or in any way related, either directly or indirectly, to any actual or alleged criminal, malicious, dishonest or fraudulent act, error, omission, conduct or misconduct of any Insured.

5.  With respect to Limited Civil Penalty Reimbursement Coverage, Section LIMITS OF LIABILITY is amended by the addition of the following:

**Limited Civil Penalty Reimbursement Coverage:** The Company's liability for Limited Civil Penalty Reimbursement for civil penalty(ies) incurred by the Named Insured is in excess of the Deductible amount of $2,500 for any one Violation; and then for an amount not exceeding the amount shown in the Schedule of this endorsement as the result of any one Violation.

For the purpose of determining the limit of the Company's liability, all Claims involving allegations of multiple Violations arising from the same product(s) or good(s), or continuous or repeated exposure to the same, related or substantially similar product(s) or good(s), shall be deemed to constitute a single Violation regardless of the number of units of such product(s) or good(s) involved. All such Claims shall be deemed to have been first made on the date on which the earliest Claim arising out of such Violation is made.

Subject to the foregoing provisions, the total limit of the Company's liability because of all amounts paid or payable hereunder for Limited Civil Penalty Reimbursement Coverage to the Named Insured shall not exceed the amount shown in the Schedule of this endorsement in the aggregate.

Any reimbursement to the Named Insured under Limited Civil Penalty Reimbursement shall be part of and not in addition to the Policy Aggregate and shall reduce the Policy Aggregate Limit of Liability stated in Item 4.C. of the Declarations.

If this policy and any other policy issued to the Named Insured by the Company or any of its affiliates apply to the same Claim or Violation, the combined maximum limits of liability under all of the policies shall not exceed the highest applicable limit of liability available under any one policy.

6.  With respect to Limited Civil Penalty Reimbursement Coverage, Section EXTENDED REPORTING PERIOD is deleted in its entirety.

**F.  Medical Payments Coverage**

1.  Section INSURING AGREEMENTS is amended by the addition of the following Coverage:

**Medical Payments Coverage:** The Company will pay Medical Expenses incurred because of Bodily Injury that is caused by an accident that occurs:

1.  on premises the Named Insured owns or rents;

2.  on ways next to such premises the Named Insured owns or rents; or

3.  because of the Named Insured's covered operations;

provided that:

(i)  the Medical Expenses are incurred and reported to the Company within one year of the date of the accident; and

(ii)  the accident takes place in the policy territory and during the Policy Period.

2.  With respect to Medical Payments Coverage, Section DEFINITIONS is amended by the addition of the following:

Case ID: 190702037

**Medical Expenses** means reasonable costs for (1) first aid administered at the time of an accident; (2) necessary medical, surgical, x-ray and dental services, including prosthetic devices; and (3) necessary ambulance, hospital, professional nursing and funeral services.

3. With respect to Medical Payments Coverage, Section THE EXCLUSIONS is amended by the addition of the following:

With respect to coverage afforded by this endorsement, this policy does not apply to Medical Expenses for Bodily Injury:

1   to any Insured;

2. to any patient or resident of the Insured;

3. to any person hired to do work for or on behalf of any Insured or a tenant of any Insured;

4. to any person injured on that part of the premises the Named Insured owns or rents that the person normally occupies;

5. to any person, whether or not an employee of any Insured, if benefits for the Bodily Injury are payable or must be provided under a workers' compensation or disability benefits law or a similar law;

6. to any person injured while taking part in athletics;

7. due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution;

8. included within any Completed Operations Hazard or Products Hazard coverage provided by this policy; or

9. arising out of the rendering of or failure to render professional services by the Insured or by any person or organization for whose acts or omissions the Insured is legally responsible.

Further all exclusions pertaining to any General Liability Coverage or Bodily Injury and Property Damage Liability Coverage provided by this policy shall also apply to the Medical Payments Coverage.

4. With respect to Medical Payments Coverage, Section LIMITS OF LIABILITY is amended by the addition of the following:

**Medical Payments Coverage:** The Company shall pay covered Medical Expenses, regardless of fault, subject to the following:

1. The Each Person limit shown in the Schedule of this endorsement is the most we will pay for each person injured as a result of any one accident, or series of accidents arising from the same event; and

2. The Aggregate limit shown in the Schedule of this endorsement is the most we will pay for all persons injured in all accidents.

No person will be entitled to receive duplicate payments for the same elements of loss under the Medical Payments Coverage and any other coverage of this policy.

5. With respect to Medical Payments Coverage, Section CLAIMS, Paragraphs A. Claim Reporting Provision and C. Assistance and Cooperation of the Insured are amended by the addition of the following:

Each person injured, or someone acting on behalf of the person injured, seeking payment by the Company, must provide the Company with:

1. written authorization for release to the Company of copies of pertinent medical reports and records; and

2. written, sworn proof of Medical Expenses, as soon as practicable and in any event no later than one year after the date of the accident.

Each person injured must submit to physical examination by a physician selected by the Company when and as often as the Company may require. The Company will pay for the cost of such examination.

**G. Batch Clause**

1. Section DEFINITIONS, Paragraph P. Occurrence, and Section LIMITS OF LIABILITY, Paragraph F. Multiple Insureds, Claims and Claimants, are amended by the addition of the following.

**Batch Clause:** All Claims first made against the Insured during the Policy Period for Bodily Injury or Property Damage arising out of the contamination or adulteration of one Batch, regardless of the number of persons or

organizations who sustain Damages, shall be treated as a single Occurrence and all such Claims shall be deemed to be first made on the date on which the earliest Claim arising out of such Occurrence is made.

**2.** With respect to this provision, Section DEFINITIONS is amended by the addition of the following:

**Batch** means the amount or quantity of a product or good specified in Item 6. of the Declarations which is manufactured, sold, handled or distributed by the Named Insured, that:

1. is produced in a single continuous operation;

2. can be distinguished by the specific date of production or by the batch, lot, or run number assigned to it; and

3. contains substantially the same error or defect out of which Bodily Injury or Property Damage arises.

**H. Worldwide Coverage**

Section TERRITORY is deleted and replaced by the following:

The insurance afforded by this policy applies anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanctions or embargo by the United States of America, or where coverage is otherwise prohibited by the United States Office of Foreign Assets Control.

With respect to any Claim made outside the United States of America, its territories or possessions, Puerto Rico or Canada:

1. the Company will have the right but not the duty to defend the Claim;

2. the Insured will initiate a defense of a Claim in accordance with the following conditions:

   (i) the Company retains the right to assume and control the investigation, adjustment or defense of any Claim at any time; and

   (ii) in the event the Company does not exercise its right or is prevented from doing so because the Company is not licensed or permitted by law in the applicable jurisdiction to defend the Insured, the Company will reimburse the Insured under Claim Expenses for any reasonable and necessary expenses incurred for the defense of a Claim seeking Damages to which this insurance applies, that the Company would have paid had it been able to exercise it right and duty to defend. No such expenses shall be paid by any Insured without the Company's prior written consent;

3. if the Insured becomes legally obligated to pay sums because of Damages to which this insurance applies outside of the United States of America (including its territory and possessions), Puerto Rico or Canada, and the Company is prevented from paying such sums and associated expenses, if applicable, because the Company is not licensed or permitted by law in the applicable jurisdiction to pay such sums on the Insured's behalf, the Company will reimburse the Insured for such sums to the extent permitted by law;

4. all payments or reimbursements the Company makes for Damages because of judgments or settlements will be made in U.S. currency at the prevailing exchange rate at the time the Insured became legally obligated to pay such sums. All payments or reimbursements the Company makes for expenses under Claim Expenses will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred. In no event shall the Company pay more than the Limits of Insurance stated in Item 4. of the Declarations; and

5. any disputes between the Insured and the Company as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its territories and possessions), Puerto Rico or Canada.

**I. Aggregate Deductible**

Section LIMITS OF LIABILITY, Paragraph E. Deductible is amended by the addition of the following:

Subject to the foregoing Each Occurrence and Each Person or Organization Deductibles, the total Deductible payments to be paid by the Named Insured shall not exceed an aggregate Deductible of ten (10) times the amount of the Each Occurrence Deductible or Each Person or Organization Deductible, whichever is greater, stated in Item 5. of the Declarations, arising out of all Claims first made during the Policy Period and the Extended Reporting Period, if exercised.

**J. Amendment Extended Reporting Period**

Section EXTENDED REPORTING PERIOD, Paragraph A. is replaced by the following:

**EXTENDED REPORTING PERIOD**

A.  If the Named Insured nonrenews this policy or cancels this policy pursuant to Section OTHER CONDITIONS, Paragraph A. Cancellation, or if the Company nonrenews this policy or cancels this policy pursuant to Section OTHER CONDITIONS, Paragraph A. Cancellation for reasons other than nonpayment of premium or Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right upon payment of an additional premium calculated to extend the coverage granted under this policy, to Claims first made against the Insured during: (1) 12 months; (2) 24 months; (3) 36 months; or (4) 60 months; as elected by the Named Insured, and reported to the Company pursuant to Section CLAIMS, Paragraph A. Claims Reporting Provision following immediately upon the effective date of such cancellation or nonrenewal, for:

1.  Bodily Injury or Property Damage which happened on or after the Retroactive Date stated in Item 7. of the Declarations and prior to the effective date of such cancellation or nonrenewal, caused by an Occurrence which happened on or after the Retroactive Date stated in Item 7. of the Declarations and prior to the effective date of such cancellation or nonrenewal and arising from those products, goods, operations or premises specified in Item 6. of the Declarations and which is otherwise covered by this policy; or

2.  Personal Injury or Advertising Injury which happened on or after the Retroactive Date stated in Item 7. of the Declarations and prior to the effective date of such cancellation or nonrenewal, caused by an offense which happened on or after the Retroactive Date stated in Item 7. of the Declarations and prior to the effective date of such cancellation or nonrenewal and arising from those products, goods, operations or premises specified in Item 6. of the Declarations and which is otherwise covered by this policy.

This period of months as elected by the Named Insured and described in this paragraph shall be referred to in this policy as the Extended Reporting Period.

The 12 month Extended Reporting Period premium shall be calculated at 100% of the adjusted annual premium but in no event less than the 100% of the Minimum premium and Deposit premium stated in Item 9. of the Declarations. The 24 month Extended Reporting Period premium shall be calculated at 150% of the adjusted annual premium but in no event less than the 100% of the Minimum premium and Deposit premium stated in Item 9. of the Declarations. The 36 month Extended Reporting premium shall be calculated at 200% of the adjusted annual premium but in no event less than the 100% of the Minimum premium and Deposit premium stated in Item 9. of the Declarations. The 60 month Extended Reporting Period premium shall be calculated in accordance with our rules and rates with no maximum amount. In doing so, we may take into account the following:

1.  the Insured's exposures;

2.  previous types and amounts of insurance;

3.  the Limits of Liability available under this policy for future payment of Damages; and

4.  other related factors including, but not limited to, Claims history

If, however, this policy is immediately succeeded by similar Claims made insurance coverage on which the Retroactive Date is the same as or earlier than that stated in the Item 7. of the Declarations, the succeeding insurance shall be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period.

The quotation of a different premium, Deductible or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

**K.  Primary and Non-Contributory**

Section OTHER CONDITIONS, Paragraph E. Other Insurance is amended by the addition of the following:

**Primary and Non-Contributory Provision:** Solely with respect to any Claim made against any Additional Insured covered hereunder, the Company agrees to provide primary insurance to such Additional Insured on a non-contributory basis relative to any other insurance carried by the Additional Insured, provided the Named Insured has agreed to provide primary insurance to such Additional Insured on a non-contributory basis, in writing in a contract or agreement that was executed before the date such Claim was made. If however, such Additional Insured has other insurance available as an Additional Insured, this provision shall not apply and this insurance shall apply on an excess basis relative to such other insurance.

**L.  Waiver of Subrogation**

Section OTHER CONDITIONS, Paragraph H. Subrogation is amended by the addition of the following:

**Waiver of Subrogation Provision:** Solely with respect to those persons or organizations described in Paragraph **A.1.** of this endorsement or those Additional Insureds required to be included as an additional insured on this policy

**MEGL 2204 10 17**                                                                                              **Page 9 of 10**

by a written contract or written agreement in effect during this Policy Period and executed prior to the Occurrence of the Bodily Injury or Property Damage and with respect to whom the written contract or written agreement requires to have subrogation against them by the Company waived, the Company waives all rights of subrogation against any such Insured.

**M. Premium and Audit Waiver**

Section OTHER CONDITIONS, Paragraph I. Premium and Audit is amended by the addition of the following:

Provided this policy is not cancelled before its expiration by the Named Insured or the Company:

1. for the purpose of determining if the Named Insured is due any refund based on the actual earned premium being less than the Deposit Premium, the Minimum Premium will be deemed to be the lesser of:

   (i)  the amount of the Minimum Premium stated in Item 9. of the Declarations; or

   (ii)  90% of the Deposit Premium stated in Item 9. of the Declarations; or

2. for the purpose of determining any additional premium the Named Insured must pay to the Company, the Company shall reduce any amount due by any amount equal to 5% of the Deposit Premium stated in Item 9. of the Declarations.

All other terms and conditions remain unchanged.

Case ID: 190702037



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF DEFINITIONS AND EXCLUSIONS – ELECTRONIC DATA AND DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

This endorsement modifies insurance provided under the following:

GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART – OCCURRENCE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE COVERAGE PART – CLAIMS MADE COVERAGE

1.  Section Definitions is amended by the addition of the following:

    **Electronic Data** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or other media which are used with electronically controlled equipment.

2.  Section Definitions, Property Damage, is deleted and replaced as follows:

    **Property Damage** means:

    1.  physical injury to or destruction of tangible property, including consequential loss of use thereof; or

    2.  loss of use of tangible property which has not been physically injured or destroyed; provided, however, such loss of use is caused by an Occurrence;

        provided, however, tangible property shall not include Electronic Data.

3.  Section The Exclusions A. is amended by the addition of the following:

    any Claim based upon or arising out of any violation of:

    (a) the Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;

    (b) the CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation; or

    (c) any other statute, law, rule, ordinance or regulation that prohibits or limits the sending, transmitting, communication or distribution of information or other material.

All other terms and conditions remain unchanged.

MEIL 1313 02 12



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - DESIGNATED INGREDIENTS

This endorsement modifies insurance provided under the following:

SPECIFIED PRODUCTS AND COMPLETED OPERATIONS INSURANCE POLICY
GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
GENERAL LIABILITY INSURANCE (CLAIMS MADE) COVERAGE PART FOR SPECIFIED PROFESSIONS
EXCESS LIABILITY INSURANCE POLICY


This insurance does not apply to claims arising from the importation, manufacture, distribution, sale, use or ingestion of the following, whether as the primary ingredient or in combination with other ingredients or as a synthetic or cloned version, and whether marketed under the name(s) listed below or any other name:

1. Germander.
2. Lobelia.
3. Yohimbe.
4. Jin Bu huan.
5. Gamma Hydroxy Butrate (GHB); Gamma Butyrate (GBL); 1,4 Butanediol (BD).
6. Ephedra sinica, Ephedra. E. equisetina, Mahuang, Ephedra Alkaloid, Pseudoephedrine, Ephedrine or any other Ephedra derivatives or extracts.
7. Aristolochia spp., Aristolochia, Aristolochic acids, Aristolochia fangchi, Aristolochia spp., Asarum spp., Bragantia spp., Clematis spp., Akebia spp., Cocculus spp., Diploclisia spp., Menispernum spp., Sinomenium spp., Mu Tong, Fang ji, Guang fang ji, Fang Chi, Kan-Mokutsu, Mokutsu and any adulterated botanicals, botanical derivatives or other products that contain aristolochic acid, aristolochic acid derivatives or aristolochic acid extracts.
8. Stephania, Stephania spp, or any adulterated botanicals, botanical derivatives or any other products that contain Stephania, or any Stephania derivatives or extracts.
9. Magnolia, or any adulterated botanicals, botanical derivatives or any other products that contain Magnolia, or any Magnolia derivatives or extracts.
10. Kava, ava, ava pepper, awa, kava root, kava-kava, kawa, Piper methysticum Forst. f., Piper Methysticum G. Forst, rauschpfeffer, intoxicating pepper, kava kava, kava pepper, kawa kawa, kawa-kawa, kew, Piper methysticum, sakau, tonga, wurzelstock, yangona.
11. Glyburide, unlabeled glyburide, Liqiang 4, Liqiang Xiao Ke Ling (Liqiang Thirst Quenching Efficacious).
12. Bismacine, also known as Chromacine.
13. DMAA; dimethylamylamine; AMP Citrate; DMBA; and 4-amino-2-methylpentane citrate.
14. Kratom, Mitragyna speciosa, mitragynine extract, biak-biak, cratom, gratom, ithang, kakuam, katawn, kedemba, ketum, krathom, krton, mambog, madat, Maeng da leaf, nauclea, Nauclea speciosa, thang, either in natural or synthetic form or any of their derivatives, alkaloids or extracts.
15. Cannabidiol (CBD), cannabinoids, and any derivative, extract or constituent of cannabis, natural or synthetic.
16. Natural anabolic steroids; synthetic anabolic steroids.


All other terms and conditions remain unchanged.

MEIL 1317 01 16

Case ID: 190702037



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## BANNED SUBSTANCES EXCLUSION

This endorsement modifies insurance provided under the following:

SPECIFIED PRODUCTS AND COMPLETED OPERATIONS INSURANCE POLICY
GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
EXCESS LIABILITY INSURANCE POLICY

This insurance does not apply to claims arising from the importation, manufacture, distribution, sale, use or ingestion of the following, whether as the primary ingredient or in combination with other ingredients or as a synthetic or cloned version, and whether marketed under the name(s) listed below or any other name:

1. Superdrol, methasterone, methyldrostanolone;
2. Madol, pheraplex, desoxymethyltestosterone, DMT;
3. Tren, trenbolone;
4. Androstenedione, 4-androstenedione, 17-ketoestosterone;
5. Turinabol, chlorodehydromethyltestosterone;
6. C-4 Extreme;
7. Jack3d;
8. Dimethylamylamine, DMAA;
9. Any natural or synthetic anabolic steroid;
10. Any other substance, ingredient or product that has been the subject of any United States Food and Drug Administration warning letter, ban or recall as of the inception date of this policy that was not disclosed in the application for this insurance;
11. Any other substance, ingredient or product, in any combination, that the United States Food and Drug Administration has determined as of the inception date of this policy is not a dietary ingredient or a dietary supplement under the Dietary Supplement Health and Education Act of 1994 (DSHEA).

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOLD EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that this policy does not apply to any Claim based upon, arising out of, or in any way involving **Mold** or **Mold Event**.

Solely for the purposes of this endorsement:

**Mold** means any permanent or transient fungus, mold, mildew or mycotoxin, or any of the spores, scents or by-products resulting therefrom that exist, emanate from or move anywhere indoors or outdoors, regardless of whether they are proved to cause disease, injury or damage.

**Mold Event** means any actual, alleged or threat of contact with, exposure to, or inhalation, ingestion, absorption, discharge, dispersal, seepage, migration, release, escape, presence, growth or reproduction of **Mold**.

All other terms and conditions remain unchanged.

ZZ-44002-01

Case ID: 190702037



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CERTIFIED ACTS OF TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY INSURANCE POLICY
GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY
GENERAL LIABILITY INSURANCE (CLAIMS MADE) COVERAGE PART FOR SPECIFIED PROFESSIONS
MANUFACTURER'S PRODUCT ENGINEERING OR DESIGN ERRORS & OMISSIONS INSURANCE POLICY
SPECIFIED PRODUCTS AND COMPLETED OPERATIONS LIABILITY INSURANCE POLICY
EMPLOYMENT PRACTICES AND SALTING LIABILITY INSURANCE POLICY
SALTING LIABILITY INSURANCE POLICY

In consideration of the premium paid, it is hereby understood and agreed that this policy does not apply to any claim or portion thereof based upon, arising out of, or in any way involving any Certified Act of Terrorism.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of  Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The federal Terrorism Risk Insurance of Act sets forth the following criteria for a Certified Act of Terrorism:

1.  The act resulted in insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms and conditions remain unchanged.

**ZZ-44003-03 01 15**

**MARKEL**®

[ ] Evanston Insurance Company
[ ] Essex Insurance Company

## NutraPLUS Application

**Notice:** If the policy for which application is made is for claims made coverage: coverage applies only to "claims" first made during the "policy period," unless an extended reporting period is exercised.
Please read the policy carefully.
If space is insufficient to answer any question fully, attach a separate sheet. If response is none, state NONE.

### I.  APPLICANT INFORMATION

A.  Full Name of Applicant: _Vitamin Energy LLC_

B.  Principal business address: _391 Wilmington West Chester Pike, Suite 3, 403_

C.  List of names of all predecessor organizations of the applicant: _N/A_

D.  Audit Contact Name & Phone: _____

E.  Website Address: _VitaminEnergy.com_

F.  Years in business: _6 Months_       G. Proposed Effective Dates: _July 19, 2018_ to _indefinite_

H.  Applicant is a: [ ] corporation     [ ] partnership     [ ] sole proprietorship     [X] limited liability company (LLC)
[ ] Other: Specify: _____

I.  Is any principal, member, shareholder, officer or director of the Applicant associated with any other person, entity or organization that is involved in the manufacture, distribution or sale of dietary supplements?..................................................................................................Yes [X] No [ ]
   1.  If Yes, please explain: _Vitamin Energy_

J.  Is the Applicant controlled by, owned by, or commonly owned, affiliated or associated with any other organization?..........................................................................................................Yes [ ] No [X]
   1.  If Yes, provide details: _____

### II.  DIETARY SUPPLEMENT DETAILS

A.  Total estimated annual gross sales for products listed in Part II., Question B.:

|   | Domestic (USA) | Foreign |
|---|---|---|
| 1.  Upcoming Year (Estimate) | $ 500 K | $ 50 K |
| 2.  Prior Year (Actual) | $ 0 |  |

B.  Provide the following information for those products the Applicant wants coverage for. If products below are identified by category, please attach a listing of all products within such category for which you seek coverage.
NOTE: Only those products listed below will be considered for coverage.

| Products and Goods | Applicant acts as: | | | | | # of Yrs. | % of Gross Receipts | Products & Goods Sold to: | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
|  | M | W | R | I | MR |  |  | W | R | C | O |
| Vitamin Energy | X |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |

M: manufacturer  W: wholesaler  R: retailer  I: importer  MR: manufacturer's rep.  C: consumer direct  O: Other

Case ID: 190702037

**Markel NutraPLUS Application**

1. Are any of the above listed products marketed for children or for use in pre-natal or post-natal care? ................................................................................................................Yes [ ] No [X]

2. If Yes, identify such products: _____

C. Provide the name(s) and description(s) of all product(s) sold by the Applicant that is/are not dietary supplement(s) as defined under the Dietary Supplement Health and Education Act of 1994 (and amendments thereto) or by the FDA:
N/A
_____
_____

NOTE: Any product containing an ingredient listed on endorsement: MEIL 1317 Exclusion - Designated Ingredients will not be covered unless a specific exception stating such ingredient as an exception to the exclusion is included in the policy offered by the Company. This endorsement is attached for review and acknowledgment by the Applicant.

D. Percentage of total estimated gross sales to be generated from the following type products:

Weight Loss ___0___ %     Body Building & Sports Nutrition ___100___ %     Sexual Enhancement & Erectile Dysfunction ___0___ %

If any %, provide details, including product description, form and usage: Vitamin Energy is an energy shat used by athletes

E. Provide details on products the Applicant is seeking coverage for that contain the following ingredients or other ingredients designated on the MEIL 1317:

| Designated Ingredient | Name of the Product Containing the Ingredient | Ingredient Dosage | Estimated % of Sales |
|---|---|---|---|
| Creatine Yes[ ] No[X] | | | |
| Kava Yes[ ] No[X] | | | |
| Magnolia Yes[ ] No[X] | | | |
| Yohimbe Yes[ ] No[X] | | | |
| Identify Other: | | | |

NOTE: Attach similar details for any other product containing any ingredient stated on the MEIL 1317. ALSO provide legible copies of labels for any product containing any of the designated ingredients with this application.

F. Provide a description of all mergers, acquisitions, and divestitures involving the Applicant within the past five (5) years: N/A
_____
_____

1. Is Applicant considering any merger, acquisition or divestiture within the next twelve (12) months? Yes [ ] No [ ]

G. Provide a description of any recent or planned changes in mix of Applicant's products, including discontinuing any product: N/A
_____

H. Does the Applicant contract the manufacturing of any of its product(s) to others?...............................Yes [X] No [ ]

1. If Yes, please provide the manufacturer's name and address, and attach a copy of the contract to this application: NVE Pharmaceuticals, 15 Whitehill Rd Andover, NJ 07821

2. If Yes to II.H., to the best of the Applicant's knowledge has any company listed in question II.H.1. recalled or is it considering recalling a product that the Applicant was involved with? ...........Yes [ ] No [X]

MAGL 2053 05 16

3. If Yes to II.H.2., please provide details: _____

I. Does the Applicant perform contract manufacturing of products devised, designed, or formulated by others? .................................................................................................Yes [ ] No [X]

   1. If Yes, please provide the names, addresses, and products of all entities for whom Applicant performs contract manufacturing: _____

   2. If Yes to II.I., to the best of the Applicant's knowledge has any company listed in question II.I.1. recalled or is considering recalling a product that the Applicant was involved with? ..............Yes [ ] No [X]

   3. If Yes to II.I.2., please provide details: _____

J. If the Applicant is a wholesaler or retailer of domestically sourced products, please list the manufacturers: _____

_____

## III. PROCESSING AND QUALITY CONTROL

A. Is the Applicant a member of the Natural Products Association (NPA) or NSF International?............Yes [ ] No [X]

B. Is the Applicant compliant with FDA Current Good Manufacturing Practices? .....................................Yes [X] No [ ]

C. Has the Applicant ever been found to be out of compliance with FDA Good Manufacturing Practices? ........Yes [ ] No [X]

D. In the past five years, has the FDA issued a Warning Letter or a Form FDA 483 to the Applicant?...Yes [ ] No [X]

   1. If Yes, attach a copy of each notification and all relevant documents.

E. Has the Applicant or will the Applicant use ingredients imported from foreign suppliers? ..................Yes [ ] No [X]

   1. If Yes, please list the ingredients and describe the Applicant's Quality Assurance Program and countries of origin:

_____

F. Does the Applicant have a quality control and testing procedure?.................................................Yes [X] No [ ]

   1. If Yes, how long are quality control and testing records kept? 2 yrs by JVL

G. Can the Applicant identify its own product(s) from those of competitors by product packaging, design, labeling and formulation?.................................................................................................Yes [X] No [ ]

H. Do records indicate to whom the Applicant's product was sold and the date of sale? ...................Yes [X] No [ ]

I. Does the Applicant have a full time employee in charge of quality control and testing? .......................Yes [ ] No [X]

J. Does the Applicant conduct pre-production testing of raw materials?...........................................Yes [ ] No [X]

K. Do the Applicant's records show a specific identification number for each package sold? ...........Yes [X] No [ ]

L. Does the Applicant have a program to withdraw known or suspected defective products from the market? ...............................................................................................................Yes [X] No [ ]

M. Has the Applicant or any other entity ever recalled or is the Applicant or any such entity(ies) considering recalling Applicant's product or an ingredient or component thereof? ...........................Yes [ ] No [X]

   1. If Yes, please provide details: _____

_____

N. Is the Applicant aware of or have knowledge of any fact, incident, circumstance, situation, condition, defect or suspected defect which may lead to a recall? .................................................................Yes [ ] No [X]

   1. If Yes, please provide details: _____

_____

Markel NutraPLUS Application

O. Have any of the Applicant's products or ingredients or components thereof, ever been the subject of any investigation, enforcement action, or notice of violation of any kind by any governmental, quasi-governmental, administrative, regulatory or oversight body? ...................................................Yes [ ] No [X]

   1. If Yes, please provide details: _____

P. Are imported products, materials and ingredients tested for contamination and verification that they conform to what was ordered?.............................................................................................Yes [X] No [ ]

Q. Are the Applicant's formulas and designs reviewed, tested or verified by outside labs? ...................Yes [X] No [ ]

## IV. LABELS

A. Are the Applicant's labels fully compliant with all applicable FDA and FTC Regulations?...................Yes [X] No [ ]

B. Does the Applicant use outside legal counsel to review and approve labeling?.................................Yes [X] No [ ]

C. Have the Applicant's labels ever been found to be non-compliant with FDA or FTC Regulations? .....Yes [ ] No [X]

   1. If Yes, please provide details: _____

D. Do any of the Applicant's labels make health claims for specific diseases or health-related conditions? ...........................................................................................................................Yes [ ] No [X]

E. Do all the Applicant's labels include a disclaimer that the FDA has not evaluated the claims on its labels and that its products are not intended to diagnose, treat, cure or prevent any disease?................Yes [X] No [ ]

F. Do all the Applicant's labels include specific dosage directions and warnings?..................................Yes [X] No [ ]

## V. ADVERTISING

A. Is the Applicant's advertising fully compliant with all applicable FDA and FTC Regulations?.............Yes [X] No [ ]

B. Does the Applicant use outside legal counsel to review the Applicant's advertising and confirm it is in compliance with FDA and FTC Regulations? ....................................................................Yes [X] No [ ]

C. Has the FDA or FTC ever contacted the Applicant about the Applicant's advertising?........................Yes [ ] No [X]

   1. If Yes, please provide details: _____

## VI. LOSS HISTORY

A. Has any claim for Product or General Liability been made against any person(s) or organization(s) proposed for this insurance during the last five (5) years? ...............................................Yes [ ] No [X]

   1. If Yes, provide five (5) year hard copy, currently valued, carrier produced loss runs for all claims, including those against any predecessor.

   2. Attach a detailed description for any loss exceeding $10,000.

B. Is (are) any person(s) or organization(s) proposed for this insurance aware of any fact, incident, circumstance, situation, condition, defect or suspected defect which may result in a Product or General Liability claim such as would fall under the proposed insurance?............................................Yes [ ] No [X]

   1. If Yes, provide details: _____

## VII. INSURANCE INFORMATION

A. Requested Coverage*:

   1. Limits of Liability Requested: $ 2 M _____ / $ _____

   2. Deductible Requested: $ 10,000 _____

   *The Company does not guarantee to offer a quote nor does it guarantee requested limits or attachment.

B. Current Coverage:

   1. Current Carrier: N/A _____   2. Limits of Liability: N/A _____

   3. Deductible or SIR: N/A _____   4. Premium: N/A _____

MAGL 2053 05 16

Markel NutraPLUS Application

 5.  Expiration Date: ___N/A___           6.  Retroactive / Prior Acts Date(s): ___N/A___

 7.  Is the current carrier offering renewal?...................................................................Yes [ ] No [ ]

C.  Has any insurer declined, canceled, or nonrenewed any Product Liability Insurance or any similar insurance on behalf of any person(s) or organization(s) proposed for this insurance? ......................Yes [ ] No [X]

 1.  If Yes, provide details. _____

_____

## NOTICE TO THE APPLICANT – PLEASE READ CAREFULLY

No fact, incident, circumstance, situation, condition, defect or suspected defect indicating the probability of a claim or action for which coverage may be afforded by the proposed insurance is now known by any person(s) or organization(s) proposed for this insurance other than that which is disclosed in this application. It is agreed by all concerned that if there is knowledge of any such fact, incident, circumstance, situation, condition, defect or suspected defect any claim subsequently emanating therefrom shall be excluded from coverage under the proposed insurance.

This application, information submitted with this application and all previous applications related hereto and material changes to any of the foregoing of which the underwriting manager, Company and/or affiliates thereof receives notice is on file with the underwriting manager, Company and/or affiliates thereof and is considered physically attached to and part of the policy if issued. The underwriting manager, Company and/or affiliates thereof will have relied upon this application and all such attachments in issuing the policy.

For the purpose of this application, the undersigned authorized agent of the person(s) and organization(s) proposed for this insurance declares that to the best of his/her knowledge and belief, after reasonable inquiry, the statements in this application and in any attachments, are true and complete. The underwriting manager, Company and/or affiliates thereof are authorized to make any inquiry in connection with this application. Signing this application does not bind the Company to provide or the Applicant to purchase the insurance.

If the information in this application and any attachment materially changes between the date this application is signed and the effective date of the policy, the Applicant will promptly notify the underwriting manager, Company and/or affiliates thereof, who may modify or withdraw any outstanding quotation or agreement to bind coverage.

If the policy for which application is made is for claims made coverage, the undersigned declares that the person(s) and organization(s) proposed for this insurance understand that coverage for which this application is made applies:

(i)    Only to "claims" first made during the "policy period"; unless an extended reporting period is exercised. If an extended reporting period is exercised, the policy shall also apply to "claims" first made during the extended reporting period; and

(ii)   Unless amended by endorsement, the limits of liability contained in the policy shall be reduced, and may be completely exhausted by "claim expenses" and, in such event, the Company will not be liable for "claim expenses" or the amount of any judgment or settlement to the extent that such costs exceed the limits of liability in the policy and unless amended by endorsement, "claim expenses" shall be applied against the "deductible".

WARRANTY

I/We warrant to the Company, that I/We understand and accept the notice stated above and that the information contained herein is true and that it shall be the basis of the policy and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy. I/We authorize the release of claim information from any prior insurer to the underwriting manager, Company and/or affiliates thereof. The Applicant has a continuing duty to supplement, correct and update the information in this Application up to the time a binder is issued.

Note: This application is signed by undersigned authorized agent of the Applicant(s) on behalf of the Applicant(s) and its owners, principals, partners, directors, officers and employees.

Must be signed by the owner, principal, partner, executive officer or equivalent within 60 days of the proposed effective date.

_Rich Goiran on behalf of Vitamin Energy, LLC_          Title _Mnndg O_

Name of Applicant

_[signature]_                                        Date _7/19/18_

Signature of Applicant

---

**Notice to Applicants:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties.

---

# EXHIBIT C

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

International IP Holdings, LLC, et al.,

*Plaintiff,*

v.

Vitamin Energy, LLC,

*Defendant.*

Case No. 2:19–cv–11716–DPH–MKM
Hon. Denise Page Hood

## SUMMONS IN A CIVIL ACTION

To:  Vitamin Energy, LLC

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) - or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) - you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff s attorney, whose name and address are:

Marc Lorelli
1000 Town Center
22nd Floor
Southfield, MI
48075

If you fail to respond, judgment by default may be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*DAVID J. WEAVER, CLERK OF COURT*



By:  s/ S Krause
*Signature of Clerk or Deputy Clerk*

Date of Issuance:  June 10, 2019

Case ID: 190702037

AO 440 (Rev. 06/12) Summons in a Civil Action

## PROOF OF SERVICE

*(This section should not be filed with the Court unless required by Fed. R. Civ. P. 4(l))*

Case No. 2:19−cv−11716−DPH−MKM

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

[  ]  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

[  ]  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

[  ]  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on (date) _____ ; or

[  ]  I returned the summons unexecuted because _____ ; or

[  ]  Other: *(specify)*: _____

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under the penalty of perjury that this information is true.

Date: _____

_____
*Server's Signature*

_____
*Printed Name and Title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Case ID: 190702037

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **INTERNATIONAL IP HOLDINGS, LLC,** a Michigan limited liability company, **and INNOVATION VENTURES, LLC,** a Michigan limited liability company, | |
| | Case No. _____ |
| *Plaintiffs,* | |
| | ***INJUNCTIVE RELIEF REQUESTED*** |
| **v.** | |
| | ***JURY TRIAL DEMANDED*** |
| **VITAMIN ENERGY, LLC,** a Delaware limited liability company, | |
| *Defendant.* | |

## PLAINTIFFS INTERNATIONAL IP HOLDINGS, LLC AND INNOVATION VENTURES, LLC'S COMPLAINT



Case ID: 190702037

## I.   PARTIES

1.    Plaintiff International IP Holdings, LLC ("IIPH") is a Michigan limited liability company located in Bloomfield Hills, Michigan. IIPH is the owner of the intellectual property asserted against Defendant in this action.

2.    Plaintiff Innovation Ventures, LLC ("Innovation Ventures") (IIPH and Innovation Ventures collectively "Plaintiffs") is a Michigan limited liability company with its principal place of business in Farmington Hills, Michigan. Innovation Ventures is the exclusive licensee of the intellectual property rights asserted against Defendant in this action.

3.    Upon information and belief, Defendant Vitamin Energy, LLC ("VE" OR "Defendant") is a Delaware limited liability company, having its principle office in New York, New York.

## II.   JURISDICTION AND VENUE

4.    This Complaint includes the following claims under federal law: (1) trademark infringement under 15 U.S.C. § 1114, (2) false and misleading descriptions and designations of affiliation, connection, association, origin, sponsorship, and approval under 15 U.S.C. § 1125(a)(1)(A); (3) false advertising under § 1125(a)(1)(B); (4) common law trademark infringement, (5) indirect trademark infringement; and (6) dilution under 15 U.S.C. § 1125(c).



1

5.     This Complaint includes the following claim under Michigan law: unfair competition under MCL § 445.903.

6.     This Court has federal question subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 15 U.S.C. § 1121.

7.     This Court has supplementary subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as the claims are so related to the federal claims that they form part of the same case and controversy under Article III of the United States Constitution.

8.     This Court has specific personal jurisdiction over Defendant, because, as described more thoroughly herein, it purposefully availed itself to, and enjoys the benefits of, the laws of Michigan, it had sufficient minimum contacts with the State of Michigan and this District, this action arises out of these contacts, and exercising jurisdiction over Defendant would be reasonable and comport with the requirements of due process.

9.     Exercise of jurisdiction over Defendant is proper under MCL § 600.705 as it: (a) transacts business within Michigan, (b) has done and caused an act to be done and consequence to occur in Michigan in an action for tort; and (c) owns, uses, and possesses personal property within Michigan.

10.     Venue is proper under 28 U.S.C. § 1391.



2

## III. FACTS COMMON TO ALL COUNTS

### A. Asserted Intellectual Property

11. Plaintiffs own and possess full legal rights to enforce a family of trademarks (hereinafter "5-HOUR ENERGY Trademarks") that are used in connection with the marketing and sale of 5-HOUR ENERGY® branded products. Many of the 5-HOUR ENERGY Trademarks have received federal registration, including, but not limited to, the following registrations (copies of the Certificates of Registration are attached hereto as Exhibits A-F):

| Mark | Registration No. | Registration Date | Class of Goods |
|---|---|---|---|
| 5-HOUR ENERGY | 4,004,225 | Aug. 2, 2011 | (Class 5) Dietary supplements;<br><br>(Class 32) energy shots, namely, energy drinks |
| *5-hour ENERGY* | 4,104,670 | Feb. 28, 2012 | (Class 5) Dietary supplements;<br><br>(Class 32) Non-alcoholic drinks, namely, energy drinks |
| *5-hour ENERGY* | 4,134,079 | May 1, 2012 | (Class 5) Dietary supplements;<br><br>(Class 32) (Non-alcoholic drinks, namely, energy shots |
| *5-hour ENERGY* | 4,120,360 | Apr. 3, 2012 | (Class 5) Dietary supplements;<br><br>(Class 32) Non-alcoholic drinks, namely, energy shots |

3



| | | | |
|---|---|---|---|
| | 4,116,951 | Mar. 27, 2012 | (Class 5) Dietary supplements;<br><br>(Class 32) Non-alcoholic drinks, namely, energy shots |
| | 4,120,361 | Apr. 3, 2012 | (Class 5) Dietary supplements;<br><br>(Class 32) Non-alcoholic drinks, namely, energy shots |

12.   The foregoing trademark registrations are all current, in full force and effect, and related to trademarks that are inherently distinctive or have become distinctive through acquisition of secondary meaning. Additionally, the foregoing trademarks are famous marks as contemplated by 15 U.S.C. § 1125(c).

13.   As previously explained by the United States Circuit Court for the Sixth Circuit in *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 730 (6th Cir. 2012), 5-HOUR ENERGY® is a suggestive mark.

14.   The 5-HOUR ENERGY Trademarks are incontestable and conclusively valid.

15.   Plaintiffs use the 5-HOUR ENERGY Trademarks in connection with advertising, distribution, and sale of various products including, 5-HOUR ENERGY® branded dietary supplements that are commonly categorized as "liquid energy shots" ("5-HOUR ENERGY Products").



Case ID: 190702037

16. Plaintiffs have devoted significant time, effort, and resources to create consumer recognition by developing, advertising, and promoting their 5-HOUR ENERGY Products.

17. The 5-HOUR ENERGY Products are extensively and widely advertised through various media outlets, including network and cable television, radio, the internet, and traditional print. Since their introduction, the 5-HOUR ENERGY Products have received extensive news coverage by national, regional, and local print and broadcast media. Indeed, in 2009, Advertising Age Magazine recognized 5-HOUR ENERGY as one of *America's Hottest Brands*.

18. As a result of Plaintiffs' efforts, the 5-HOUR ENERGY Products have defined the liquid energy shot market and are known within the industry for being of the highest quality. As the best-known liquid energy shot on the market, 5-HOUR ENERGY Products are sold in over 100,000 locations throughout the United States. Moreover, since the first sale in 2004, billions of 5-HOUR ENERGY Products have been sold in the United States.

19. As a result of Plaintiffs' efforts, they have accumulated considerable goodwill in their distinctive and famous 5-HOUR ENERGY Trademarks.

20. As a result of continuous use, ubiquitous promotion, and extensive sales, Plaintiffs' 5-HOUR ENERGY Trademarks enjoy substantial recognition, fame, and



5

notoriety throughout the United States and are recognized by the general and consuming public as emanating from Plaintiffs.

21.   Plaintiffs have consistently used their registered Trademarks in conjunction with the letter R enclosed by a circle and/or other indicia sufficient to provide notice of registration.

22.   Examples of Plaintiffs' 5-HOUR ENERGY Products are shown below:



## B.   Defendant's Infringing Products and Activities

23.   Defendant markets, manufactures, distributes, offers for sale, sells, advertises, and promotes liquid energy shots and in commerce ("Defendant's Products").

24.   In connection with Defendant's Products, Defendant uses words, terms, names, symbols, devices, and/or combinations, including 7 HOURS of ENERGY, that infringe upon and are confusingly similar to Plaintiffs' 5-HOUR ENERGY Trademarks.

6



25.     On information and belief, Defendant has also induced others to market, manufacture, distribute, offer for sale, sell, advertise, and promote liquid energy shots in commerce in connection with products and/or containers thereof that infringe upon and are confusingly similar to Plaintiffs' 5-HOUR ENERGY Trademarks.

26.     Defendant's activities constitute false designation of origin, false or misleading description of fact, and/or false or misleading representations of fact.

27.     In a number of cases, courts and juries have consistently found that similar marks infringed Plaintiffs' Trademarks: (1) "6 HOUR ENERGY" and "up to 7 HOURS of ENERGY," *Innovation Ventures, LLC v. N2G Distrib.*, Case No. 08-CV-10983 (E.D. Mich.); and (2) "6 HOUR POWER", *Innovation Ventures, LLC v. N.V.E., Inc.*, Case No. 08-11867 (E.D. Mich.).

28.     Examples of Defendant's infringing and misleading uses of confusingly similar marks are shown below:





7



29.   On information and belief, Defendant are aware of Plaintiffs' 5-HOUR ENERGY Products and Trademarks.

30.   On information and belief, Defendant engaged in its infringing and misleading activities with actual knowledge and notice of Plaintiffs' 5-HOUR ENERGY Trademarks with the willful intent to cause confusion, cause mistake, and to deceive the public, consumers, and businesses as to the affiliation, connection, or association between Defendant's Products and Plaintiffs.

31.   Defendant does not have, and never had, consent, license, approval or other authorization to use Plaintiffs' 5-HOUR ENERGY Trademarks in any manner.

32.   Defendant also advertises its product with a series of misleading and false statements, including false and misleading comparative advertising and claims that Defendant's products provide steroid-like athletic performance enhancement. Examples are shown below:



8

# PERFORM+
**Energy On Call**

Many factors influence performance. **VitaminEnergy®** contains performance-enhancing supplements like Vitamin B12 that help in the production of red blood cells, caffeine to provide energy and CBD as an anti-inflammatory. The synergy provided by these nutrients allow VitaminEnergy® to deliver improved performance without the use of harmful steroids or steroid-like compounds.

**SHOP**



**FORMULATED FOR ATHLETES**

The synergy provided by these nutrients allow **VitaminEnergy®** to deliver improved performance without the use of harmful steroids or steroid-like compounds.

## Professional Athletes

VitaminEnergy® was originally designed as the energy shot of choice for professional athletes. If you compete at the highest levels in sports, VitaminEnergy® gives you a healthier, better for you shot of energy to maximize your performance.





## IV.  CLAIMS FOR RELIEF

### A.  Count I: Trademark Infringement under 15 U.S.C. § 1114

33.    Plaintiffs repeat and re-allege the allegations of paragraphs 1–32 as if fully set forth herein.

34.    Plaintiffs own and possess full legal right to enforce the 5-HOUR ENERGY trademark with U.S. Registration No. 4,004,225, which is valid, registered, and uncontestable.

35.    Defendant's infringing activities, including those described herein, constitute willful infringement of Plaintiffs' exclusive rights in the 5-HOUR ENERGY trademark with U.S. Registration No. 4,004,225 in violation of federal trademark laws, including 15 U.S.C. § 1114.

36.    As willfully intended, Defendant's use of copies, reproductions, and colorable imitations of the 5-HOUR ENERGY trademark with U.S. Registration No. 4,004,225 is likely to cause, has caused, and continues to cause confusion, mistake, and deception concerning the source, sponsorship, or approval of Defendant's goods and services.

37.    Defendant's infringing activities will continue unless restrained and enjoined.

38.    Defendant's infringing activities have directly and proximately caused and continue to cause irreparable and economic injury to Plaintiffs, including loss of good



10

will, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

39.     Plaintiffs are entitled to compensatory damages, including expectation and consequential, non-pecuniary damages, pecuniary damages, exemplary damages, aggravated damages, restitutionary damages, nominal damages, Defendant's profits, and Plaintiffs' lost profits.

40.     Monetary damages and other remedies at law are insufficient to fully compensate Plaintiffs for their injuries, and Plaintiffs are entitled to equitable relief, including preliminary and permanent injunctive relief.

41.     Plaintiffs are entitled to have all of Defendant's infringing products and all related materials likely to cause confusion, mistake, and/or deception delivered up and destroyed.

## B.    Count II: False and Misleading Descriptions and Designations of Affiliation, Connection, Association, Source, Sponsorship, and Approval under 15 U.S.C. § 1125(a)(1)(A)

42.     Plaintiffs repeat and re-allege the allegations of paragraphs 1–41 as if fully set forth herein.

43.     As willfully intended, Defendant's false, misleading, confusing, and deceptive activities, including those described herein, constitute misleading descriptions that are likely to cause, have caused, and continue to cause confusion, mistake, and



11

deception as to the affiliation, connection, association, source, sponsorship, and approval of Defendant's goods or commercial activities.

44. Defendant's false, misleading, confusing, and deceptive activities will likely continue unless restrained and enjoined.

45. Defendant's false, misleading, confusing, and deceptive activities have directly and proximately caused and continue to cause irreparable and economic injury to Plaintiffs, including loss of good will, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

46. Plaintiffs are entitled to compensatory damages, including expectation and consequential, non-pecuniary damages, pecuniary damages, exemplary damages, aggravated damages, restitutionary damages, nominal damages, Defendant's profits, and Plaintiffs' lost profits.

47. Monetary damages and other remedies at law are insufficient to fully compensate Plaintiffs for their injuries, and Plaintiffs are entitled to equitable relief, including preliminary and permanent injunctive relief.

48. Plaintiffs are entitled to have Defendant's infringing products and all related false, misleading, confusing, and/or deceptive materials delivered up and destroyed.



## C.   Count III: False Advertising under 15 U.S.C. § 1125(a)(1)(B)

49.   Plaintiffs repeat and re-allege the allegations of paragraphs 1–48 as if fully set forth herein.

50.   As willfully intended, Defendant's false and misleading commercial advertising, including that which is described herein, misrepresents the nature, characteristics, and qualities of Defendant's Products and commercial activities.

51.   Defendant's false and misleading commercial advertising will likely continue unless restrained and enjoined.

52.   Defendant's false and misleading commercial advertising have directly and proximately caused and continue to cause irreparable and economic injury to Plaintiffs, including loss of good will, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

53.   Plaintiffs are entitled to compensatory damages, including expectation and consequential, non-pecuniary damages, pecuniary damages, exemplary damages, aggravated damages, restitutionary damages, nominal damages, Defendant's profits, and Plaintiffs' lost profits.

54.   Monetary damages and other remedies at law are insufficient to fully compensate Plaintiffs for their injuries, and Plaintiffs are entitled to equitable relief, including preliminary and permanent injunctive relief.



13

55.    Plaintiffs are entitled to have Defendant's false and misleading commercial advertising delivered up and destroyed.

### D.   Count IV: Common Law Trademark Infringement

56.    Plaintiffs repeat and re-allege the allegations of paragraphs 1–55 as if fully set forth herein.

57.    Plaintiffs were the first to use their 5-HOUR ENERGY Trademarks on a 2-ounce liquid shot product in commerce.

58.    Plaintiffs have continuously used their Trademarks in commerce since their respective first uses.

59.    As a result of continuous and notorious use, Plaintiffs' Trademarks have become widely known and recognized by the public mind as a source identifier of Plaintiffs' products, have acquired immense good will, and are strongly associated with a reputation for quality and performance.

60.    As willfully intended, Defendant's use of copies, reproductions, and colorable imitations of the 5-HOUR ENERGY Trademarks are likely to cause, have caused, and continue to cause confusion, mistake, and deception concerning the source, sponsorship, and approval of Defendant's products and services.

61.    Defendant's infringing activities will likely continue unless restrained and enjoined.



14

62.   Defendant's infringing activities have directly and proximately caused and continue to cause irreparable and economic injury to Plaintiffs, including loss of good will, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

63.   Plaintiffs are entitled to compensatory damages, including expectation and consequential, non-pecuniary damages, pecuniary damages, exemplary damages, aggravated damages, restitutionary damages, nominal damages, Defendant's profits, and Plaintiffs' lost profits.

64.   Monetary damages and other remedies at law are insufficient to fully compensate Plaintiffs for their injuries, and Plaintiffs are entitled to equitable relief, including preliminary and permanent injunctive relief.

65.   Plaintiffs are entitled to have Defendant's infringing products and all related materials likely to cause confusion, mistake, and/or deception delivered up and destroyed.

### E.   Count V: Indirect Trademark Infringement

66.   Plaintiffs repeat and re-allege the allegations of paragraphs 1–65 as if fully set forth herein.

67.   Defendant has induced others to use, contributed to others' use of, and directed others under Defendant's control to use words, terms, names, symbols, devices, and/or combinations thereof in connection with goods and containers for goods in



Case ID: 190702037

commerce that are likely to cause, have caused, and continue to cause confusion, mistake, and deception as to the affiliation, connection, association, source, sponsorship, and approval of Defendant's goods and commercial activities.

68.     As willfully intended, Defendant's actions sufficiently and necessarily caused and continuing to cause others to directly infringe Plaintiffs' 5-HOUR ENERGY Trademarks.

69.     Defendant's indirect infringement is likely to continue unless restrained and enjoined.

70.     Defendant's indirect infringement has directly and proximately caused and continues to cause irreparable injury and economic injury to Plaintiffs, including loss of good will, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

71.     Plaintiffs are entitled to compensatory damages, including expectation and consequential, non-pecuniary damages, pecuniary damages, exemplary damages, aggravated damages, restitutionary damages, nominal damages, Defendant's profits, and Plaintiffs' lost profits.

72.     Monetary damages and other remedies at law are insufficient to fully compensate Plaintiffs for their injuries, and Plaintiffs are entitled to equitable relief, including preliminary and permanent injunctive relief.



16

73.   Plaintiffs are entitled to have Defendant's infringing products and all related materials likely to cause confusion, mistake, and/or deception delivered up and destroyed.

**F.   Count VI: Dilution under 15 U.S.C. § 1125(c)**

74.   Plaintiffs repeat and re-allege the allegations of paragraphs 1–73 as if fully set forth herein.

75.   As willfully intended, Defendant's activities are likely to dilute, have diluted, and continue to dilute Plaintiffs' 5-HOUR ENERGY Trademarks by "blurring", as Defendant's activities are likely to cause, have caused, and continue to cause an association arising from the similarity between Defendant's Products and marks with Plaintiffs' 5-HOUR ENERGY Products and Trademarks, which impairs the 5-HOUR ENERGY Trademarks' distinctiveness and notoriety.

76.   As willfully intended, Defendant's activities are likely to dilute, have diluted, and continue to dilute Plaintiffs' 5-HOUR ENERGY Trademarks by "tarnishment", as Defendant activities are likely to cause, have caused, and are causing an association between Defendant's Products and Plaintiffs' 5-HOUR ENERGY Trademarks, which harms and tarnishes the 5-HOUR ENERGY Trademarks, including the 5-HOUR ENERGY trademark with U.S. Registration No. 4,004,225.

77.   Defendant's dilutive activities will likely continue unless restrained and enjoined.



17

78.   Defendant's dilutive activities directly and proximately caused and continue to cause irreparable and economic injury to Plaintiffs, including loss of good will, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

79.   Plaintiffs are entitled to compensatory damages, including expectation and consequential, non-pecuniary damages, pecuniary damages, exemplary damages, aggravated damages, restitutionary damages, nominal damages, Defendant's profits, and Plaintiffs' lost profits.

80.   Monetary damages and other remedies at law are insufficient to fully compensate Plaintiffs for their injuries, and Plaintiffs are entitled to equitable relief, including preliminary and permanent injunctive relief. Nevertheless, Plaintiff is entitled to an injunction under 15 U.S.C. § 1125(c)(5).

81.   Plaintiffs are entitled to have Defendant's infringing products and all related materials likely to cause confusion, mistake, and/or deception delivered up and destroyed.

### G.   Count VII: Unfair Competition under MCL § 445.903

82.   Plaintiffs repeat and re-allege the allegations of paragraphs 1–81 as if fully set forth herein.

83.   As willfully intended, Defendant has engaged in unfair, unconscionable, and deceptive acts and practices, including those described herein, in the conduct of trade



18

Case ID: 190702037

and commerce that have a probability of confusion and misunderstanding as to the source, sponsorship, approval, and certification of Defendant's Products.

84. Defendant's unfair, unconscionable, and deceptive acts will continue unless restrained and enjoined.

85. Plaintiffs are entitled to compensatory damages, including expectation and consequential, non-pecuniary damages, pecuniary damages, exemplary damages, aggravated damages, restitutionary damages, nominal damages, Defendant's profits, and Plaintiffs' lost profits.

86. Defendant's unfair, unconscionable, and deceptive acts have directly and proximately caused and continue to cause irreparable injury and economic injury to Plaintiffs, including loss of good will, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

87. Monetary damages and/or other remedies at law are insufficient to fully compensate Plaintiffs for their injuries, and Plaintiffs are entitled to equitable relief, including preliminary and permanent injunctive relief.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for judgment against Defendant as follows:

A. A determination that Defendant has infringed Plaintiffs' 5-HOUR ENERGY trademark with U.S. Registration No. 4,004,225 in violation of 15 U.S.C. §



Case ID: 190702037

1114, Defendant's infringement was willful, Plaintiffs have been damaged by infringement, and Defendant are liable to Plaintiffs for such infringement;

B.    A determination that Defendant has violated 15 U.S.C. § 1125(a)(1)(A), Defendant's violation was willful, Plaintiffs have been damaged by such violation, and Defendant is liable to Plaintiffs for such violation;

C.    A determination that Defendant has violated 15 U.S.C. § 1125(a)(1)(B), Defendant's violation was willful, Plaintiffs have been damaged by such violation, and Defendant is liable to Plaintiffs for such violation;

D.    A determination that Defendant has infringed Plaintiffs' 5-HOUR ENERGY Trademarks under common law, Defendant's infringement was willful, Plaintiffs have been damaged by such violation, and Defendant is liable to Plaintiffs for such infringement;

E.    A determination that Defendant has indirectly infringed Plaintiffs' Trademarks by inducing others to infringe, contributing to others' infringement of, and directing others under its control to infringe Plaintiffs' 5-HOUR ENERGY Trademarks, Defendant's indirect infringement was willful, Plaintiffs have been damaged, and Defendant is liable to Plaintiffs for such indirect infringement;

F.    A determination that Defendant has violated 15 U.S.C. § 1125(c), Defendant's violation was willful, Plaintiffs have been damaged by such violation, and Defendant is liable to Plaintiffs for such violation;



20

G.    A determination that Defendant violated MCL § 445.903, Defendant's violation was willful, Plaintiffs have been damages by such violation, and Defendant is liable to Plaintiffs for such violation;

H.    An award of damages sufficient to compensate Plaintiffs for its injuries or, alternatively, an award equal to Defendant's wrongfully obtained profits, whichever is greater;

I.    An award trebling damages or, alternatively, trebling Defendant's wrongfully obtained profits, whichever is greater, plus Plaintiffs' attorneys' fees and costs, pursuant to 15 U.S.C. § 1117;

J.    A declaration that this case is an exceptional case and an award of attorneys' fees;

K.    An award of Plaintiffs' taxable costs of this civil action, including interest;

L.    An award of any additional costs and disbursements incurred as a result of bringing this action;

M.    Under all claims for relief, a preliminary and permanent injunction that enjoins Defendant, its officers, employees, agents, successors and assignees, and all those in active concert and participation with them, and each of them who receives notice directly or otherwise of such injunctions, from:



1.      using, inducing others to use, contributing to others' use of, or directing others to use any simulation, copy, reproduction, or colorable imitation of the 5-HOUR ENERGY Trademarks, including 7-HOUR ENERGY and 7 HOURS of ENERGY, in connection with liquid energy shots without Plaintiffs' express authorization;

2.      importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting, or displaying any product or services using any simulation, copy, reproduction, or colorable imitation of the 5-HOUR ENERGY Trademarks, or inducing others to, contributing to others' doing, or directing others to do the same, without Plaintiffs' express authorization; and

3.      using, inducing others to use, contributing to others' use of, or directing others to use any false designation of origin or false description (including, without limitation, any letters, symbols, or designs infringing or encroaching upon Plaintiffs' Trademarks) or performing any act, which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed or sold by Defendant are in any manner associated with Plaintiffs or Plaintiffs' 5-HOUR ENERGY Trademarks, or any other product sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs.

N.      Defendant be ordered to:



22

1.      file with the Court and serve upon the Plaintiffs, within thirty (30) days after the service of the injunction upon Defendant, a report in writing under oath setting forth in detail the manner and form in which the Defendant has complied with the injunction and judgment entered pursuant to this Complaint;

2.      deliver for destruction all products, labels, tags, signs, prints, packages, videos, advertisements, in its possession or under its control, bearing or using 6-HOUR ENERGY and 6-HR ENERGY or any other simulation, reproduction, or colorable imitation of Plaintiffs' marks, and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118; .

3.      file with the Court and provide to Plaintiffs an accounting of all sales and profits realized by Defendant for liquid shot products; and

4.      permit Plaintiffs, and/or auditors employed or contracted by Plaintiffs, to audit and inspect the books, records, and premises of Defendant and related entities for a period of six (6) months after entry of final relief in this matter, to determine the scope of Defendant's past use of Plaintiffs' intellectual property.

O.      Any such other, further, and additional relief that may be considered just and equitable based on the facts and allegations contained herein or appropriate to prevent the trade and public from deriving the erroneous impression that any service or product manufactured, sold or otherwise circulated or promoted by Defendant is



23

manufactured, distributed, authorized, sponsored, approved, or associated with Plaintiffs or Plaintiffs' Marks.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a jury trial on all issues triable by a jury.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

Dated:  June 10, 2019

  /s/ Marc Lorelli
MARC LORELLI (P63156)
ALAN J. GOCHA (P80972)
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Telephone: (248) 358-4400
Facsimile: (248) 358-3351
Email:  agocha@brookskushman.com

*Attorneys for Plaintiffs*



24

# EXHIBIT A

Case ID: 190702037

# United States of America

## United States Patent and Trademark Office

## 5-HOUR ENERGY

**Reg. No. 4,004,225**

**Registered Aug. 2, 2011**

**Int. Cls.: 5 and 32**

**TRADEMARK**

**PRINCIPAL REGISTER**

INNOVATION VENTURES, LLC (MICHIGAN LIMITED LIABILITY COMPANY)
38955 HILLS TECH DRIVE
FARMINGTON HILLS, MI 48331

FOR: DIETARY SUPPLEMENTS, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 9-0-2004; IN COMMERCE 9-0-2004.

FOR: ENERGY SHOTS, NAMELY, ENERGY DRINKS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 9-0-2004; IN COMMERCE 9-0-2004.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

SEC. 2(F).

SER. NO. 77-522,602, FILED 7-15-2008.

VERNA BETH RIRIE, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

Case ID: 190702037

---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:** Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at http://www.uspto.gov.

Page: 2 / RN # 4,004,225

Case ID: 190702037

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

**MAY 03 2019**

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )
— MANDATORY ELECTRONIC FILING )
FOR CIVIL )
)
)
)

FIRST AMENDED GENERAL ORDER

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

   a) **"Bookmark"** A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"** The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"** A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"** Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

2019-GEN-014-00

e) **"Electronic Filing Service Provider"**  An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**  For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**  An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**  A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

2

2019-GEN-014-00

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) **EXEMPT LITIGANTS**

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) **EXEMPT FILINGS**

a) The following documents shall not be filed electronically:

   i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

   ii) Bonds/Undertaking documents;

   iii) Trial and Evidentiary Hearing Exhibits

   iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

   v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

3

5)  ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6)  TECHNICAL REQUIREMENTS

a)  Electronic documents must be electronically filed in PDF, text searchable format when technologically feasible without impairment of the document's image.

b)  The table of contents for any filing must be bookmarked.

c)  Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4).  Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d)  Attachments to primary documents must be bookmarked.  Examples include, but are not limited to, the following:

    i)  Depositions;

    ii)  Declarations;

    iii)  Exhibits (including exhibits to declarations);

    iv)  Transcripts (including excerpts within transcripts);

    v)  Points and Authorities;

    vi)  Citations; and

    vii)  Supporting Briefs.

e)  Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f)  Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

g)  Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

2019-GEN-014-00

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted. (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

2019-GEN-014-00

1    b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the

2    day of the ex parte hearing.  A printed courtesy copy of any opposition to an ex parte

3    application must be provided to the court the day of the ex parte hearing.

4  9) PRINTED COURTESY COPIES

5    a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must

6    be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled.  If

7    the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom

8    by 10:00 a.m. the next business day.

9    b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of

10    electronic submission) is required for the following documents:

11      i)   Any printed document required pursuant to a Standing or General Order;

12      ii)  Pleadings and motions (including attachments such as declarations and exhibits) of 26

13          pages or more;

14      iii)  Pleadings and motions that include points and authorities;

15      iv)  Demurrers;

16      v)   Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

17      vi)  Motions for Summary Judgment/Adjudication; and

18      vii)  Motions to Compel Further Discovery.

19    c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of

20    additional documents.  Courtroom specific courtesy copy guidelines can be found at

21    www.lacourt.org on the Civil webpage under "Courtroom Information."

22  10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

23    a) Fees and costs associated with electronic filing must be waived for any litigant who has

24    received a fee waiver.  (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. §

25    1010.6(d)(2).)

26    b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure

27    section 1010.6, subdivision (b)(6), and  California Rules of Court, rule 2.252(f), may be

28    electronically filed in any authorized action or proceeding.

2019-GEN-014-00

1  11) SIGNATURES ON ELECTRONIC FILING

2      For purposes of this General Order, all electronic filings must be in compliance with California

3      Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil

4      Division of the Los Angeles County Superior Court.

5

6      This First Amended General Order supersedes any previous order related to electronic filing,

7  and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8  Supervising Judge and/or Presiding Judge.

9

10  DATED:  May 3, 2019

KEVIN C. BRAZILE
Presiding Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties.  The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application.  These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:   FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
    (INSERT DATE)                                    (INSERT DATE)
    complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____          ➤ _____
    (TYPE OR PRINT NAME)                         (ATTORNEY FOR PLAINTIFF)
Date:

_____          ➤ _____
    (TYPE OR PRINT NAME)                         (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤ _____
    (TYPE OR PRINT NAME)                         (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤ _____
    (TYPE OR PRINT NAME)                         (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤ _____
    (TYPE OR PRINT NAME)                         (ATTORNEY FOR _____ )
Date:

_____          ➤ _____
    (TYPE OR PRINT NAME)                         (ATTORNEY FOR _____ )
Date:

_____          ➤ _____
    (TYPE OR PRINT NAME)                         (ATTORNEY FOR _____ )

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:       FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE. | CASE NUMBER: |
|---|---|
| | |

    iii.    Be filed within two (2) court days of receipt of the Request; and

    iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ (ATTORNEY FOR _____ )

➢ (ATTORNEY FOR _____ )

➢ (ATTORNEY FOR _____ )

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| **TELEPHONE NO.:**  **FAX NO. (Optional):**  **E-MAIL ADDRESS (Optional):**  **ATTORNEY FOR (Name):** | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**  (pursuant to the Discovery Resolution Stipulation of the parties) | **CASE NUMBER:** |
|---|---|

1. **This document relates to:**
   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. **Deadline for Court to decide on Request:** _____ (insert date 10 calendar days following filing of the Request).

3. **Deadline for Court to hold Informal Discovery Conference:** _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| | | Reserved for Clerk's File Stamp |
|---|---|---|
| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | |

TELEPHONE NO.:
FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____ )

➤ _____
(ATTORNEY FOR _____ )

➤ _____
(ATTORNEY FOR _____ )

## THE COURT SO ORDERS.

Date:   _____

_____
JUDICIAL OFFICER

**FILED**

LOS ANGELES SUPERIOR COURT

MAY 1 1 2011

JOHN A. CLARKE, CLERK

BY NANCY NAVARRO, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| General Order Re<br>Use of Voluntary Efficient Litigation<br>Stipulations | ORDER PURSUANT TO CCP 1054(a),<br>EXTENDING TIME TO RESPOND BY<br>30 DAYS WHEN PARTIES AGREE<br>TO EARLY ORGANIZATIONAL<br>MEETING STIPULATION |

Whereas the Los Angeles Superior Court and the Executive Committee of the

Litigation Section of the Los Angeles County Bar Association have cooperated in

drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for

use in general jurisdiction civil litigation in Los Angeles County;

Whereas the Los Angeles County Bar Association Litigation Section; the Los

Angeles County Bar Association Labor and Employment Law Section; the Consumer

Attorneys Association of Los Angeles; the Association of Southern California Defense

Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California

Employment Lawyers Association all "endorse the goal of promoting efficiency in

litigation, and ask that counsel consider using these stipulations as a voluntary way to

promote communications and procedures among counsel and with the court to fairly

resolve issues in their cases;"

-1-

ORDER PURSUANT TO CCP 1054(a)

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation. This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

-2-

ORDER PURSUANT TO CCP 1054(a)

by Code of Civil Procedure section 1054(a) without further need of a specific court order.

DATED: *May 11, 2011*

_____
Carolyn B. Kuhl, Supervising Judge of the
Civil Departments, Los Angeles Superior Court

-3-

ORDER PURSUANT TO CCP 1054(a)



## Superior Court of California, County of Los Angeles

---

# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control (with the parties):** Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR
1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may <u>not</u> be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

---

## How to Arrange Mediation in Los Angeles County

Mediation for **civil cases** is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com (949) 863-9800
   - **JAMS, Inc.** Assistant Manager Reggie Joseph, RJoseph@jamsadr.com (310) 309-6209
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs**
   https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

   Day of trial mediation programs have been paused until further notice.

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

# Superior Court of California
# County of Los Angeles



# ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKET

The person who files a civil lawsuit (plaintiff) must include the ADR information Packet with the complaint when serving the defendant. Cross-complainants must serve the ADR Information Packet on any new parties named to the action together with the cross-complaint.

There are a number of ways to resolve civil disputes without having to sue someone. These alternatives to a lawsuit are known as alternative dispute resolution (ADR).

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediations, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help resolve disputes without having to go to court.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

**Advantages of ADR**
- Often faster than going to trial
- Often less expensive, saving the litigants court costs, attorney's fees and expert fees.
- May permit more participation, allowing parties to have more control over the outcome.
- Allows for flexibility in choice of ADR processes and resolution of the dispute.
- Fosters cooperation by allowing parties to work together with the neutral to resolve the dispute and mutually agree to remedy.
- There are fewer, if any, court appearances. Because ADR can be faster and save money, it can reduce stress.

**Disadvantages of ADR** - ADR may not be suitable for every dispute.
- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.
- ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.
- The neutral may charge a fee for his or her services.
- If the dispute is not resolved through ADR, the parties may then have to face the usual and traditional costs of trial, such as attorney's fees and expert fees.

**The Most Common Types of ADR**

- **Mediation**

  In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the parties, rather than the mediator, decide how the dispute is to be resolved.

  - **Mediation is particularly effective** when the parties have a continuing relationship, like neighbors or business people. Mediation is also very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to express their feelings and find out how the other sees things.

  - **Mediation may not be effective** when one party is unwilling to cooperate or compromise or when one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

- **Arbitration**

  In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is typically less formal than a trial, and the rules of evidence may be relaxed. Arbitration may be either "binding" or "non-binding." Binding arbitration means the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Non-binding arbitration means that the parties are free to request a trial if they reject the arbitrator's decision.

  Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

- **Mandatory Settlement Conference (MSC)**

  **Settlement Conferences are appropriate in any case where settlement is an option.** Mandatory Settlement Conferences are ordered by the Court and are often held near the date a case is set for trial. The parties and their attorneys meet with a judge who devotes his or her time exclusively to preside over the MSC. The judge does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.

  The Los Angeles Superior Court Mandatory Settlement Conference (MSC) program is free of charge and staffed by experienced sitting civil judges who devote their time exclusively to presiding over MSCs. The judges participating in the judicial MSC program and their locations are identified in the List of Settlement Officers found on the Los Angeles Superior Court website at http://www.lacourt.org/. This program is available in general jurisdiction cases with represented parties from independent calendar (IC) and Central Civil West (CCW) courtrooms. In addition, on an ad hoc basis, personal injury cases may be referred to the program on the eve of trial by the personal injury master calendar courts in the Stanley Mosk Courthouse or the asbestos calendar court in CCW.

  In order to access the Los Angeles Superior Court MSC Program the judge in the IC courtroom, the CCW Courtroom or the personal injury master calendar courtroom must refer the parties to the program. Further, all parties must complete the information requested in the Settlement Conference Intake Form and email the completed form to mscdept18@lacourt.org.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

## Additional Information

To locate a dispute resolution program or neutral in your community:

- Contact the California Department of Consumer Affairs (www.dca.ca.gov) Consumer Information Center toll free at 800-952-5210, or;
- Contact the local bar association (http://www.lacba.org/) or;
- Look in a telephone directory or search online for "mediators; or "arbitrators."

There may be a charge for services provided by private arbitrators and mediators.

A list of approved State Bar Approved Mandatory Fee Arbitration programs is available at http://calbar.ca.gov/Attorneys/MemberServices/FeeArbitration/ApprovedPrograms.aspx#19

To request information about, or assistance with, dispute resolution, call the number listed below. Or you may call a Contract Provider agency directly. A list of current Contract Provider agencies in Los Angeles County is available at the link below.

http://css.lacounty.gov/programs/dispute-resolution-program-drp/

County of Los Angeles Dispute Resolution Program
3175 West 6th Street, Room 406
Los Angeles, CA 90020-1798
TEL: (213) 738-2621
FAX: (213) 386-3995

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

POS-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
Reid A. Winthrop, Esq. | SBN: 223527
WINTHROP LAW GROUP
1120 Newport Center Drive | Newport Beach, CA 92660

Electronically Received by Superior Court of California, County of Los Angeles on 01/24/2022 04:33 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Abraham,Deputy Clerk

TELEPHONE NO.: (949) 269-3256 | FAX NO. (949) 209-1919 | E-MAIL ADDRESS
ATTORNEY FOR *(Name)*: Plaintiff: Vitamin Energy, Inc.

FOR COURT USE ONLY

**LOS ANGELES COUNTY SUPERIOR COURT**
STREET ADDRESS: 111 N. HILL STREET
CITY AND ZIP CODE: LOS ANGELES, CA 90012-3117
BRANCH NAME: STANLEY MOSK

PLAINTIFF/PETITIONER: Vitamin Energy, Inc., a Delaware corporation
DEFENDANT/RESPONDENT: Bolton & Company, a California licensed insurance agency, et al.

CASE NUMBER:
22STCV00036

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>Vitamin Energy v. Bolton & Company |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☐ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☑ other *(specify documents)*: **Complaint for Damages; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Management Conference; Notice of Case Assignment - Unlimited Civil Case; Notice of Errata RE Complaint for Damages; First Amended General Order; Voluntary Efficient Litigation Stipulations; Order Pursuant to CCP 1054(a), Extending Time to Respond by 30 Days When Parties Agree to Early Organizational Meeting Stipulation**

3. a. Party served *(specify name of party as shown on documents served)*:
   **Bolton & Company, a California licensed insurance agency**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   **Corporation Service Company, Registered Agent - By serving Sheena Black, Intake Specialist**
   **Age: 25 | Weight: 125 | Hair: Brown | Sex: Female | Height: 5'3" | Eyes: | Race: Caucasian**

4. Address where the party was served: **1201 Hays St**
   **Tallahassee, FL 32301-2699**

5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: **1/12/2022** (2) at *(time)*: **10:24 AM**

   b. ☐ **by substituted service.** On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b)*:

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date)*: from *(city)*: **or** ☑ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

POS010-1/OC81966

PETITIONER: Vitamin Energy, Inc., a Delaware corporation

RESPONDENT: Bolton & Company, a California licensed insurance agency, et al.

CASE NUMBER:
**22STCV00036**

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date):*                                   *(2) from (city):*

   (3) ☐ with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

     ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☑ On behalf of **Bolton & Company, a California licensed insurance agency**
      under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☑ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
  a. Name: **Kathleen Conway - Nationwide Legal, LLC REG: 12-234648**
  b. Address: **901 W. Civic Center Drive, Suite# 190  Santa Ana, CA 92703**
  c. Telephone number: **(714) 558-2400**
  d. **The fee** for service was: **$ 392.15**
  e. I am:
    (1) ☑ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ registered California process server:
      (i) ☐ owner    ☐ employee    ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **1/18/2022**

**N**ationwide Legal, LLC
**901 W. Civic Center Drive, Suite# 190**
**Santa Ana, CA 92703**
**(714) 558-2400**
**www.nationwideasap.com**

_____
**Kathleen Conway**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE)

POS-010 [Rev January 1, 2007]           **PROOF OF SERVICE OF SUMMONS**

Page 2 of 2
**POS-010/OC81966**

FOR COURT USE ONLY

Attorney or Party without Attorney:
Reid A. Winthrop, Esq., SBN: 223527
WINTHROP LAW GROUP
120 Newport Center Drive
Newport Beach, CA 92260
*TELEPHONE No.:* (949) 269-3256     *FAX No. (Optional)* (949) 209-1919
*E-MAIL ADDRESS (Optional):*

*Attorney for:* Plaintiff Vitamin Energy, Inc.

*Ref No. or File No.:*
Vitamin Energy v. Bolton & Company

*Insert name of Court, and Judicial District and Branch Court:*
LOS ANGELES COUNTY SUPERIOR COURT - STANLEY MOSK

*Petitioner:* Vitamin Energy, Inc., a Delaware corporation

*Respondent:* Bolton & Company, a California licensed insurance agency, et al.

| **PROOF OF SERVICE BY MAIL** | HEARING DATE: | TIME: | DEPT.: | CASE NUMBER: 22STCV00036 |
|---|---|---|---|---|

1. I am over the age of 18 and not a party to this action. I am employed in the county where the mailing occured.

2. I served copies of the Summons; Alternative Dispute (ADR) package; Civil Case Cover Sheet; Complaint for Damages; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Management Conference; Notice of Case Assignment - Unlimited Civil Case; Notice of Errata RE Complaint for Damages; First Amended General Order; Voluntary Efficient Litigation Stipulations; Order Pursuant to CCP 1054(a), Extending Time to Respond by 30 Days When Parties Agree to Early Organizational Meeting Stipulation;

3. By placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Santa Ana, California, addressed as follows:

    a. Date of Mailing:           January 12, 2022
    b. Place of Mailing:         Santa Ana, CA
    c. Addressed as follows:   Bolton & Company, a California licensed insurance agency
                           ATTENTION: Corporation Service Company, Registered Agent
                           1201 Hays St
                           Tallahassee, FL 32301-2699

I am readily familiar with the firm's practice for collection and processing of documents for mailing. Under that practice, it would be deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid at Santa Ana, California in the ordinary course of business.

Fee for Service: **$ 392.15**
    **Nationwide Legal, LLC REG: 12-234648**
    **901 W. Civic Center Drive, Suite# 190**
    **Santa Ana, CA 92703**
    **(714) 558-2400**
    **www.nationwideasap.com**

I declare under penalty of perjury under the laws of the The State of California that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on **January 18, 2022**.

Signature:_____

                **Evy Rodriguez**

## PROOF OF SERVICE BY MAIL

Order#: OC81966/mailproof

POS-010

Electronically FILED by Superior Court of California, County of Los Angeles on 01/24/2022 04:33 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Abraham,Deputy Clerk

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Reid A. Winthrop, Esq. | SBN: 223527
WINTHROP LAW GROUP
120 Newport Center Drive , Newport Beach, CA 92260

TELEPHONE NO.: (949) 269-3256 | FAX NO. (949) 209-1919 | E-MAIL ADDRESS
ATTORNEY FOR *(Name):* Plaintiff: Vitamin Energy, Inc.

FOR COURT USE ONLY

**LOS ANGELES COUNTY SUPERIOR COURT**
STREET ADDRESS: 111 N. HILL STREET
CITY AND ZIP CODE: LOS ANGELES, CA 90012-3117
BRANCH NAME: STANLEY MOSK

PLAINTIFF/PETITIONER: Vitamin Energy, Inc., a Delaware corporation
DEFENDANT/RESPONDENT: Bolton & Company, a California licensed insurance agency, et al.

CASE NUMBER:
22STCV00036

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>Vitamin Energy v. Bolton & Company |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ Summons
   b. ☐ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☑ other *(specify documents):* **Complaint for Damages; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Management Conference; Notice of Errata RE Complaint for Damages; Notice of Case Assignment - Unlimited Civil Case; First Amended General Order; Voluntary Efficient Litigation Stipulations; Order Pursuant to CCP 1054(a), Extending Time to Respond by 30 Days When Parties Agree to Early Organizational Meeting Stipulation**

3. a. Party served *(specify name of party as shown on documents served):*
   **GREGORY MATTHEW DOHERTY, a licensed insurance agent**
   **Age: Over 60 | Weight: 201-220 Lbs | Hair: Gray/White | Sex: Male | Height: 6'1 - 6'6 | Eyes: Brown | Race: Caucasian**

   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served: **22761 Blue Teal Dr**
   **Canyon Lake, CA 92587-7976**

5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **1/12/2022** (2) at *(time):* **5:42 PM**

   b. ☐ **by substituted service.** On *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):* from *(city):* **or** ☐ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10
POS010-1/OC81980

PETITIONER:  Vitamin Energy, Inc., a Delaware corporation

RESPONDENT:  Bolton & Company, a California licensed insurance agency, et al.

22STCV00036

c. ☐  **by mail and acknowledgment of receipt of service.**  I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):*                                      (2) from  *(city):*

(3) ☐  with two copies of the  *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.*) (Code Civ. Proc., § 415.30.)*

(4) ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐  **by other means** *(specify means of service and authorizing code section):*

☐  Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☑  as an individual defendant.

b. ☐  as the person sued under the fictitious name of  *(specify):*

c. ☐  as occupant.

d. ☐  On behalf of
under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

a. Name:  **Norman Vilchez - Nationwide Legal, LLC REG: 12-234648**

b. Address:  **901 W. Civic Center Drive, Suite# 190  Santa Ana, CA 92703**

c. Telephone number:  **(714) 558-2400**

d. **The fee** for service was: **$ 216.05**

e. I am:

(1) ☐  not a registered California process server.

(2) ☐  exempt from registration under Business and Professions Code section 22350(b).

(3) ☑  registered California process server:

(i) ☐ owner        ☐ employee        ☑  independent contractor.

(ii) Registration No.: **2015085755**

(iii) County:  **Los Angeles**

8. ☑  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:  **1/18/2022**

**N**

**Nationwide Legal, LLC**
**901 W. Civic Center Drive, Suite# 190**
**Santa Ana, CA 92703**
**(714) 558-2400**
**www.nationwideasap.com**

_____
**Norman Vilchez**                                                 ▶
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): FOR COURT USE ONLY

Reid A. Winthrop, Esq. | SBN: 223527
WINTHROP LAW GROUP
120 Newport Center Drive, Newport Beach, CA 92260

Electronically FILED by Superior Court of California, County of Los Angeles on 01/24/2022 04:33 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Abraham,Deputy Clerk

TELEPHONE NO.: (949) 269-3256 | FAX NO. (949) 209-1919 | E-MAIL ADDRESS
ATTORNEY FOR *(Name):* Plaintiff: Vitamin Energy, Inc.

**LOS ANGELES COUNTY SUPERIOR COURT**

STREET ADDRESS: 111 N. HILL STREET
CITY AND ZIP CODE: LOS ANGELES, CA 90012-3117
BRANCH NAME: STANLEY MOSK

PLAINTIFF/PETITIONER: Vitamin Energy, Inc., a Delaware corporation
DEFENDANT/RESPONDENT: Bolton & Company, a California licensed insurance agency, et al.

CASE NUMBER:
22STCV00036

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:
Vitamin Energy v. Bolton & Company |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ Summons
   b. ☐ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☑ other *(specify documents):* **Complaint for Damages; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Management Conference; Notice of Errata RE Complaint for Damages; Notice of Case Assignment - Unlimited Civil Case; First Amended General Order; Voluntary Efficient Litigation Stipulations; Order Pursuant to CCP 1054(a), Extending Time to Respond by 30 Days When Parties Agree to Early Organizational Meeting Stipulation**

3. a. Party served *(specify name of party as shown on documents served):*
   **CHRIS MOREY, a licensed insurance agent**

   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served: **3475 E Foothill Blvd Ste 100
   Pasadena, CA 91107-6024**

5. I served the party *(check proper box)*
   a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*     (2) at *(time):*

   b. ☑ **by substituted service.** On *(date):* 1/13/2022 at *(time):* 3:32 PM I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*
   **Isidro Lopez - Lobby Security Guard**
   Age: 31-35 | Weight: 161-180 Lbs | Hair: Black | Sex: Male | Height: 5'1 - 5'6 | Eyes: Brown | Race: Latino

   (1) ☑ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):* from *(city):*      **or** ☑ a declaration of mailing is attached.

   (5) ☑ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

POS010-1/OC81978

PETITIONER:  Vitamin Energy, Inc., a Delaware corporation

RESPONDENT:  Bolton & Company, a California licensed insurance agency, et al.

22STCV00036

c. ☐ **by mail and acknowledgment of receipt of service.**  I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date):*                                          (2) from  *(city):*

   (3) ☐ with two copies of the  *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.) (Code Civ. Proc., § 415.30.)

   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☑ as an individual defendant.

b. ☐ as the person sued under the fictitious name of  *(specify):*

c. ☐ as occupant.

d. ☐ On behalf of

   under the following Code of Civil Procedure section:

   | | |
   |---|---|
   | ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
   | ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
   | ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
   | ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
   | ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
   | | ☐ other: |

7. **Person who served papers**

   a. Name:  **Luis Verjan - Nationwide Legal, LLC REG: 12-234648**

   b. Address:  **901 W. Civic Center Drive, Suite# 190  Santa Ana, CA 92703**

   c. Telephone number:  **(714) 558-2400**

   d. **The fee** for service was: **$ 257.55**

   e. I am:

   (1) ☐ not a registered California process server.

   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

   (3) ☑ registered California process server:

   (i) ☐ owner   ☐ employee   ☑ independent contractor.

   (ii) Registration No.: **2018251867**

   (iii) County: **Los Angeles**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **1/18/2022**

**Nationwide Legal, LLC**
**901 W. Civic Center Drive, Suite# 190**
**Santa Ana, CA 92703**
**(714) 558-2400**
**www.nationwideasap.com**

_____
         **Luis Verjan**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Reid A. Winthrop, Esq. | SBN: 223527
WINTHROP LAW GROUP
120 Newport Center Drive Newport Beach, CA 92260

TELEPHONE NO.: (949) 269-3256 | FAX NO. (949) 209-1919 | E-MAIL ADDRESS

ATTORNEY FOR (Name): Plaintiff: Vitamin Energy, Inc.

**LOS ANGELES COUNTY SUPERIOR COURT**

STREET ADDRESS: 111 N. HILL STREET
MAILING ADDRESS:
CITY AND ZIP CODE: LOS ANGELES, CA 90012-3117
BRANCH NAME: STANLEY MOSK

PLAINTIFF/PETITIONER: Vitamin Energy, Inc., a Delaware corporation

DEFENDANT/RESPONDENT: Bolton & Company, a California licensed insurance agency, et al.

CASE NUMBER:
22STCV00036

| **DECLARATION OF DILIGENCE** | Ref. No. or File No.: Vitamin Energy v. Bolton & Company |

I, Luis Verjan , declare: I am a Registered Process Server and was retained to serve process in the above-referenced matter on the following person or entity: CHRIS MOREY, a licensed insurance agent as follows:
Documents:

**See Documents on Attached List**

I attempted personal service on the following dates and times with the following results:

| Date | Time | Location | Results |
|------|------|----------|---------|
| 1/11/2022 | 4:36 PM | Business | Per Isidro, lobby security guard, emailed/messaged subject and no answer. We have no access to suite. He asked someone else and they said he wasn't there, he said I could leave documents with him and he can give to subject.<br>3475 E Foothill Blvd Ste 100, Pasadena, CA 911076024 |
| 1/12/2022 | 8:21 AM | Business | Per Isidro, subject not in.<br>3475 E Foothill Blvd Ste 100, Pasadena, CA 911076024 |
| 1/13/2022 | 3:32 PM | Business | Substituted service on: CHRIS MOREY, a licensed insurance agent; 3475 E Foothill Blvd Ste 100, Pasadena, CA 91107-6024; by serving: Isidro Lopez - Lobby Security Guard, Latino Male 31-35 161-180 Lbs Black 5'1 - 5'6 Brown. |

Fee for Service: **$ 257.55**

**N**

County: **Los Angeles**
Registration No.: **2018251867**
**Nationwide Legal, LLC**
**901 W. Civic Center Drive, Suite# 190**
**Santa Ana, CA 92703**
**(714) 558-2400**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on January 18, 2022.

Signature:

**Luis Verjan**

**AFFIDAVIT OF REASONABLE DILIGENCE**

Order#: OC81978

**Nationwide Legal, LLC**
901 W. Civic Center Drive, Suite# 190
Santa Ana, CA 92703
Phone: (714) 558-2400   Fax: (714) 558-2401

Continued from Proof of Service

**CLIENT:** WINTHROP LAW GROUP

**CLIENT FILE #:** Vitamin Energy v. Bolton & Company          **DATE:** January 18, 2022

**SUBJECT:** CHRIS MOREY, a licensed insurance agent

**SERVED:** Isidro Lopez - Lobby Security Guard

Summons; Alternative Dispute (ADR) package; Civil Case Cover Sheet;
Complaint for Damages; Civil Case Cover Sheet Addendum and Statement
of Location; Notice of Case Management Conference; Notice of Errata
RE Complaint for Damages; Notice of Case Assignment - Unlimited
Civil Case; First Amended General Order; Voluntary Efficient
Litigation Stipulations; Order Pursuant to CCP 1054(a), Extending
Time to Respond by 30 Days When Parties Agree to Early
Organizational Meeting Stipulation;



Order#: OC81978/DocAtt2010

| | | | | FOR COURT USE ONLY |
|---|---|---|---|---|

**Attorney or Party without Attorney:**
Reid A. Winthrop, Esq., SBN: 223527
WINTHROP LAW GROUP
120 Newport Center Drive
Newport Beach, CA 92260
TELEPHONE No.: (949) 269-3256     FAX No. (Optional): (949) 209-1919     E-MAIL ADDRESS (Optional):

Attorney for: Plaintiff Vitamin Energy, Inc.

Ref No. or File No.:
Vitamin Energy v. Bolton & Company

Insert name of Court, and Judicial District and Branch Court:
LOS ANGELES COUNTY SUPERIOR COURT - STANLEY MOSK

Petitioner: Vitamin Energy, Inc., a Delaware corporation

Respondent: Bolton & Company, a California licensed insurance agency, et al.

| **PROOF OF SERVICE BY MAIL** | HEARING DATE: | TIME: | DEPT.: | CASE NUMBER: 22STCV00036 |
|---|---|---|---|---|

1. I am over the age of 18 and not a party to this action.  I am employed in the county where the mailing occured.

2. I served copies of the Summons; Alternative Dispute (ADR) package; Civil Case Cover Sheet; Complaint for Damages; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Management Conference; Notice of Errata RE Complaint for Damages; Notice of Case Assignment - Unlimited Civil Case; First Amended General Order; Voluntary Efficient Litigation Stipulations; Order Pursuant to CCP 1054(a), Extending Time to Respond by 30 Days When Parties Agree to Early Organizational Meeting Stipulation;

3. By placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Santa Ana, California, addressed as  follows:

   a. Date of Mailing:        January 13, 2022
   b. Place of Mailing:      Santa Ana, CA
   c. Addressed as follows:   CHRIS MOREY, a licensed insurance agent
                             3475 E Foothill Blvd Ste 100
                             Pasadena, CA 91107-6024

I am readily familiar with the firm's practice for collection and processing of documents for mailing.  Under that practice, it would be  deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid at Santa Ana, California in the ordinary course of  business.

Fee for Service: $ 257.55
**Nationwide Legal, LLC REG: 12-234648**
**901 W. Civic Center Drive, Suite# 190**
**Santa Ana, CA 92703**
**(714) 558-2400**
**www.nationwideasap.com**

I declare under penalty of perjury under the laws of the The State of California that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on January 18, 2022.

Signature: _____
                Sheri Nadari

**PROOF OF SERVICE BY MAIL**

Order#: OC81978/mailproof